```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK


ANGELICA PARKER,                  : Docket #24-cv-00245

                  Plaintiff,      :

    -against-                     :

SCOTT BURSOR, et al.,             : New York, New York
                                    January 24, 2024
                  Defendants.

--------------------------------:

                  PROCEEDINGS BEFORE
            THE HONORABLE ROBYN F. TARNOFSKY
             UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:         ANGELICA PARKER, PRO SE
                       400 East 57th Street, Apt 15A
                       New York, New York 10022

For Defendant:         JUDD BURSTEIN, PC
                       BY:  JUDD BURSTEIN, ESQ.
                       110 East 59th Street, 22nd Floor
                       New York, New York 10022




Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com




Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

1          THE DEPUTY CLERK:  Good morning, everyone.

2    Today we have case 24-cv-245, Parker vs. Bursor.

3    Judge Robyn Tarnofsky is presiding.  She is

4    currently in the conference.

5          THE COURT:  Good morning, everyone, and

6    thank you for being here.

7          Mr. Burstein, it's your application.  Why

8    don't you get started?

9          MR. BURSTEIN:  All right.  Thank you, Your

10   Honor.

11         We're asking for a limited sealing order so

12   that the complaint in this matter is sealed.  We

13   find ourselves in a very difficult situation.  This

14   is not the normal case.  Ms. Parker, were making

15   just the core allegations, I'd be in a very

16   different procedural posture and have a very uphill

17   battle.

18         And I apologize for the noise behind me.

19   I'm actually in a waiting room of a medical center,

20   waiting for my fiancée to come out.  So I'm sorry

21   for the noise.

22         I have a client who's been threatened with

23   all sorts of extraneous, devastating claims, such as

24   he molested his children, that he's raped multiple

25   women.  Ms. Parker -- this is not sort of

hypothetical. There are tons of texts with these threats. Ms. Parker actually sent a letter to all the lawyers in his law firm accusing him of all these things. Mr. Parker has children of whom he has 50 percent custody, and the notion that it would then become public that this false allegation that he even molested them, this is the kind of thing that can destroy somebody for literally no solid reason.

And as I said before, this is an unusual case also because Ms. Parker has previously been sanctioned for bringing a lawsuit for an improper purpose. I understand that people have a right to sue, but they don't have a right, as the case law says to, I think *Lugosch* said, to bring allegations that get before the Court only to determine that they're improper.

Now, is it possible that she could plead something that I would lose on a sealing motion? Yes, but I'm not asking for anything other than to see that the complaint is filed in the first instance under seal.

Your Honor might review it and say, no, there's nothing problematic here. And that's Your Honor's obvious right. I would ask for an

1    opportunity to make an appropriate motion, but this

2    is an extraordinarily limited application, and it's

3    brought on because of the unusual procedural posture

4    of this case.  I think our papers are laid out in

5    probably too much detail.

6            So unless Your Honor has any more

7    questions, I think that I've made our argument, and

8    I don't see that I can add much more to what's in

9    our papers, unless Your Honor has questions.

10            THE COURT:  Thank you, Mr. Burstein.

11            And I do have a question.  And my question,

12   you know, whether even if I had a complaint in front

13   of me that said Mr. Bursor raped multiple unnamed

14   women and molested unnamed children who are not

15   identified as his and who are not identified by name

16   as required to protect minors under FRCP 5.2, would

17   you be making this motion to seal?

18            MR. BURSTEIN:  Yes, I would.

19            THE COURT:  Well --

20            MR. BURSTEIN:  Yes.

21            THE COURT:  And then I guess my other

22   question is, how do you think I could grant it under

23   *Lugosch*?  Which tells me that the public has a

24   strong interest in seeing complaints, not because

25   they have a right to know Mr. Bursor's private

business, but because they have a right to evaluate

how the Courts are doing their job, which they can

only do if they see the Court papers that are filed.

MR. BURSTEIN:  I understand that.  But by

the same token, in this unusual situation -- and we

don't know exactly what's going to be filed.  That's

the first question.  So we simply don't.  And

also --

THE COURT:  So I guess my other point

though, Mr. Burstein, is, you don't know what's

going to be filed and yet an application to seal, if

granted, and certainly a TRO and PI, if granted,

require specific, concrete factual findings on the

record about what exactly it is that justifies

overriding this strong presumption that core

judicial documents like complaints, are going to be

available to the public.  What can I base those

findings on, besides the possibility that the

complaint is going to include the stuff we're

talking about?

MR. BURSTEIN:  Well, I think, Your Honor,

the difference in this case is you have a history of

text with Ms. Parker making these claims.  And we

should understand here, the allegation in this case,

and I'm not going to get into the truth of it or

1   not, is simply that -- and I don't say simply
2   because it's a horrible allegation, that there was a
3   sexual assault and a rape.  Those are the
4   allegations.  The notion that he's a pedophile
5   certainly would not have any basis and would be
6   inappropriate.  The fact that there has been threats
7   that -- I don't think you've ever seen threats where
8   a plaintiff says, I don't care about money, I only
9   want to destroy you publicly.  I think that this is
10  a situation where, if I am right and there's
11  overwhelming evidence that that's exactly what's
12  going to happen, that a very brief TRO, to look at
13  it, and then if Your Honor believes that either it's
14  all appropriate or if there's a portion of it that
15  should be struck or sealed for the short term,
16  that's not an impact on the public in the short
17  term.  Because if I'm wrong, they've lost two weeks
18  of having something public.
