UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGELICA PARKER,<br><br>                Plaintiff,<br><br>v.<br><br>SCOTT BURSOR and<br>BURSOR & FISHER, P.A.,<br><br>                Defendants. | Civil Action No.: 1:24-cv-0245 (JGLC) (RFT)<br><br>**STIPULATED PROTOCOL REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

       Pursuant to Paragraph 11(b) of the Court's May 22, 2024 Proposed Case Management Plan, this stipulated protocol (the "Protocol") governs discovery of electronically stored information ("ESI") in this case.

## I.    PURPOSE, SCOPE & COOPERATION:

       This Protocol shall govern the production of ESI in this matter, consistent with the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Southern District of New York and the Individual Rules of the Hon. Robin F. Tarnofsky, U.S.M.J. (the "Court"). The parties agree to cooperate in good faith to reach agreement on conducting e-discovery throughout the course of the matter. The Parties will respond promptly to outstanding discovery issues. This ongoing process will result in this stipulation that the parties agree to in increments as successive provisions are resolved.

## II.    PRESERVATION

       The parties, understanding the necessity of preserving and capturing all relevant data and information on the hard drives or other physical media using forensic methods, agree to use reasonable best efforts to securely maintain, and not destroy or delete, electronic data, including email text messages (SMS, iMessage, Whatsapp, and similar instant messaging services), and

social media posts and messages (Instagram, X (Twitter), Snapchat, Telegram, Facebook, LinkedIn, and similar social media websites and applications) whether on back-up tapes, computer hard drives, servers, or other physical media to the extent that they currently exist and may contain potentially discoverable information. The parties represent that they have put in place a litigation hold to ensure that documents and/or ESI within their possession are not disposed of or deleted pursuant to any existing document retention policies. The parties agree that preservation of potentially relevant ESI will be reasonable and proportional to what is at issue in the case. The parties will cooperate during the meet and confer process to reach agreement on the scope of preservation. A party may use any reasonable steps to preserve documents consistent with the party's record management systems, routine computer operation, ordinary business practices, and the preservation requirements of this agreement. As used in this agreement, "reasonable steps" include: (a) identifying individuals reasonably likely to possess or control potentially relevant documents; (b) notifying such individuals of their duties to preserve potentially relevant documents under the terms of this agreement; and (c) monitoring compliance with the preservation requirements of this agreement. This agreement does not obligate any party to attempt to ensure the preservation of documents and/or ESI that are not in its possession, custody or control. However, neither party shall request and/or otherwise encourage any third party to delete or dispose of any materials that may be discoverable in this matter.

**<u>Preservation of Metadata</u>**

The parties agree to take reasonable steps to preserve records in a form that will permit the collection and production of Metadata that is necessary to fulfill their agreement on the form of production, specifically referenced below.

**III.     CONFIDENTIALITY**

Pursuant to Paragraph 11(d) of the Court's May 22, 2024 Proposed Case Management Plan, all discovery – including but not limited to all ESI productions – shall be subject to the Confidentiality Stipulation and Proposed Protective Order (the "Protective Order") agreed to by the parties and so ordered by the Court on June 13, 2024, the terms of which are expressly incorporated herein by reference.

**IV.     SCOPE OF DISCOVERY**

The parties agree that the scope of discovery of ESI will be consistent with Fed. R. Civ. P 26(b)(1).**A.**     Each Party has and will continue to investigate in good faith to identify the custodians who are most likely to have ESI relevant to this matter, hereafter referred to as "Key Custodians." The Parties will meet and confer in good faith to formulate lists of mutually agreeable search terms (the "Search Terms") that the Parties will use to conduct their search for, and collection and review of, responsive ESI.  Using such Search Terms, each Party shall take reasonable steps to search, collect and review for responsiveness any email and other potential sources of ESI that are attributable to their respective Key Custodians and that lie within the possession, custody and control of the Party, including those third party persons or entities form whom the party has the practical ability to obtain responsive documents (see, e.g., *Signify Holding B.V. v. TP-Link Rsch. Am. Corp*., 2022 U.S. Dist. LEXIS 154197, *4-5).  If, at any time, a Party has a good-faith basis to request discovery from additional custodians ("Additional Custodians"), the Parties shall meet and confer concerning the appropriateness of such discovery.

