UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Angelica Parker,<br><br>      Plaintiff,<br><br> -against-<br><br>Scott Bursor, et al.,<br><br>      Defendants. | 24-CV-0245 (JGLC) (RFT)<br><br>**OPINION AND ORDER** |

On October 29, 2024, I held a conference to address certain outstanding discovery issues. On October 30, 2024, I issued an order (ECF 203) directing Defendants Scott Bursor and Bursor & Fisher PA ("B&F") to file a letter supporting their argument that they should not be compelled to respond to Plaintiff's demands for jurisdictional discovery. Defendants timely filed that letter. (*See* ECF 207.) Plaintiff filed a response on November 12, 2024. (*See* ECF 218.) For the reasons set forth below, Plaintiff's application to be permitted to take jurisdictional discovery concerning Defendants is GRANTED. The parties are directed by **November 27, 2024** to meet and confer on the appropriate scope of such discovery in light of this order. If the parties have any disputes about the appropriate scope of such discovery, they shall bring them to my attention by **December 6, 2024.**

## Factual Background

The Complaint advances causes of action for violations of the New York City Victims of Gender Motivated Violence Act, battery, and intentional infliction of emotional distress against Defendants. (*See* ECF 53-1, Compl. ¶¶ 264-86.) Bursor, a citizen of Florida, is the sole owner of the law firm B&F, which is an unincorporated entity with its principal place of business in Miami, Florida. (*See id.* ¶¶ 9-10.)

According to Plaintiff, Bursor operates B&F as a single entity, and while the firm is based in Miami, Florida, its largest office is in New York City. (*See* ECF 84, Pl. Opp. to Motion To Dismiss at 23.) Plaintiff asserts that B&F derives substantial income from the State of New York (*see id.*), and that Bursor frequently worked from B&F's New York office during his relationship with her, living in residences in Watermill, N.Y. and New York City (*see* ECF 218, Letter at 2.) Plaintiff also contends that Bursor used B&F employees, including one based in New York, to arrange for Plaintiff's travel. (*See id.*)

## Legal Standards

### I. Legal Standard for Personal Jurisdiction

Determining whether a federal court has personal jurisdiction over a defendant involves a "two-part inquiry." *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).[1] The first step requires application of the forum state's long-arm statute. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010). If the forum state's long-arm statute allows for personal jurisdiction, the next step entails "assess[ing] whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Metro. Life*, 84 F.3d at 567; *see also Chloé*, 616 F.3d at 164.) The due process analysis involves both a "minimum contacts" analysis and a "reasonableness" inquiry. *Chloé*, 616 F.3d at 164.

As relevant to the due process inquiry, "contacts with [a] forum may confer two types of jurisdiction—specific and general." *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 453 (S.D.N.Y. 2005) (footnote omitted). General jurisdiction, which is the type of jurisdiction about which Plaintiff is seeking discovery (*see* ECF 218 at 1), "exists only when a [defendant]'s contacts with a state are 'so "continuous and systematic" as to render [it] essentially at home in the forum

State.'" S*onera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "A court with general jurisdiction over a [defendant] may adjudicate all claims against that [defendant]—even those entirely unrelated to the defendant's contacts with the state." *Id.*

In 2014, the Supreme Court decided *Daimler AG v. Bauman*, 571 U.S. 117 (2014), which holds that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there" and that a corporation will not be subject to "general jurisdiction in every State in which [it] 'engages in a substantial, continuous, and systematic course of business.'" *Id.* at 137-38. "Accordingly, the [proper] inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* at 138-39 (quoting *Goodyear Dunlop*, 564 U.S. at 919).

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler*, 571 U.S. at 137 (quoting *Goodyear Dunlop*, 564 U.S. at 924) (internal quotation marks omitted). Other than in an "exceptional case," in which a corporation's contacts with a forum are so extensive as to support general jurisdiction notwithstanding domicile, a corporation will be subject to all-purpose jurisdiction only in its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 761 n. 19.[2] Likewise, individuals are in most cases

---

[1]   Unless otherwise indicated, internal quotation marks and citations are omitted.

[2]   The same test applies to an unincorporated entity, which is how Plaintiff categorizes B&F. As the Second Circuit explained:

> There is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another

3

subject to general personal jurisdiction only in the state where they are domiciled. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021) ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile."); *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) ("[While,] [i]n an exceptional case, an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere, . . . the Second Circuit has yet to find such a case."); *Owens v. Ronemus*, No. 23-CV-3036 (PGG), 2024 WL 3105605, at *5 (S.D.N.Y. June 24, 2024) (collecting cases).