19          This is not asking for a sealing of a case.
20  This is asking to Your Honor to not make a final
21  determination about the public having rights.  The
22  public's rights will be vindicated very promptly if
23  they have the rights in this situation.  But by the
24  same token, if they don't, if this is something that
25  should be stricken, then I have a defendant who

1    employs 70 people, who is going to -- with a law

2    firm that's been sued for no conceivable reason, is

3    asking just to be protected in the very short run,

4    because there's an overwhelming amount of evidence

5    that this is going to happen.

6          This is just -- I have a plaintiff who is

7    making allegations about hitmen being sent out to

8    take her toes, none of which is really supposed to

9    be in a complaint, and a TRO with a very short

10   return date.  Make me -- Your Honor, send a TRO --

11   her complaint is due, I think, Monday of next week.

12   If you file under seal and you ask me to make

13   another submission on Tuesday, you'll have

14   everything that Your Honor can decide.  But what I'd

15   say to Your Honor is, that if I'm right, the damage

16   is done.  And if you weigh that under *Lugosch* and

17   you weigh that under *Brown*, one of the issues is

18   that, yes, there's a weighing process, but if you

19   don't grant the relief, you're not going to be able

20   to weigh.

21         THE COURT:  I mean, Mr. Burstein, can you

22   point me to any case where this relief, kind of

23   relief was granted under these circumstances?

24         MR. BURSTEIN:  No.

25         THE COURT:  No.

1      MR. BURSTEIN:  No, because this is a hugely

2  unusual procedural case where the case was removed

3  to the federal court.  So once it's removed to the

4  federal court with it --

5      THE COURT:  No.  And I understand, right,

6  this is an artifact of the sort of unique, or at

7  least unusual New York procedure that allows you to

8  start a complaint by summons and notice.

9      But look, I am certainly sympathetic to the

10  reputational concerns.  I am more than sympathetic.

11  I am deeply troubled by the possibility that minor

12  children could be harmed by the filing of this

13  complaint.  And while Rule 5.2 says that the names

14  of minor children have to be included only as their

15  initials -- or redacted, to the extent that there is

16  a filing that identifies the children that he

17  allegedly molested as his children, there's no

18  hiding their identity.  And I'm extremely concerned

19  about their privacy.

20      But beyond that, nothing that you have

21  described to me is the type of information that can

22  be kept out of the public view under the governing

23  case law, other than the identity of children that

24  he's allegedly molested.  There are lots of cases

25  out there where people are accused falsely of doing

1 terrible things. And the way our system works is,
2 that there is an expectation that the public can see
3 it so it can evaluate how the judges are doing their
4 function.

5 As a practical matter, the complaint is due
6 Monday. I'm going to issue a report and
7 recommendation today. I imagine you are going to go
8 directly to Judge Clarke with an objection. But
9 then plaintiff has 14 days to respond to that
10 objection. I don't know whether Judge Clarke is
11 going to rule before that time without having the
12 benefit of plaintiff's thoughts on the matter.

13 What I'm inclined to do is, my report and
14 recommendation doesn't cause anyone to do anything,
15 and therefore, nothing happens until there's an
16 order issued. So I will issue my reporting
17 recommendation. The status quo will remain the same
18 with respect to your filings, so then the issue --
19 you know, until Judge Clarke makes her ruling.

20 So the issue really is know the status of
21 the filings in support of your TRO and PI motion,
22 but what Ms. Parker files on the docket between
23 today and Monday -- and I guess with that, I would
24 ask Ms. Parker what her intentions are with respect
25 to filing the complaint and whether it is the case

1   that, Ms. Parker, you plan to file a complaint that

2   includes the allegation that Mr. Bursor has molested

3   his own children.

4          MS. PARKER:  Hello, Your Honor.  So I want

5   you to know that all of the claims that I am making

6   are absolutely credible, provable, and everything

7   that I'm saying is very verifiable.  Both Mr.

8   Burstein and Scott have the evidence of this, and

9   they know their wrongdoing.

10          I don't have an attorney because they've

11   removed them from me.  So my complaint -- I haven't

12   even had a chance to file my complaint yet.  It's

13   due, and it will be given as soon as it's due, very

14   soon.  I'm just doing the best I can because I'm

15   representing myself, but I can absolutely just

16   within -- I don't know if it's right, but I can

17   absolutely play for you just two of the main claims

18   where Scott says he's going to absolutely rape me.

19   I have it on my audio.  It's only, like, 20 seconds

20   long.  And all of the claims that I'm making are

21   very credible, very provable, and very real, and

22   there's a ton of evidence and witnesses to back it

23   up.