**V.     SEARCH**

The parties agree to meet and confer about the methods they will use to (1) search ESI to identify information that is subject to production, and (2) filter out ESI that is not subject to

discovery. If necessary, the parties will confer on the development of appropriate search methodology and criteria, including the potential use of computer-assisted search methodologies and other analytics-based search and filtering tools. The parties will discuss whether the use of analytics could be appropriate in this case.

VI.     **PRODUCTION FORMAT**

    A.     **General Format of Production:**  Subject to any stated objections, and to the extent practicable, the Parties shall produce ESI that is responsive, not privileged, and not work product, in native format. This shall include email, texts and instant messages as well as relevant documents maintained on a party's computer systems, shared network drives, cloud system, social media account, video and/or audio recording systems, and/or any other electronically stored information, etc. For messaging data, the requested format would be Relativity Short Message Format (RSMF) files. Search for responsive email shall include, without limitation, each Key Custodian's computer(s) and cellular phone(s) message applications, in-box, sent-box, and any email sub-folders maintained by the custodian. The foregoing notwithstanding, files containing proprietary data or that require redaction may be produced as single page tiffs or jpegs (in accordance with the standards below) and not in native format. The collection of ESI shall be performed using a methodology that satisfies evidentiary requirements relating to chain-of-custody and authentication and preserves metadata. To the extent that any party believes that the production of any ESI in the format required by this agreement would be impractical, or that the cost or burden of producing ESI in the format required by this agreement would be disproportional to the needs of the case, the parties agree to meet and confer in good faith and, barring agreement on the format of production of any such material, shall promptly raise the issue with the Court.

B. **ESI Production Specifications:**

　i. All ESI productions, irrespective of format, shall be produced to the receiving Party via portable media such as compact disc (CD), digital versatile disc (DVD), external hard drive or USB flash drive, or via File Transfer Protocol (FTP) site. The ESI shall be transmitted in a format suitable for loading into Relativity (i.e., with suitable load files and the related metadata), including RSMF format for native short (e.g., text and instant) messages. The parties will also produce TIFF images with associated metadata load files for all native documents.

　ii. All native productions shall be produced in such a way as to identify and/or maintain the file structure of the data being produced and/or to maintain the parent/child relationship. This shall be accomplished by providing a load file identifying the below agreed upon metadata. Said load files shall be consistent with industry standard such as .DAT and .OPT. A slip sheet shall be produced for all native files that cannot be imaged (such as video files) at the time of their production. Such slip sheet shall include the statement "DOCUMENT PRODUCED IN NATIVE FORMAT" and shall include a Bates number.

　iii. For Image Productions that were originally .pdf files, such documents shall be produced as single-page TIFF files along with an OCR acquired text field containing page break indications where available and the agreed upon metadata fields listed below. When subjecting physical documents or .pdf files to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing," "auto-rotation" and

the like should be turned on when documents are run through the process. Parent child relationships shall be preserved.

iv. For Image productions that were already in electronic format—the native file format shall be converted to single-page TIFF images with a minimum of 300 dpi. Accompanying the TIFF images shall be a multipage text (.TXT) file containing searchable text from the native file and the metadata listed below. Load files for the TIFF images shall be created and produced together with their associated TIFF images to facilitate the use of the produced images by a document management or litigation support database system.

v. For video and audio productions, the parties will provide the native file in the following format compatible with the Relativity Viewer on the Google Chrome Browser:

**Audio Files:**

| File Format | Container - Audio Codec | Chrome |
|---|---|---|
| FI_RIFFWAVE | wave - pcm | √ |
| Quicktime Movie | mov - aac | √ |
| Quicktime Movie | mov - vorbis | √ |
| MPEG Layer3 ID3 Ver 1.x | mp3 - mp3 | √ |
| MPEG Layer3 ID3 Ver 2.x | mp3 - mp3 | √ |
| FI_MPGAV2L3 | mp3 - mp3 | √ |
| MPEG-4 file | mp4 - aac | √ |
| MPEG-4 file | mp4 - opus | √ |
| MPEG-4 file | mp4 - vorbis | √ |
| MPEG-1 audio - Layer 3 | mov - mp3 | √ |
| MPEG-1 audio - Layer 2 | mp4 - mp2 | √ |
| MPEG-1 audio - Layer 3 | mp4 - mp3 | √ |
| Ogg Opus | ogg - opus | √ |
| Ogg Vorbis | ogg - vorbis | √ |