That a corporate defendant "ha[d] offices and employees in New York" is not, standing alone, a sufficient basis for a court to exercise personal jurisdiction over that defendant. *Pfaff v. Deutsche Bank AG*, 20-MC-25 (KPF), 2020 WL 3994824, at *5 (S.D.N.Y. July 15, 2020). Under *Daimler*, factors such as "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state," *Patel v. Patel*, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007), are "relevant only if they exist to such a degree in comparison to the corporation's overall national and international presence that would render the corporation an 'exceptional case' where it is at home in [an] additional forum." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 104 (S.D.N.Y. 2015).

---

entity. Indeed, in *Gucci* this Court relied on *Daimler* when it found there was no general personal jurisdiction over the Bank of China, a non-party bank that was incorporated and headquartered in China and owned by the Chinese government. The Court described the *Daimler* test as applicable to "entities." "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an *entity*." *Gucci*, 768 F.3d at 134 (emphasis added); *see id.* at 134 n.13 ("The essence of general personal jurisdiction is the ability to entertain 'any and all claims' against an entity based solely on the entity's activities in the forum, rather than on the particulars of the case before the court.").

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016).

"Although the Supreme Court's recent decisions concerning general jurisdiction have focused on corporate entities, the same analysis obviously applies to individuals transacting business in a forum state." *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 270 n.2 (E.D.N.Y. 2015); *see also Owens*, 2024 WL 3105605, at *7 (requiring the plaintiffs to demonstrate that that the individual defendant's "contacts with [the] forum [were] so extensive as to support general jurisdiction notwithstanding domicile elsewhere") (collecting cases).

## II.   Legal Standard for Granting Jurisdictional Discovery

District courts enjoy broad discretion in deciding whether and to what extent to permit jurisdictional discovery. *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 811-12 (S.D.N.Y. 2005) (collecting cases); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." (internal quotation marks and citation omitted)).

A plaintiff's "conclusory non-fact-specific jurisdictional allegations" are not sufficient to justify jurisdictional discovery. *Kucher v. Domino's Pizza, Inc.,* No. 16-CV-2492 (AJN), 2017 WL 2987214, at *11 (S.D.N.Y. Feb. 13, 2017) (quoting *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.,* 64 F. Supp. 3d 494, 507 (S.D.N.Y. 2014)). However, a plaintiff need not make a prima facie showing to justify granting jurisdictional discovery. *See Kucher*, 2017 WL 2987214, at *11 (citing *Ehrenfeld v. Mahfouz,* 489 F.3d 542, 550 n.6 (2d Cir. 2007)). "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a prima facie showing as to the existence of jurisdiction." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004); *see also Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 224 (S.D.N.Y. 2021) (granting targeted jurisdictional discovery because the plaintiff had called into

question, among other jurisdictional facts, the nature of the relationship between the corporate defendants, one of which was headquartered in New York).

**III.    Targeted Jurisdictional Discovery Is Warranted**

Defendants do not appear to dispute that the New York State long-arm statute would allow this Court to exercise jurisdiction over them. (*See* ECF 207, Letter at 2.) The issue is whether an exercise of general personal jurisdiction over Defendants would comport with due process. (*See id.* at 3 n.6.)

A.    Plaintiff's Arguments in Support of Jurisdictional Discovery

Plaintiff argues that Defendants are subject to the general personal jurisdiction of this Court because they meet the "minimum contacts" test. (*See* ECF 218, Pl.'s Letter at 1.) While that is no longer the appropriate legal standard, *Daimler*, 571 U.S. at 138-39, I nevertheless test Plaintiff's underlying factual allegations to see whether there is a chance that Plaintiff could, with jurisdictional discovery, demonstrate that Defendants are essentially at home in this District.

As to B&F, Plaintiff contends that its largest office is in New York City; it derives substantial income from the State of New York; a New York-based employee, among other employees, assisted Plaintiff with travel arrangements; and its employees assisted other girlfriends of Bursor with travel arrangements. (*See* ECF 218, Pl.'s Letter at 2.) As to Bursor, Plaintiff argues that because he is the sole owner of B&F, its contacts should be attributed to him; that he owned a house in Watermill, New York and resided there and in New York City during his relationship with Plaintiff; that he frequently worked from B&F's New York office during that period; that he was personally involved in the substantial events and omissions that took place in New York that are

6

the basis for this case; and that he removed this case from state court to this Court and has participated in the litigation here since removal. (*See id.*)

      B.      <u>Defendants' Arguments Against Jurisdictional Discovery</u>

Defendants argue that the Court should deny jurisdictional discovery because Plaintiff has not made out a prima facie case of general personal jurisdiction over either of them: Defendant asserts that Plaintiff has failed to point to facts suggesting that this is the truly exceptional case where a defendant is essentially at home in a jurisdiction notwithstanding being domiciled elsewhere. (*See* ECF 207, Letter at 4.)