24          THE COURT:  So I understand, Ms. Parker,

25   that you feel very strongly about your claims and

believe that you can prove them.  I do understand
that.

The question I'm asking you is a little bit
different.  And let me just try to explain.  I
understand that you're pro se.

MS. PARKER:  Yeah.

THE COURT:  The issue is that even if it is
true that -- and we're now only talking about the
question of whether Mr. Bursor has molested his
children or any other children.  Not the claim that
he raped you.

MS. PARKER:  Right.  Or raped me -- and
raped me.

THE COURT:  With respect to the claim that
he raped you, you are entitled to publicly make that
claim and to file a complaint --

MS. PARKER:  Right.  Right.  Thank you,
Your Honor.

THE COURT:  -- that says that.

With regard to the claim that he molested
his own children, I don't believe that you are
permitted to make that claim publicly.  I believe
that you can say in a general way that he is a
pedophile.

MS. PARKER:  Yes.

1          THE COURT:  But if you say he molested his

2     own children, that hurts not just him, but that

3     hurts the children who are minors and who have a

4     right to privacy and to have a right not to have it

5     say in a public place that they are the victims of

6     child molestation.

7          MS. PARKER:  Yes.  Your Honor --

8          THE COURT:  So my question to you isn't

9     whether you're planning to say in your complaint

10    that he raped you.  My question is whether you're

11    planning to say in your complaint that he molested

12    his children.

13         MS. PARKER:  Your Honor, so with that being

14    said, I have never actually specifically said that.

15    He tends to bring his younger children on trips with

16    us for over five years, including sometimes their

17    friends.

18         So my only allegation, what Mr. Burstein is

19    making is that I felt it was very unsafe,

20    considering I've been around the man for many years,

21    and I've seen what happens around.  So what Mr.

22    Burstein is saying is that I was scare -- you know,

23    they're very young children and they've traveled

24    with us, and he is not in the right state of mind,

25    Mr. Bursor.

 1            And my only threat that I've ever made, I
 2    would never do that publicly, because he has only --
 3    he's publicly posted that he's very interested in
 4    very young girls.  It's a public knowledge.  It's on
 5    his Instagram that virgins, very young things --
 6    I've traveled with him and his family for many
 7    years, his young girls.  And my only request was
 8    that he does not bring the younger girls and their
 9    friends, because they're not even barely in college,
10    around his trips.  That was kind of the only intent
11    with that.
12            THE COURT:  I mean, look, maybe I need to
13    be clearer.
14            MS. PARKER:  Yes.
15            THE COURT:  You may not file on the public
16    docket a complaint that says that Mr. Bursor has
17    molested his own children --
18            MS. PARKER:  Unless he said it himself.  I
19    understand.
20            THE COURT:  No, not even if he said it
21    himself.
22            MS. PARKER:  Okay.
23            THE COURT:  You cannot file on the public
24    docket --
25            MS. PARKER:  I wouldn't.

1          THE COURT:  -- a complaint that includes a

2     claim that he molested his own children or that he

3     molested an identified other minor person.

4          MS. PARKER:  Yes, I understand.

5          THE COURT:  You can say he's a pedophile.

6     You can say he has molested minor children.

7          MS. PARKER:  Correct.

8          THE COURT:  You cannot say who those minor

9     children are.  And saying that he molested his own

10    children necessarily indicates who they are.

11         MS. PARKER:  I understand, Your Honor.

12         THE COURT:  So to protect the privacy of

13    minor children, if you are going to file a complaint

14    accusing him of being a pedophile and molesting

15    children, you need to come into the pro se intake

16    office, and they will explain to you how you can

17    file one version of the complaint that identifies

18    everyone and everything that happened, which will be

19    kept in a sealed envelope in a vault.  And another

20    version of the complaint that whites out any

21    identifying information about minor children, his

22    own or anyone others.  Do you understand that?

23         MS. PARKER:  I do.

24         THE COURT:  Because this is very important.

25         MS. PARKER:  I do, Your Honor.

1          THE COURT:  If you file something on the

2     public docket that discloses identifying information

3     that specific, identifiable minor children were the

4     victims of child molestation by Mr. Bursor, you will

5     be sanctioned.

6          MS. PARKER:  No, I understand.  I

7     absolutely understand, Your Honor.

8          THE COURT:  And that is not to protect Mr.

9     Bursor.  That is to protect these children.

10         MS. PARKER:  No, I absolutely understand.

11    That's my only goal.

12         The main concern is the rape that's been

13    done to me.  So I have no intent at all whatsoever

14    at all, to say anything public at all about Mr.

15    Bursor with children.  I'm much more concerned with

16    the actions he's taken on me.  And unfortunately,

17    because he's been a part of my life for many years,

18    the children have been included because I've spent

19    an extraordinary amount of time with them, and I was

20    trying to just protect them.

21         I know -- I understand very much that

22    obviously, that cannot be the most important thing

23    is protecting children.  But the main concern is the

24    rape that's been done to me and many other things,

25    but mainly that.  And the fact that he's trying to

move it to different jurisdictions, and I haven't

even had a chance to file -- my complaint is due.  I

haven't even had a chance to file it yet.  So it

will be filed.