**Video Files:**

| File Format | Container - Video Codec - Audio Codec | Chrome |
|---|---|---|
| Quicktime Movie | mov - h264 - aac | √ |
| Quicktime Movie | mov - h264 - dolby_digital | √ |
| Quicktime Movie | mov - h264 - mp2 | √ |
| Quicktime Movie | mov - h264 - mp3 | √ |
| Quicktime Movie | mov - h264 - vorbis | √ |
| Quicktime Movie | mov - h264 - wma1 | √ |
| Quicktime Movie | mov - h264 - wma2 | √ |
| Quicktime Movie | mov - mpeg4 - aac | Audio-only |
| Quicktime Movie | mov - mpeg4 - mp3 | Audio-only |
| Quicktime Movie | mov - mpeg4 - vorbis | Audio-only |
| Quicktime Movie | mov - theora - aac | √ |
| Quicktime Movie | mov - theora - dolby_digital | √ |
| Quicktime Movie | mov - theora - mp2 | √ |
| Quicktime Movie | mov - theora - mp3 | √ |
| Quicktime Movie | mov - theora - vorbis | √ |
| Quicktime Movie | mov - theora - wma1 | √ |
| Quicktime Movie | mov - theora - wma2 | √ |
| MPEG-4 flle | mp4 - h264 - aac | √ |
| MPEG-4 flle | mp4 - h264 - dolby_digital | √ |
| MPEG-4 flle | mp4 - h264 - mp2 | √ |
| MPEG-4 flle | mp4 - h264 - mp3 | √ |
| MPEG-4 flle | mp4 - h264 - opus | √ |
| MPEG-4 flle | mp4 - h264 - vorbis | √ |
| MPEG-4 flle | mp4 - mpeg4 - aac | Audio-only |
| MPEG-4 flle | mp4 - mpeg4 - mp2 | Audio-only |
| MPEG-4 flle | mp4 - mpeg4 - mp3 | Audio-only |
| MPEG-4 flle | mp4 - mpeg4 - opus | Audio-only |
| MPEG-4 flle | mp4 - mpeg4 - vorbis | Audio-only |
| MPEG-4 flle | mp4 - vp9 - aac | √ |
| MPEG-4 flle | mp4 - vp9 - dolby_digital | Audio-only |
| MPEG-4 flle | mp4 - vp9 - mp2 | √ |
| MPEG-4 flle | mp4 - vp9 - mp3 | √ |
| MPEG-4 flle | mp4 - vp9 - opus | √ |
| MPEG-4 flle | mp4 - vp9 - vorbis | √ |
| Ogg Theora Opus | ogg – theora - opus | √ |
| Ogg Theora Vorbis | ogg – theora - vorbis | √ |
| Ogg VP8 Opus | ogg – vp8- opus | √ |
| Ogg VP8 Vorbis | ogg – vp8 - vorbis | √ |

vi. All Archive file types (E.g., .zip or .rar) shall be uncompressed for processing. Each file contained within an archive file shall be produced, and the reference to the parent archive file will be provided in the child file name. If the archive file is itself an attachment, that parent/child relationship shall also be preserved.

vii. Where the original of a produced document is in color, and color is material to the interpretation of the document, the producing Party shall, produce such document in color.

C. **Physical Document (Hardcopy) Production Specifications:** Whenever practicable, responsive documents that are located solely in physical hardcopy format are to be scanned and produced as text-searchable TIFF or PDF files in lieu of photocopy production in their physical form.

D. **Metadata Production Specifications:** The ESI shall include the following metadata fields in the respective load files:

| Field Name | Sample Data | Description |
| --- | --- | --- |
| PRODBEG | P000000222 | First Bates number of native file document/email |
| PRODEND | P000000222 | Last Bates Number of native file document/email (single-page documents will list beginning and ending Bates number) |
| PRODBEGATTACH | P000000222 | First Bates number of a family |