Defendant also takes the position that Plaintiff waived jurisdictional discovery to support the argument that this is just such a truly exceptional case by failing to discuss the *Daimler* test in opposition to Defendants' motion to dismiss. (*See id.*)

      C.      <u>Analysis</u>

          1.   Waiver

To begin with the threshold issue of waiver, I conclude that Plaintiff did not waive the opportunity to seek jurisdictional discovery by neglecting to discuss the *Daimler* test in the motion to dismiss the Complaint for lack of personal jurisdiction. In arguing to the contrary, Defendants take an overly narrow view of Plaintiff's opposition to the motion to dismiss. Plaintiff clearly disputed Defendants' argument that the Court lacks general personal jurisdiction over them. (*See* ECF 84, Pl.'s Opp. at 23.) In so doing, she left open the possibility of seeking jurisdictional discovery to support her contention that the Court may properly exercise general personal jurisdiction over Defendants. *See Brown v. CBS Corp.*, No. 12-CV-01495 (AWT), 2013 WL 12303039, at *1 (D. Conn.

Oct. 25, 2013) (denying without prejudice the defendant's motion to dismiss to allow for new briefing after jurisdictional discovery was complete).

    2. B&F

As to B&F, while it is a close question, I conclude that Plaintiff has raised a genuine issue of jurisdictional fact concerning whether B&F is essentially at home in New York by alleging that B&F's largest office is in New York and that the firm derives substantial income from New York. The cases on which Defendants rely to argue the contrary position decided on the merits of the jurisdictional question; they are not decisions on motions seeking jurisdictional discovery. Those cases all involved a determination that the defendants' contacts with the forum were insufficient for an exercise of general personal jurisdiction. *See BNSF Ry. Co. v. Tyrrell,* 581 U.S 402, 414-15 (2017) (reversing the Montana Supreme Court's denial of a motion to dismiss for lack of personal jurisdiction); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499-500 (2d Cir. 2020) (affirming grant of motion to dismiss for lack of personal jurisdiction); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 623-24 (2d. Cir 2016) (affirming grant of motion to dismiss, noting that the defendant had renewed the motion to dismiss after the parties conducted jurisdictional discovery). A grant of jurisdictional discovery does not require a showing that the forum court has general personal jurisdiction over the defendants – if the plaintiff could make such a showing, there would be no need for jurisdictional discovery. Nor does a grant of jurisdictional discovery require that the plaintiff make a prima facie showing. *See, e.g.*, *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 231 (S.D.N.Y. 2015) (explaining that a plaintiff need not "make out a prima facie showing for personal jurisdiction . . . provided that the plaintiff makes a threshold showing of jurisdiction and establishes that its position is not frivolous"), *aff'd sub nom. Tannerite Sports, LLC*

*v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017). A court has discretion to permit jurisdictional discovery where the plaintiff has raised a genuine issue of jurisdictional fact. *See Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) ("If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction."), *as clarified on denial of reconsideration*, No. 02-CV-6356 (SHS), 2005 WL 2585227 (S.D.N.Y. Oct. 13, 2005).

All but one of the cases on which Defendants rely to support their position that the Court should not allow jurisdictional discovery are inapposite for the additional reason that, while each of those cases held that a defendant was not essentially at home in a jurisdiction where it was not domiciled despite very substantial connections to the forum, the insufficiency of the defendants' very significant connections was based on an analysis of comparative significance, not the absolute strength of the connections. As the Supreme Court explained in *BNSF Railway*:

> [T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id.,* at 139, n. 20, 134 S. Ct., at 762, n. 20 (internal quotation marks and alterations omitted). Rather, the inquiry "calls for an appraisal of a corporation's activities in their entirety"; "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Ibid.*