But, yeah, the main concern is, I would

never want to hurt any child.  He knows that better

than anybody.  It's more about what he's done to me.

I just looked out for the children, and I've told

him this is the only reason.  Mr. Burstein knows

this.  Because I said that I did not want children

involved in his actions and his crimes and around

these kinds of things.

I was very close to his children.  He had

three little girls -- you know, very close to them

for many years.  So my only concern was that I was

able to get the justice for myself and that these

children wouldn't be exposed to the crimes that he's

committed and that he publicly posts online about

virgins and young and the amount of audio.  And I'm

very happy to play it for you.  It's only 22 --

THE COURT:  This is not -- this session is

not about proving your claims.

MS. PARKER:  Okay.

THE COURT:  Right now, the only thing we're

talking about are issues surrounding whether or not

1  the complaint, which is how you -- the next step in

2  the litigation, it's not the proof, it's just where

3  you say what it is that you want to prove.  It's

4  about the confidentiality of that document and

5  whether that document is going to be publicly

6  available.  And my belief is that it should be

7  publicly available except to the extent that it

8  includes anything specifically identifying any minor

9  children.

10         MS. PARKER:  Absolutely.

11         THE COURT:  If you are planning to say

12  anything about any minor child in this complaint --

13         MS. PARKER:  No.

14         THE COURT:  -- before you file it, you need

15  to come in in person to the pro se intake office and

16  talk to them.

17         You know what?  We just lost Mr. Burstein.

18  And therefore we're now ex parte.  And so I am going

19  to halt the conference until he rejoins.  And I'm

20  going to mute my mic and step away for now until he

21  rejoins.

22         MS. PARKER:  I appreciate it, Your Honor.

23         And I just want you to know that by no

24  means do I intend to at all include children in

25  this.  That was my main concern of my defense, to

1     make sure they're not.  So I just want you to

2     understand that I have no intent at all to

3     include --

4              THE DEPUTY CLERK:  Ms. Parker?

5              MS. PARKER:  YES.

6              THE DEPUTY CLERK:  We appreciate it if you

7     can continue when counsel is back online.  Please

8     note that the judge has stepped away from her desk

9     so further statements will not reach her.

10             MS. PARKER:  I understand.  Thank you.

11             THE DEPUTY CLERK:  Thank you.

12             MS. PARKER:  Do I call back or what should

13    I do now?

14             THE DEPUTY CLERK:  No.  No.  No.  You could

15    stay on.  You could just hold off on any further

16    statements until we get the counsel back.

17             MS. PARKER:  Yeah.  Thank you.

18             THE DEPUTY CLERK:  Well, we'll let you know

19    when that happens.  We see on our screens.

20             Okay.  One second while I'll get --

21             MR. BURSTEIN:  Yeah.  Your Honor, I'm

22    very --

23             THE DEPUTY CLERK:  One second while I get

24    the judge.  One second.  One second.  One second.

25    We halted the conference to wait for you to join

1    back.

2          MR. BURSTEIN:  Thank you.  I don't know

3    exactly what happened.

4          THE DEPUTY CLERK:  No, it's fine.  I just

5    wanted to let you know that we paused for the time

6    being, and I will go get the judge now.

7          MS. PARKER:  Thank you, Mr. Burstein.

8          THE COURT:  Okay, I am back.  Yes.

9    Technology glitches happen.

10         MR. BURSTEIN:  I apologize, Your Honor.

11         THE COURT:  I really understand.  Like I

12    said, technology glitches happen.

13         Okay.  So my plan is this.  My plan is to

14    issue a report and recommendation today.  It will

15    say that -- recommend that Judge Clarke unseal the

16    docket entries that you sealed.  I think it's, I

17    don't know, 13, 14, 15 and 16, except to the extent

18    that there are references to molestation of minor

19    children.  I'm going to recommend that she direct

20    you to refile on the docket within seven days of her

21    order, assuming that she agrees with me.  And if she

22    doesn't, she'll tell you exactly what it is she

23    wants to do.  That you file a redacted version that

24    takes out references to molesting his own children,

25    because just the fact of having that on the docket

1   is harmful to those kids.  And Ms. Parker is

2   admonished that she not file a complaint that

3   contains any references that are not whited out to

4   the claim that Mr. Bursor molested his own children

5   or any other claims that he molested identified

6   children at all.

7           If she is going to include those kinds of

8   claims in her complaint, she needs to come into the

9   pro se intake office to make her filing so that they

10  can assist her with filing a redacted version that

11  takes out references to molesting children on the

12  public version.  And the sealed version in the

13  vault, can say whatever she wants.

14          At that point in time --

15          MR. BURSTEIN:  May I just be heard for one

16  more minute?