| | | |
|---|---|---|
| PRODENDATTACH | P000000229 | Last Bates Number of a family |
| ATTACH_RANGE | P000000222- P000000229 | Beginning Bates number of parent document through ending Bates number of last attachment/child document |
| CUSTODIAN | Adams, John; johnadams@1776.gov | Email: mailbox in which the file was located Native: Individual who originated the document |
| DUPLICATE CUSTODIAN | Franklin, Ben; Hancock, John; Whipple, William | When global deduplicating has been employed, the custodians who had duplicates of the identical document |
| FROM/ Sender | Adams, John | Email author/sender |
| TO | Hancock, John [mailto:HANCOCK@JOHNHANCOCK.com] | Recipient(s) of email separated by semicolon |
| CC | Franklin, Ben [mailto:bennyf@1776.com] | Carbon copy recipient(s) of email |
| BCC | Jefferson, Thomas [tjefferson@Monticello.org] | Blind carbon copy recipient(s) of email |
| SUBJECT | Declaration w/ edits | Email: subject line Native: document title |
| DATE_SENT | 7/3/1776 | Email: date the email was sent |

| Field | Value | Description |
|---|---|---|
| TIME_SENT | 12:59 AM | Email: time at which email was sent on date in date field |
| DATE_RECEIVED | 7/5/1776 | Email: date the e-mail was received |
| TIME_RECEIVED | 1:25 AM | E-mail: time at which email was received in date field |
| NATIVE_LINK | D:\1969\ P000000222.MSG | Hyperlink to web address, named uniformly with first bates of parent document |
| FILE_EXTEN/ Document Type | i.e., MSG, DOCX, PDF, etc. | File extension of email or native document |
| AUTHOR | Jefferson, Thomas | Author of native document (MS Word, etc.) |
| DATE_CREATED | 6/1/2009 | Date native document was created |
| DATE_MOD | 10/12/2010 | Date native document was last modified |
| PGCOUNT | 1 | Total pages of each original document/email |
| Full Text Path | D:\1969\ P000000222.txt | UNC path to text files of extracted/OCR text (unless redacted) |
| MD5/SHA1 | E4d909c290d0fb1ca068ffaddf22cbd0 | Hash code created for file in |

|  |  | connection with deduplication |
| --- | --- | --- |
| Relativity Attachment ID | 2c0e73fe-5b27-46fg-b923-bb1c470f4932 | The Relativity Attachment ID is a system/metadata field that the Relativity Short Message Viewer uses to provide enhanced support for attachments and avatars. |

E. **Other Specific Production Agreements**

The parties further agree as follows:

a. Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced even if part of families.

b. Parties have no obligation to make non-text-searchable documents text-searchable (by OCR scanning, for example). However, to the extent documents already exist in text-searchable format independent of this litigation, then such documents will be produced in the same text-searchable format at no cost to the receiving party.

c. In the case of an organized compilation of separate paper documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.

d. The parties will make reasonable efforts to identify as exception files those documents that cannot be produced or imaged due to technical difficulties (such as corruption, password protection, digital rights management, or proprietary software

associated to the file). Identified exception files will be listed on a log that includes each file's name, custodian, and reason for the exception.

e.  The parties will make reasonable efforts to ensure that documents produced in native form are decrypted (or that passwords are supplied).

f.  Any media used for production of documents will be encrypted by the producing party. The producing party will contemporaneously transmit the encryption key or password to the receiving party under separate cover.

F. **Not Reasonably Accessible Data**: The following types of data stores are presumed to be not reasonably accessible and are not subject to discovery absent a showing of good cause by the Party seeking production:

1. random access memory ("RAM") or other ephemeral data that are difficult to preserve without disabling the operating system;

2. back-up data that is substantially duplicative of data that are more accessible elsewhere.

G. **De-Duplication**: A Party is only required to produce a single copy of a responsive document. Parties may de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash5 value matching. In addition, the parties reserve the right to undertake custom deduplication of duplicate phone materials. A Party is only required to produce the most inclusive email in an email chain. However, if a less inclusive email within an email chain contains attachments that are not contained in the most inclusive email in that chain, the less inclusive email also must be produced, followed by the attachments. Parties may remove relevant emails provided they are included in the most inclusive final email and do not contain attachments. Any email that changes recipients would be considered a separate email thread and should be produced if

responsive. Attachments to emails shall not be eliminated from the parent email. To the extent the Parties de-duplicate stand-alone electronic documents against an email attachment, the attachment to the email must be the document that is produced.

**H.** **Document Unitization**: Emails and related attachments will be produced such that their parent-child or family relationship is maintained. If the only responsive document in a family is entirely privileged, then the non-responsive documents in that family need not be produced, but the entire set of related documents must be reflected on a privilege log. If an email contains attachments, each attachment should be produced sequentially following the email. If any emails are printed to TIFF or PDF for production, they should be printed in a manner that displays the following headers: (i) the sender, (ii) the persons copied on the email, including carbon-copy recipients ("CCs") and blind-copy recipients ("BCCs"), (iii) the date the email was sent, and (iv) the subject of the email. The Parties will attempt in good faith to unitize documents correctly.