581 U.S at 414; *see also Chufen Chen,* 954 F.3d at 500 (finding no general personal jurisdiction over the non-domiciliary defendant because the plaintiffs had "made no showing that the company's relationship with New York was in any way significant or exceptional in relation to the company's nationwide business activity"); *Brown,* 814 F.3d at 629 (holding that a court "must assess the company's local activity not in isolation, but *in the context of the company's overall activity*" and explaining that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts, but calls for an appraisal of a corporation's activities in their

9

entirety, nationwide and worldwide"); *Pfaff*, 2020 WL 3994824, at *5 (finding that there was no general personal jurisdiction over the foreign defendant where only ten percent of its employees were located in North America and the United States was the source of a minority of the defendant's revenues). In the final case, the Court concluded that the defendant's ties with the forum were not particularly substantial. *See In re Petrobras Sec. Litig.*, 395 F. Supp. 3d 376, 383 (S.D.N.Y. 2019).

      3. Bursor

As to Bursor, I likewise conclude that, while the question is a close one, Plaintiff has raised a genuine issue of jurisdictional fact concerning whether Bursor is essentially at home in New York by alleging that he owned a house in Watermill, New York and resided there and in New York City during his relationship with Plaintiff and that he frequently worked from B&F's New York office during that period; and by arguing that as the sole owner of B&F, the firm's contacts should be attributed to him.[3] *Owens*, 2024 WL 3105605, at *7, is instructive on this issue. In that case, the Court permitted jurisdictional discovery about the non-domiciliary individual defendant; thereafter, the plaintiffs argued that the individual defendant was subject to the general personal jurisdiction of the Court because he was a member of the New York bar and a partner in a law firm headquartered in New York. *See id.*

---

[3] Plaintiff's argument that Bursor was personally involved in the underlying events that took place in New York and that are the basis for this case is relevant to the question of specific personal jurisdiction but not general personal jurisdiction. And Plaintiff's argument that despite Bursor's motion to dismiss for lack of personal jurisdiction, he has somehow consented to the general personal jurisdiction of this Court by removing the case here from state court and participating in the litigation is unavailing. "Removal does not waive any Rule 12(b) defenses." *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) (noting that the defendant had "raised his defense in a timely manner," filing a motion to dismiss "immediately" upon removal, and "promptly commenc[ing] discovery").

The Court held that the plaintiffs' proffer fell short of a prima facie showing that the non-domiciliary individual defendant was subject to the general personal jurisdiction of the Court. The Court explained that, while the individual defendant's memberships in the New York bar and in a law firm headquartered in New York presented a closer question than cases where the individual defendants spent a small minority of their time in the forum, those facts, standing alone, were insufficient to support the Court's exercise of general personal jurisdiction. *See id.* (citing *Reich*, 959 F.3d at 63, in which the Second Circuit concluded that the individual defendant's relationships with New York banks and law firms and ownership of an apartment in New York were insufficient to support general personal jurisdiction because he spent fewer than five percent of his time in New York; and citing *Lebron v. Encarnacion,* 253 F. Supp. 3d 513, 519-20 (E.D.N.Y. 2017), in which the court held that the individual defendant was not subject to its general personal jurisdiction based on his playing between nine and 12 professional baseball games in the forum each year). The Court held that in the absence of any facts about how much time the individual defendant spent in New York, it could not exercise general personal jurisdiction, because any conclusion that the individual defendant's law practice "regularly brings him into New York" would be "mere speculation." *Owens,* 2024 WL 3105605, at *7.

4. Scope of Discovery

Based on the foregoing analysis, I conclude that Plaintiff is entitled to the following general categories of jurisdictional discovery for the time period at issue in this suit: 1) as to B&F, comparative information concerning the solicitation of business in New York and nationwide, the presence of bank accounts and other property in New York and nationwide, the presence of employees in New York and nationwide, and revenues generated from New York and nationwide;

11

and 2) as to Bursor, the amount of time he spent in New York, and the presence of bank accounts and other property in New York and nationwide.[4]

### Conclusion

For the foregoing reasons, Plaintiff's application to be permitted to take jurisdictional discovery concerning B&F is GRANTED. The parties are directed by **November 27, 2024** to meet and confer on the appropriate scope of such discovery in light of this order. If the parties have any disputes about the appropriate scope of such discovery, they shall bring them to my attention by **December 6, 2024.**

Dated: November 21, 2024
       New York, New York

SO ORDERED.

_____
**ROBYN F. TANARSKY**
**United States Magistrate Judge**

---

[4] Plaintiff is not entitled to the same discovery as the Court permitted in *Vega,* since *Vega* involved substantially different jurisdictional issues than those present here.