17          THE COURT:  Of course.

18          MR. BURSTEIN:  What I was going to say is,

19  just by example, there is a difference between

20  somebody respectfully -- and I think this is clear

21  with *Lugosch* and other cases.  Let's assume for the

22  moment that she also put in an allegation completely

23  unrelated to this proceeding which said, and by the

24  way, he killed three heads of state.

25          Now, in that circumstance, there's got to

be some protection in this situation.  And the
burden on the Court and the public is very, very,
very minimal.  Nobody's saying, and I'm certainly
not saying, that anything that's appropriately there
within the realm of possibility is fine.  But if you
have someone who's already stated it, and it's very
clear in the papers that she's intending on filing
for an improper purpose, to a large degree, the
burden on --

MS. PARKER:  Mr. Burstein, I would never --

THE COURT:  Okay, we're going to be one at
a time.  One at a time.

MS. PARKER:  Sorry.

MR. BURSTEIN:  I think that you have a
history.  You know, this is a chance.  What is it?
The animals will be out before the barn door closes.

And at least, maybe the answer is that I
give Ms. Parker another week to file.  And in the
interim, I mean, I certainly would like to have a
chance to go to Judge Clarke, and I would like a
chance to go to the Court of Appeals if necessary.

You know, but I shouldn't be, respectfully,
put in a position where Your Honor issues a report
recommendation.  There's no restraint in place, even
for a day or two, before I can get to Judge Clarke,

1      and then I don't have any remedy left.

2             So at a minimum, I'd ask the Court to give

3      me a day or two to go to Judge Clarke.  And if she

4      says she agrees with Your Honor, then at that point,

5      I'd like an opportunity to go to the Court of

6      Appeals.

7             But the way that Your Honor has structured

8      it now, I could well be left -- or my client could

9      be well left with no remedy whatsoever, because I

10     don't think, respectfully, that the public interest,

11     which I know is strong in an open court process, is

12     the least bit harm for a few days of things not

13     being on the public docket.  So all I'm asking at

14     this point is --

15            THE COURT:  But, Mr. Burstein, it's not

16     only my concern that the public will be harmed by a

17     temporary sealing of the complaint.  It's also that

18     nothing that you have pointed me to, except claims

19     that would identify particular minor children as

20     having been molested is, in my view, something that

21     would be sealed in the merits of a sealing analysis

22     under the governing case law.  And that would

23     include a claim that Mr. Bursor is laundering money

24     and dealing drugs.  That would include an allegation

25     that he is molesting children, as long as they're

1    not identified.

2         You know, I'm sorry that he is facing this

3    litigation.  I think it's, you know, a problem with

4    our system that there are people who are hurt as a

5    result of the determination we've made as a society

6    that we place such a high value on the openness of

7    the Courts.  But whether that's a right

8    determination or a wrong determination, that's the

9    determination that I'm bound by.

10        MR. BURSTEIN:  I guess my only point, Your

11   Honor, would be, obviously, you're the judge, so

12   whether I disagree doesn't make too much of a

13   difference.  But if someone is making an allegation,

14   for example, that he's a money launderer, where

15   she's not damaged by that information, she's not

16   seeking damages based upon it, it's only placed in

17   the complaint to harm Mr. Bursor's reputation, it

18   would be stricken because it's completely

19   irrelevant.

20        The notion that she can come in and make

21   horrific claims that there are no relationship to

22   her underlying claims, that is something that's

23   different.  What is the conceivable relevance to him

24   being a drug dealer and a money launderer when the

25   claim is that he raped her?  There's just no

1    connection.  And that's all I'm talking about.

2              I said right from the start --

3              MS. PARKER:  Your Honor --

4              MR. BURSTEIN:  I just wanted to finish one

5    thing.  If Ms. Parker were coming in with, even if

6    she said he had raped other people, I would

7    understand that's relevant.  But if she's going to

8    add things which, for example, could never, ever be

9    admitted into evidence under any circumstances, and

10   that would be harmful to somebody, that's my

11   concern.  I don't know why -- that's where I think

12   the unfairness lies.  And --

13             THE COURT:  And I hear you, right.  But the

14   remedy that we operate -- the way our system works,

15   is the remedy for that.  The remedy for harmful and

16   extraneous allegations being contained in this

17   complaint is not sealing the complaint.  It's making

18   a motion to strike those portions of the complaint

19   and then being vindicated or not vindicated when the

20   Court rules or doesn't rule in your favor, striking

21   or not striking those allegations.

22             MR. BURSTEIN:  Although *Lugosch* says that

23   it's a weighing factor -- and one of the things that

24   it weighs is, for example, the eligibility of

25   sanctions.  Sanctions are not going to make a

1   difference for a pro se plaintiff.

2           In the weighing process, I would say that,

3   Your Honor, given the history here and given what

4   we've seen, that Your Honor would not at least have

5   a chance.

6           I guess if Ms. Parker were saying, I'm only

7   going to allege the rape at this point, that's not

8   problematic.  It's just this extraneous stuff.  And

9   there is no hard and fast rule under *Lugosch*.