**I.** **Foreign Language Documents**: All documents shall be produced in their original language. If the producing Party has a certified translation of a foreign-language document that is being produced, whether or not the translation is prepared for purposes of litigation, the producing Party may produce both the original document and the certified translation. Nothing in this agreement shall require a producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

**VII. DOCUMENTS PROTECTED FROM DISCOVERY**

**A.** **Non-Waiver of Privilege**

Pursuant to Fed. R. Evid. 502(d), the production of privileged or work product protected documents or communications, electronically stored information ("ESI") or information, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection from discovery

in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). *The Parties expressly agree that neither 502(b) nor the common law regarding waiver of privilege through production shall have any application to any party's claim of production of privileged documents, ESI or information.* Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Any Party that discloses or produces a document or ESI that it considers privileged or otherwise protected from discovery will give written notice to the Receiving Party, identifying the document or ESI in question, the asserted privilege or protection, and the grounds therefor. Upon receipt of notice of the assertion of privilege or protection over produced documents or ESI, the receiving party will: (a) to whatever extent it contests the assertion of privilege or protection, promptly so notify the producing party, and maintain the contested documents and ESI in confidence pending resolution of the contest by the parties or the Court; and (b) to whatever extent the receiving party does not contest the assertion of privilege or protection, (i) promptly return and certify in writing to the producing party that it has returned the applicable document(s) and/or ESI, and destroyed all copies of the same, and has made reasonably diligent efforts to identify and (ii) locate and destroy each copy thereof and all information derived therefrom. In the event of a contested assertion of privilege or protection over produced documents that cannot be resolved amicably after meeting and conferring in good faith, either party may bring the contest to the attention of the Court by motion.

### B. **Privilege Logs**

Nothing in this Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege, protection or immunity (collectively, "Privileged Material"). Any production of Privileged Material shall not constitute a waiver of, or an estoppel as to any claim of, such privilege, protection or immunity, but instead shall be governed by the terms and procedures found in this Protocol and the Confidentiality Order. A party that withholds ESI or documents on the grounds of attorney-client privilege and/or work product protection shall provide a log that satisfies the requirements of Federal Rule of Civil Procedure 26(b)(5) and any applicable local rules.

Communications between a party and his or her trial counsel that post-date the filing of the complaint, and that do not copy and were not sent to any third party, need not be placed on a privilege log. The privilege log will be produced in accordance with the timing specified by the Federal Rules of Civil Procedure.

## XI. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties by the Court for good cause shown or for any other reason the Court deems appropriate.

**IT IS SO STIPULATED**, through Counsel of Record.

| **WIGDOR LLP** | **GIBBONS P.C.** |
|---|---|
| /s/ Michael J. Willemin | /s/ Christine A. Amalfe |
| Jeanne M. Christensen, Esq. | Christine A. Amalfe, Esq. |
| Michael J. Willemin, Esq. | Mark S. Sidoti, Esq. |
| **Wigdor LLP** | Charles S. Korschun, Esq. |
| 85 Fifth Avenue, 5th Floor | Daniel S. Weinberger, Esq. |
| New York, NY 10003 | **GIBBONS P.C.** |
| *Attorneys for Plaintiff* | One Pennsylvania Plaza |

|  | 45th Floor, Suite 4515<br>New York, NY 10119-3701<br>Tel: (212) 613-2000<br>Fax: (212) 290-2018<br>camalfe@gibbonslaw.com<br>msidoti@gibbonslaw.com<br>ckorschun@gibbonslaw.com<br>dweinberger@gibbonslaw.com<br><br>-and-<br><br>Judd Bernstein<br>JUDD BURSTEIN, P.C.<br>110 East 59th Street, 22nd Floor<br>New York, NY 10022<br>Tel: (212) 974-2400<br>Fax: (212) 974 2944<br>jburnstein@burlaw.com<br>*Attorneys for Defendants*<br>*Scott Bursor and Bursor & Fisher, P.A.* |
|---|---|

**SO ORDERED:**

_____
Hon. Robyn F. Tarnofsky, U.S.M.J.