10  *Lugosch* says it's a weighing thing and specifically

11  says that part of the weighing process is for a

12  Court to look at allegations which would not come

13  before them, but for their irrelevance and

14  impropriety.  And the goal here in this circumstance

15  is, respectfully, is that if that's what the test is

16  and what *Brown* says about, it's the obligation of

17  the Courts not to allow this, where somebody is

18  threatening to do this, to say, well, let's find out

19  if she does it before, and then we can deal with it

20  afterwards.  Which is respectfully, not what *Lugosch*

21  says.  It is not what *Brown* says.  It says there has

22  to be a weighing process.  In the unusual

23  circumstance here is this -- is the case where -- it

24  just -- I've made my point, Your Honor.

25              THE COURT:  And I understand your point,

```
 1   and I understand that it's a weighing exercise, but
 2   the presumption in favor of public access to a core
 3   document like a complaint, is so heavy that it takes
 4   a lot to overcome that.
 5              Let me ask you this, Ms. Parker.
 6              MS. PARKER:  Yes.
 7              THE COURT:  Do you have a date by which you
 8   intend to file your complaint?
 9              MS. PARKER:  Absolutely, Your Honor.
10   Because I've had attorneys trying to help me in the
11   past, and Mr. Burstein and Scott also removed them
12   to make sure that I don't have a voice.
13              I am absolutely going to be filing a
14   complaint.  I know the due date, and it hasn't even
15   been filed yet because they're moving very fast
16   against me, and I'm by myself, kind of.
17              So absolutely there will be a complaint
18   filed, but there should not be motions before even a
19   complaint was even filed.  And I want to be clear, I
20   absolutely do not intend to involve children.
21              THE COURT:  I appreciate the point you're
22   making about children, and I understand you plan to
23   file your complaint.  And I understand as a pro se
24   litigant, it can be difficult to complete drafting a
25   complaint and filing a complaint.
```

1       MS. PARKER:  Yes.

2       THE COURT:  My question to you is, do you,

3  as we are sitting here today, know when you plan to

4  file?  I'm not going to hold you to it.  I'm just

5  asking you the question.

6       MS. PARKER:  No, absolutely.  So I know my

7  deadline is January 31, and I'm doing it as fast as

8  I can.  But being pro se, obviously, it's a little

9  bit more difficult, but it will absolutely be filed

10  in the next few days, and definitely before the

11  date.

12       THE COURT:  My question to you then --

13       MR. BURSTEIN:  To extend the time.

14       THE COURT:  Yes.

15       MS. PARKER:  Yes.

16       THE COURT:  Does it make sense to agree to

17  extend the deadline for filing the complaint?  Would

18  you agree to --

19       MS. PARKER:  I don't need to --

20       THE COURT:  -- not file the complaint until

21  February 29 or February 15?  Pick a date.

22       MS. PARKER:  I'm comfortable to prepare it.

23  It's been difficult on me.  Obviously, as you

24  understand, I'm pro se, but I'm doing it as fast as

25  I can.  I know the deadline is -- so I don't need an

 1    extension or anything like that.  It will absolutely

 2    be filed at the date --

 3         THE COURT:  And I understand, and I'm

 4    asking a somewhat different question.  I understand

 5    that you would get it in by the deadline if you're

 6    required to do that.

 7         MS. PARKER:  Yes.

 8         THE COURT:  I'm saying, would it make more

 9    sense for this case, for everyone to give you a

10    chance to finish in the way that you want to finish

11    without feeling so much pressure and to give Mr.

12    Burstein a chance to take my order to the district

13    court judge for an appeal and for an objection and

14    to the Court of Appeals for an appeal, if she also

15    rules against him.  Would it make sense to say, all

16    right, let's just slow everything down and agree

17    that you don't have to and will not file your

18    complaint until, say, we can pick a day, February

19    15, February 29, one of those two days?  Would that

20    make sense?

21         MS. PARKER:  That absolutely makes sense.

22    I want to do the best that I can.  I'm trying the

23    best that I can by myself to get through this.  I

24    wasn't asking for an extension, but if it makes

25    sense to you and Mr. Burstein, absolutely, I will do

that. But I'm preparing my complaints, and I was just trying to follow the prep of pro se law to file it at the right time.

THE COURT: And I appreciate your efforts as a pro se litigant to comply with the rules. I know it can be difficult.

MS. PARKER: It's very difficult.

THE COURT: Why don't we then say, and I'll put this in the order, that your time to file a complaint is extended through and including up until February 29, 2024, and that you indicate that it's your intent to file the complaint on that date.

MS. PARKER: Absolutely. Of course.

THE COURT: Okay. Is that going to give you the time you need, Mr. Burstein?

MR. BURSTEIN: Your Honor, yeah. I was just hoping that we could have it in essence, since we're on the record, is that a stipulation that she will not file before that date.

THE COURT: Are you agreeable, Ms. Parker, to agreeing not just that you have until February 29 to file your complaint, but that you will not file until then? You will not file before then?

MS. PARKER: I absolutely agree. But the complaint, because I'm pro se and it's online, it

1  says that it's due on the date.  So as long as you

2  will --

3          THE COURT:  I will issue an order making

4  clear that it is not due until February 29.

5          MS. PARKER:  Okay.  Thank you.

6          THE COURT:  And I will also issue -- I will

7  sign, if you, Mr. Burstein, submit a stipulation --

8          MS. PARKER:  What's the implications of

9  waiting?

10          THE COURT:  I'm sorry, I didn't hear that.

11          MS. PARKER:  What is the implications of,

12  like, waiting?  I'm sorry.

13          THE COURT:  So the implication of waiting

14  is that you aren't telling your story as soon as you

15  would otherwise.

16          MS. PARKER:  Yes.  Correct.

17          THE COURT:  But it's not a very long delay.

18          MS. PARKER:  Yes.

19          THE COURT:  And it does give you the

20  opportunity to say things in the way that you want

21  to say things.  And it also gives Mr. Burstein, on

22  behalf of Mr. Bursor, the chance to go to other

23  judges to say, I think that Judge Turnofsky got it

24  wrong, and that Ms. Parker's complaint should be

25  kept away from the public for a period of time so

1    that we can ask the Court to require her to take out

2    portions that are improper.  Do you understand?

3               MS. PARKER:  I understand.

4               But also, I just want to say one more

5    thing.  They're specifically trying to move this

6    through a different jurisdiction to hurt my

7    complaint.  Just to be clear, that's obviously what

8    they're doing.  Mr. Bursor and Mr. Burstein, they're

9    moving it to a different jurisdiction.  They've

10   taken already two attorneys of mine to help me, but

11   they're also now moving it to a different

12   jurisdiction.  And I just want to be clear that I

13   will be absolutely prepared to follow the deadlines.

14   I don't need a delay.  I'm not sure what the delay

15   actually means, because you know, I'm by myself, I'm

16   pro se.  So I'm not really sure why there would even

17   be a delay, because I will be prepared to serve it

18   in the time that it was due.  And I know that their

19   intent is to move it to a different jurisdiction to

20   specifically hurt my complaint.  So --

21              THE COURT:  Well, look, I don't know what

22   their intentions are.  All I can say is that they

23   have moved the case from state court to federal

24   court.

25              MS. PARKER:  Yeah.

1          THE COURT:  I don't know if they plan to
2     try to move it from this federal court to a
3     different federal court.  I suppose --
4          MR. BURSTEIN:  We do not.  We do not.
5          THE COURT:  Okay.  Well, then if they have
6     removed the case, it is permissible to move a case
7     from state court to federal court when one party is
8     from one state and the other party is a citizen of
9     another state.  My understanding is that you are a
10    New York citizen.
11         MS. PARKER:  Yes.  And so was Scott at the
12    time --
13         THE COURT:  Mr. Bursor is currently a
14    Florida citizen.  I'm not sure about the citizenship
15    of the professional association.
16         MS. PARKER:  At the time of the crime, he
17    was living in New York City.  We lived in a co-op
18    together.  We had a co-op approval in an apartment
19    we lived in together.  So at the times of the crimes
20    that I'm addressing, he absolutely was.  And his
21    office is not a satellite office.  It's his --
22         THE COURT:  Yeah, no, Ms. Parker, and I
23    understand that, but this is sort of a technical
24    legal question about not where he lived at the time,
25    but where he's a citizen now.

1          MS. PARKER:  And I also want to say he

2     doesn't even have 50 percent of his -- a lot of the

3     things.  So yesterday I was hit with 300 pieces of

4     paperwork, and it claims that he's 50 percent --

5     he's never been -- he's agreed, even responsible for

6     his children.  He signed off on that, like, 15 years

7     ago.  So a lot of the things that are being

8     addressed to me are a lot of lies.

9          THE COURT:  Well, again, this is not about

10    the truth of the --

11         MS. PARKER:  I don't need more time.  I

12    don't want more time.

13         THE COURT:  Okay.  No, and I understand.

14    So this isn't about -- right, remember we talked

15    about the fact that today isn't about proving your

16    claims --

17         MS. PARKER:  Yes.

18         THE COURT:  -- or even talking about what

19    you will do to prove your claims or try to do to

20    prove your claims.  Today is just trying to talk

21    about some technical but important issues about how

22    the procedures are going to work for you filing the

23    complaint.

24         I do have a question, Mr. Bursor, before we

25    go much further about, I guess, the citizenship of

1   the professional association.

2          MR. BURSTEIN:  The professional association

3   is unincorporated business.  Under the case law,

4   it's treated as essentially an LLC.  The sole owner

5   of the professional association is Mr. Bursor, who

6   is a citizen of Florida.

7          THE COURT:  Okay.  Then if, you know, based

8   on that understanding, then a defendant can remove a

9   case from state court to federal court.  You can

10  challenge that with something called a request to

11  remand the case.  If you want it to go back to state

12  court, you can make that application.  The New York

13  State Court is a good court.  This court is a good.

14  Both courts are places where I think that you

15  substantively can be heard and get justice.  But

16  it's your decision whether or not you want to ask

17  this court to send it back to that court.

18          So that is something that you can consider.

19  If you are going to do that, you need to do it

20  within 30 days of the date that the case was removed

21  to federal court, which I believe is 30 days from

22  January 11.  That's my recollection.  So you can

23  make that request.

24          But let's put that aside for now, because

25  what we're talking about now is the schedule on

1    which you're planning to and agreeing to file the

2    complaint.  And as the magistrate judge assigned to

3    this case, I can tell you that it is okay, and I

4    will put it on the record, I can change the deadline

5    to February 29, 2024.  And my intention is to do

6    that.

7              My next question for you then, though, is

8    are you willing to agree with Mr. Burstein that you

9    will not file your complaint here before then?

10             MS. PARKER:  Your Honor, I want to ensure

11   that by moving to federal, Mr. Burstein can't use it

12   against me.  Appealing your ruling, otherwise, I

13   intend to file my complaint on the day that it's

14   due, January 31.  And I don't need an extension.  I

15   don't see a reason for an extension.

16             THE COURT:  Okay.  So, you know, if you

17   don't want an extension, I don't believe I can force

18   you to grant an extension.

19             MS. PARKER:  Yeah.

20             THE COURT:  If your question is whether Mr.

21   Burstein can take an appeal for my decision, because

22   we're in federal court, yes, he can take an appeal

23   for my decision because we're in federal court to a

24   federal district judge and then to the Second

25   Circuit Court of Appeals.

1          He would equally, if he were in state

2     court, have an ability to appeal any rulings by the

3     state court judge to different courts, to different

4     other judges.

5          But the right to appeal is not something

6     unique about federal court.  It's something that we

7     have both in federal court and in state court.

8          So just to be clear, the reason that Mr.

9     Burstein is suggesting an extension of time is that

10    he wants to use that time to appeal my decision to

11    ask a different judge to say, Ms. Parker needs to

12    file her complaint privately and under seal so that

13    the public can't see it for a period of time.  And

14    that is one of the things that he will do during the

15    time between now and the time that you file your

16    complaint, if you decide not to file it before

17    February 29.

18          There are also benefits to you of a delay

19    and not filing the complaint until February 29,

20    2024, it gives you more time and therefore puts you

21    under less pressure.  But only you can evaluate

22    whether it's worth it to you to have that extra time

23    and less pressure and agree not to file --

24          MS. PARKER:  More time.  They're expediting

25    things.  And I'm pro se, obviously, and I'm dealing

1    with two powerful office attorneys, so it's just me

2    against them.  I don't need more time.  I'd like to

3    just follow the deadlines, like on pro se, on my

4    e-file website, and the day that things are due.  I

5    think that's probably --

6              THE COURT:  You're right.  So, Mr.

7    Burstein, it seems like a stipulation is off the

8    table and that Ms. Parker doesn't want an extension.

9    Sounds like her plan is to file on Monday.  I, you

10   know, will issue this order today.

11             You certainly can make an emergency

12   application to Judge Clarke.  And I will let her

13   know that that's coming.  And she'll decide what she

14   decides, when she decides it.  I don't have any

15   influence on that.

16             MR. BURSTEIN:  My only concern is, I'm

17   concerned about -- I know Your Honor says you're

18   going to get the report and recommendation out

19   today, but I don't think I can even get to Judge

20   Clarke until that's issued.

21             THE COURT:  I understand.  I mean, it's

22   drafted.  It'll be out within an hour.

23             MR. BURSTEIN:  Oh, okay.  Then thank you

24   very much.

25             Okay.  Thank you, Your Honor.

1          MS. PARKER:  Thank you, Your Honor.  Thank
2     you, Mr. Burstein.
3          THE DEPUTY CLERK:  Before either of you
4     leave, if you can also please make your appearance
5     by just stating your name that you are here.
6          THE COURT:  We just want that on the
7     recording.  Thanks.
8          MR. BURSTEIN:  Oh.  Judd Burstein for the
9     defendants.
10          MS. PARKER:  Angelica Parker.
11          THE DEPUTY CLERK:  Thank you so much.
12          THE COURT:  Is there anything I can do for
13     any of you right now?
14          MR. BURSTEIN:  No.  Thank you, Your Honor.
15          MS. PARKER:  No.  Thank you, Your Honor.
16          THE COURT:  Thank you for your time.  Bye.
17
18
19
20
21
22
23
24
25

1                    C E R T I F I C A T E

2

3        I, Marissa Lewandowski, certify that the

4   foregoing transcript of proceedings in the case of

5   ANGELICA PARKER v. SCOTT BURSOR, et al. , Docket

6   #1:24-cv-00245-JGLC-RFT, was

7   prepared using digital transcription software and is

8   a true and accurate record of the proceedings.

9

10

11   Signature   *Marissa Lewandowski*
                 _____

12                   Marissa Lewandowski

13

14   Date:       February 27, 2024

15

16

17

18

19

20

21

22

23

24

25