UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELICA PARKER,

                         Plaintiff,

            -against-

SCOTT BURSOR, individually and in his
professional capacity as owner of Bursor &
Fisher, P.A., and BURSOR & FISHER, P.A.,

                         Defendants.

24-CV-245 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Angelica Parker, who was in an intimate relationship with Scott Bursor from 2018 to 2023, brings this action against Scott Bursor and Bursor & Fisher, P.A., for years of alleged emotional, physical, and sexual abuse. She raises claims under the New York City Victims of Gender-Motivated Violence Protection Act, as well as state law claims for battery and intentional infliction of emotional distress.

Defendants, contending that Parker's lawsuit is an attempt at defamation and extortion through false allegations, seek to strike the Complaint, seal the Complaint, and dismiss the Complaint for improper pleading, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. Defendant Bursor's former spouse, non-party Lara Goldfelder, also seeks to intervene on behalf of her daughters to seal and strike the Complaint.

For the reasons stated herein, Goldfelder's motion to intervene is DENIED. Defendants' motion to seal the Complaint and related documents is DENIED. Defendants' motions to dismiss under Rule 8(a)(2), Rule 12(b)(2), and Rule 12(b)(6) are DENIED, except that the Court reserves decision regarding claims against Bursor & Fisher, P.A., pending the submission of a declaration on jurisdictional discovery. Defendants' motion to strike is DENIED IN PART.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of this Order. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

### I.    Factual Background

Plaintiff Angelica Parker began dating Defendant Scott Bursor ("Bursor") in October 2018, when Parker was living in New York and Defendant in Miami, Florida. ECF No. 53-1 ("Complaint" or "Compl.") ¶ 11. At all relevant times, Bursor owned and operated Defendant Bursor & Fisher, P.A. ("B&F"), a law firm with multiple offices, including one in New York. *Id.* ¶¶ 7, 10. Parker's intimate relationship with Bursor continued on and off until 2023, and the alleged incidents of abuse during that relationship give rise to this action. *Id.* ¶ 2.

Between October 2018 and May 2023, Parker claims that Bursor engaged in numerous instances of verbal and psychological abuse, including by pressuring her into participating in sexual acts, expressing anger when Parker refused to participate in sexual acts, initiating conflicts with Parker's previous partners and male friends, blaming failures in the relationship on Parker, and declaring his love and dependency on Parker when he feared she would end the relationship. *Id.* ¶¶ 11–195. Parker also alleges instances of physical and sexual abuse, which the Court summarizes below:

Parker's first allegation of physical abuse occurred on March 21, 2020, in New York, New York, in the midst of the COVID pandemic. *Id.* ¶ 23. Parker denied Bursor sex because she was having trouble breathing. *Id.* In response, Bursor assaulted Parker by grabbing her and attempting to remove her clothes. *Id.* Parker resisted and an argument ensued, during which

Bursor expressed frustration that Parker denied him sex, and that the aggressive grabbing was "how [he's] handled many girls." *Id.* ¶¶ 23–24.

The second allegation of physical abuse occurred on September 10, 2020 in Long Island, New York. *Id.* ¶ 58. Parker refused to have sex with Bursor because she was menstruating. *Id.* ¶ 61. Bursor then attempted to have sex with her, not releasing Parker until she put a tampon in front of his face. *Id.* ¶¶ 62–64.

Ten days later, on September 20, 2020—now in New York City—Bursor committed what Parker alleges is the third instance of assault. *Id.* ¶¶ 65, 67. According to Parker, throughout that evening, Bursor relentlessly pressured Parker for sex despite Parker's expressions that she did not want to have sex. *Id.* ¶¶ 65–77. At one point, Bursor threatened to kick Parker out of their shared apartment if she continued to refuse sex. *Id.* ¶ 78. At another point, Bursor threatened to rape Parker if she did not leave the apartment. *Id.* ¶ 79. When Parker refused to have sex or to leave, Bursor became violent. *Id.* ¶¶ 80, 81. Parker attempted to call the police. *Id.* ¶ 82. Bursor then threw her phone out of the room and sexually assaulted her. *Id.* ¶¶ 83–85.

In January 2021, as a fourth alleged instance of physical abuse occurring in Miami, Bursor threw a water bottle at Parker. *Id.* ¶¶ 107, 109, 110. Before and after this incident, Bursor expressed discontent at Parker's refusal to participate in sexual acts. *See id.* ¶¶ 108–11. Parker alleges that the next day, Bursor attempted to physically remove her from the Miami home, causing her to call the police. *Id.* ¶ 112. In response, Bursor had Parker falsely arrested for battery, then bailed out and represented by his law partner, Sarah Westcott. *Id.* ¶¶ 113–115.

On August 30, 2021, Parker alleges that a fifth instance of physical abuse occurred in Long Island, New York. *Id.* ¶¶ 126, 130, 131. After refusing to visit Bursor in his room for some

time and eventually relenting, Parker alleges that Bursor hit her twice across the face. *Id.* ¶¶ 128–31.

In February 2022, Parker alleges that Bursor threw her across an apartment floor while in the company of other women. *Id.* ¶¶ 139, 142.

In March 2022, Parker alleges that while in Las Vegas, Bursor pressured Parker about sex in an altercation that became physical, requiring hotel staff to break up the fight. *Id.* ¶¶ 149–51.

Around March 21, 2022, Parker alleges that Bursor attempted to sexually assault Parker's female friend. *Id.* ¶¶ 152–54.

Around April 14, 2022, Parker alleges that Bursor assaulted her by pinning her on a bed and covering her mouth to obstruct her from breathing. *Id.* ¶¶ 156–58.

During the summer of 2022, Parker alleges that Bursor assaulted Parker multiple times at a hotel in New York City, and then assaulted her again in New York City when the two returned from a trip to Europe. *Id.* ¶¶ 159–65.

Parker alleges that the final incident of assault occurred on May 2, 2023. *Id.* ¶¶ 166–95. After being separated for some time with brief reunions, Parker met with Bursor in his apartment.[1] During that meeting, Parker alleges that Bursor forced her to perform oral sex, and then physically assaulted her when she tried to put on clothes. *Id.* ¶¶ 177, 180–182. Parker attempted to text for help. *Id.* ¶ 182. Bursor then dragged Parker down the hall and repeatedly hit and choked her. *Id.* ¶ 183. At some point, a glass table and vase broke. *Id.* ¶ 184. While the floor was covered in shattered glass, Bursor removed Parker's phone from her hand, dragged her naked body through the shattered glass, and threw her out of the apartment. *Id.* ¶¶ 184–86.

---

[1] The Complaint does not specify the location of this incident, although it appears from Defendants' motion to dismiss and Parker's response that this occurred in Florida. *See* Mot. at 25, 31; Opp. at 22.

In the aftermath, Parker alleges that Bursor made numerous threats to her, her friends, and her attorneys. *Id.* ¶¶ 191–244. Parker alleges that although she procured legal counsel shortly after the May 2023 incident, Bursor's threats to her attorneys caused them to disengage. *See id.*

## II.    Procedural History

On November 22, 2023, Parker commenced this action *pro se* in the New York State Supreme Court by filing a summons with notice. *Id.* ¶ 233. On January 11, 2024, Defendants removed this case to the Southern District of New York. ECF No. 1. The Court referred this case to Magistrate Judge Tarnofsky for general pre-trial purposes, and for a Report and Recommendation on any dispositive motion. ECF No. 6. Shortly thereafter, Defendants moved for a preliminary injunction and temporary restraining order requiring Parker to file the Complaint under seal. ECF No. 11. Since then, Defendants have filed a number of motions requesting the sealing of related documents and transcripts. *See, e.g.*, ECF Nos. 12, 26, 51, 62, 69, 157, 167, 191.

On January 24, 2024, Judge Tarnofsky issued a Report and Recommendation to grant Defendants' motion in part to the extent any filings could identify or harm minor children, but to deny the motion in all other regards. ECF No. 25 at 12 ("R&R"). On January 25, 2024, the Court ordered Parker to file her Complaint under seal and indicated that the Court would determine whether to unseal the Complaint, in whole or in part, when considering the R&R and any objections thereto, and temporarily sealed the R&R. ECF No. 34. Other motions by Defendants to seal related documents have also been granted temporarily, pending the Court's decision. *See* ECF Nos. 64, 77, 114, 125, 158, 192, 216. Defendants filed their objections to the R&R on April 28, 2024. ECF No. 63 ("Objections" or "Objs."). Parker, after retaining counsel, filed her response to the objections on May 13, 2024. ECF No. 68.

5

On September 25, 2024, non-party Lara Goldfelder, Bursor's former wife and the mother of his three children, moved to permissively intervene to support Defendants' motion to seal the Complaint. ECF Nos. 168, 169 ("Goldfelder Mot."). Parker filed her opposition on October 9, 2024. ECF No. 187 ("Goldfelder Opp."). Goldfelder replied on October 16, 2024. ECF No. 196 ("Goldfelder Rep.").

Parker, after obtaining counsel, filed her Complaint under seal on March 22, 2024. ECF No. 53-1. Parker alleges four causes of action: 1) violations of the New York City Victims of Gender-Motivated Violence Protection Act (VGMVPA), N.YC. Admin. Code § 10-1102, *et seq.*, against Bursor; 2) violations of the New York City Victims of Gender-Motivated Violence Protection Act (VGMVPA), N.YC. Admin. Code § 10-1102, *et seq.*, against B&F; 3) battery against Bursor under New York State law; and 4) intentional infliction of emotion distress ("IIED") against Bursor under New York State law. Compl. ¶¶ 264–284; *see also* ECF No. 84 ("Opposition" or "Opp.") at 4–5 & n.4. To the extent that the acts on May 2, 2023 form a separate battery offense, the Complaint also alleges battery under Florida state law. *See* Opp. at 5 & n.3, 22.

On May 13, 2024, Defendants moved to dismiss and strike the Complaint. ECF Nos. 70, 71 ("Mot."). Parker filed her opposition on June 4, 2024. ECF No. 84. Defendants filed a reply on June 11, 2024. ECF No. 88 ("Reply" or "Rep."). Among other arguments reviewed in this Order, Defendants' motion to dismiss contends that the Court lacks personal jurisdiction over the Defendants. Mot. at 28–31. On November 21, 2024, Magistrate Judge Tarnofsky issued an order permitting Parker to take jurisdictional discovery concerning whether the Court may exercise general personal jurisdiction over the Defendants. ECF No. 223. On December 13, 2024, the parties informed Judge Tarnofsky that rather than proceed with jurisdictional discovery,

Defendants would consent to providing Parker with a declaration containing the information that Parker would be entitled to receive through jurisdictional discovery as outlined in Judge Tarnofsky's November 21 order. ECF No. 232. The parties have yet to update the Court regarding the status of that declaration.

## DISCUSSION

This section proceeds in six parts. First, the Court considers and denies non-party Lara Goldfelder's motion to intervene. Second, the Court relies upon the reasoning of Judge Tarnofsky's R&R and denies Defendants' motion to seal the Complaint. Third, the Court finds that the Complaint meets the pleading requirements of Rule 8(a)(2). Fourth, the Court determines that it has personal jurisdiction over Bursor for tortious acts outside of New York, but reserves decision regarding B&F. Fifth, the Court examines the merits of the Complaint under Rule 12(b)(6) and finds that the Complaint has sufficiently and timely pled claims for violation of the VGMVPA against Bursor, battery against Bursor under New York and Florida law, and IIED against Bursor under New York law. Finally, the Court considers and denies Defendants' motion to strike the Complaint.

## I.    Lara Goldfelder's Motion to Intervene

Lara Goldfelder, the former spouse of Bursor and the mother of his three daughters, seeks permissive intervention pursuant to Federal Rule of Civil Procedure 24(b) to support Defendants' motion to seal the Complaint and related documents. ECF No. 170 ¶¶ 1, 2, 4; *see* Goldfelder Mot. at 3. Goldfelder became aware of this lawsuit upon receipt of a subpoena on August 29, 2024. ECF No. 170 ¶ 7. Goldfelder contends that "the harm her three children would suffer as a result of the unsealing of the Complaint or its allegations greatly outweighs any benefit or interest the public may have." Goldfelder Mot. at 2.

Federal Rule of Civil Procedure 24(b) governs permissive interventions. To be granted intervention by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (internal citation omitted). "[F]ailure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Id.* (internal citation omitted). The Court holds "broad discretion in deciding whether to grant permissive intervention." *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011).

Here, the Court determines that Goldfelder fails to meet the fourth requirement of *Floyd*. The Court recognizes that Goldfelder has an interest in the emotional and psychological wellbeing of her children, which may be affected by publicization of the Complaint and related documents. However, that interest is sufficiently protected by Defendant Bursor. The essence of Bursor's motion to seal and motions to strike and dismiss is a concern regarding irreparable harm to his reputation through the publicization of this case. *See* ECF No. 63 at 2–3; ECF No. 71 at 1–3. Bursor has also specifically iterated arguments on the matter of his daughters' wellbeing in arguments at hearing and his opposition to the R&R. *See* ECF No. 49 at 4:4–9; ECF No. 63 at 24. Goldfelder's motion does not suggest she would provide any additional information to the Court that would aid the Court in considering this interest. It appears, instead, that Defendants intend to use Goldfelder's intervention as an opportunity to offer contravening statements on Bursor's good character. *See* Goldfelder Mot. at 1, 4–5. Any such statements, however, are irrelevant to the Court's decision of whether to seal the Complaint and related documents. Accordingly, the motion to intervene is denied.

## II.    Defendants' Motion to Seal

Given the multitude of motions to seal filed in this case, the Court first clarifies the matter at issue and the role of Judge Tarnofsky's R&R. Originally, Defendants sought a temporary restraining order and preliminary injunction ordering Parker to file her forthcoming complaint under seal temporarily, to allow Defendants time to move to strike portions of the complaint and for the Court to rule on that motion. ECF Nos. 11–16. Judge Tarnofsky issued an R&R recommending a denial in part, such that Parker may file the complaint publicly but must redact any minor's personal identifying information and any allegations that could cause harm to minors if publicly disclosed. R&R at 12. Without adopting or rejecting the R&R, the Court ordered Parker to temporarily file the complaint under seal (ECF No. 34) and has since permitted all related documents to be temporarily sealed until the Court renders a final decision regarding sealing. ECF Nos. 64, 77, 114, 125, 158, 192, 216. Since that order, Defendants have amended their position to request the permanent sealing of the Complaint and related documents. *See* Objs. at 1; Mot. at 17–18.

The Court now considers whether the Complaint and all related documents should be permanently sealed, redacted in part, or wholly unsealed. In doing so, the Court treats Judge Tarnosky's R&R on Defendants' motion for injunctive relief as a report and recommendation on the broader issue of whether the Complaint and related documents should be permanently sealed, redacted, or wholly unsealed, given that the applicable law in the R&R and the current issue before the Court are identical.

A district court reviewing a magistrate judge's report and recommendation may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Within fourteen days after the magistrate judge has issued

their report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* the portions of the report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008). For portions of the report and recommendation to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Fischer v. Forrest*, 286 F. Supp. 3d 590, 600 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020) (internal citation omitted). "To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error." *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 450 (S.D.N.Y. 2022).

Judge Tarnoksy issued a well-reasoned R&R grounded in the law. Upon review of Defendants' Objections, the Court determines that the objections are either moot, meritless, or inapplicable to a motion to seal. Defendants' first objection is that the R&R inappropriately concluded that the Court could not assess the "irreparable harm" requirement of preliminary injunctions without seeing what the Complaint actually alleges. Objs. at 12–14. The Court has already ordered the Complaint to be filed under seal, so that point is moot. Defendants next contend that the Complaint is not a *de facto* judicial document entitled to a presumption of public access. *Id.* at 14–16. The Court finds that Defendants have failed to offer sufficient arguments to overcome Judge Tarnosky's well-reasoned recommendation on this point. Finally, Defendants argue that the Complaint should be sealed because it should be stricken pursuant to Rule 12(f). *Id.* at 16–25. But a motion to strike is distinct from a motion to seal, and the Court considers this separately in Section VI.

Accordingly, the Court sets aside the R&R regarding the temporarily sealing of the Complaint pending Defendants' filing of a motion to strike because it is now moot, but adopts the R&R in all other respects. Specifically, Defendants' motion to seal the Complaint and related documents is denied, except that all filings must redact any minor's identifying information and any allegations of conduct involving minors. This Order applies to all other motions to seal currently pending on the docket, including ECF Nos. 51 and 69. All future sealing decisions are within the scope of this Court's referral to Judge Tarnofsky's for general pretrial matters and therefore do not require an R&R.

## III.    Defendants' Motion to Dismiss Under Rule 8(a)(2)

Defendants seek to dismiss the Complaint under Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires that "pleadings must contain a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Defendants argue that the Complaint is "so infused with scandalous, impertinent, and otherwise improper material, and so unnecessarily lengthy, that the entire Complaint should be dismissed . . . for violation of Rule 8's pleading requirements." Mot. at 11.

Generally, a complaint is only dismissed under Rule 8(a)(2) if it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (affirming the dismissal of a complaint that was "unintelligible" with "indiscernible" claims); *see also Phipps v. City of New York*, No. 17-CV-6603 (ALC), 2019 WL 4274210, at *2 (S.D.N.Y. Sept. 10, 2019) (dismissing a lengthy 469 complaint that was "convoluted, confusing, and difficult to comprehend"). Courts nonetheless have discretion to dismiss complaints that are "unnecessarily long-winded" in a manner that "place[s] an undue burden on the court as well as any parties

seeking to respond." *Phipps*, 2019 WL 427410, at *2 (citing *Nungesser v. Columbia Univ.*, No. 15-CV-3216 (GHW), 2017 WL 1102661, at *1 (S.D.N.Y. Mar. 23, 2017)).

The Court finds that the Complaint does not run afoul of Rule 8(a)(2)'s pleading requirements. First, the Complaint is not confusing, ambiguous, vague, or unintelligible—it sets out clear allegations of misconduct in chronological order. The Complaint's true substance— claims for violations of the VGMVPA, battery, and intentional infliction of emotional distress through acts of alleged gender-based abuse—is evident through most paragraphs. To be sure, the Complaint's organizational structure could benefit from a clearer delineation of what conduct Parker intends to assert under each claim. *See Doe v. Gross*, No. 23-CV-6325 (JPC), 2024 WL 3729007, at *4 (S.D.N.Y. Aug. 7, 2024) (observing that the plaintiff's "rote incorporation of preceding paragraphs and formulaic recitation of the elements" required the court and defendant to comb through the complaint and infer "what conduct [p]laintiff attempt[ed] to assert under each claim"). But the task of inferring what conduct relates to which claims is "not unduly onerous" here and does not render the Complaint "indecipherable" as to its true substance. *See id.*

The closer question here is whether the Complaint is "unnecessarily long-winded" in a manner that "place[s] an undue burden on the court as well as any parties seeking to respond." *Phipps*, 2019 WL 427410, at *2. The Complaint spans a considerable 72 pages and 286 paragraphs, with many detailed recounts of conversations and text messages. However, the Court must consider that the Complaint is for allegations of continuous abuse that span four years. *See* Compl. ¶ 2. Moreover, Parker is tasked under the VGMVPA of showing a gender-based animus for each act of alleged abuse. *See Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018) (explaining that the VGMVPA requires that the alleged act be "perpetrated

because of plaintiff's gender" and was "in part because of animus against plaintiff's gender").

Parker's IIED claim also requires that she adequate allege "extreme and outrageous" conduct—

conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."

*Specht v. City of New York*, 15 F.4th 594, 606 (2d Cir. 2021) (internal citation omitted).

Furthermore, in alleging abuse against a long-term intimate partner, Parker is naturally

concerned about bolstering the credibility of each allegation.

Given that Parker appears to have a legitimate cause for the length of her Complaint, the

Court next considers whether the length unnecessarily places an undue burden on the Court and

on Defendants. The Court does not consider the Complaint unduly burdensome given the span of

time it must cover and the animus Parker must show. Neither does the Court find the Complaint

to place an undue burden on Defendants to respond to each paragraph, given that Defendants

have already thoroughly parsed the Complaint for portions to strike. *See* ECF No. 71-1.

Defendants cite to a number of inapposite cases that have dismissed long complaints. In

*Blakely v. Wells*, the Second Circuit affirmed dismissal of a pleading spanning 57 pages and 597

numbered paragraphs because it was "incoherent" and "did not provide [d]efendants with fair

notice of the claims asserted against them." 209 F. App'x 18, 20 (2d Cir. 2006). Defendants also

cite to *Hartz v. Friedman*, where the Seventh Circuit found that a pleading that "make[s] it

difficult to sort out the necessary elements" of the claim at issue could constitute an "egregious

violation" of Rule 8(a)(2). 919 F.2d 469, 471 (7th Cir. 1990). Finally, Defendants cite to

*Nungesser v. Columbia University*, where a judge in this district chastised plaintiff's counsel for

a complaint that contained "arguments, a gender-swapping hypothetical, descriptions of social

science articles, citations to case law and agency guidance, rhetorical questions, Greek chorus-

style commentary, and even outright polemics." 2017 WL 1102661, at *2 (S.D.N.Y. Mar. 23, 2017). Nonetheless, *Nungesser* refused to dismiss or strike the excessive complaint because the court concluded that defendants would not be prejudiced by the denial. *Id.*

Although Parker's Complaint is long, it fulfills "the principal function of pleadings," which is "to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Blakely*, 209 F. App'x at 20 (internal citations omitted). Accordingly, the motion to dismiss under Rule 8(a)(2) is denied.

## IV.    Defendants' Motion to Dismiss Under Rule 12(b)(2)

Defendants contend that the Court lacks both general and specific personal jurisdiction under Rule 12(b)(2) over claims based on acts occurring outside of New York. Mot. at 28–31. Parker has clarified that she is not pursuing claims based on acts occurring in Las Vegas, so the only acts at issue are those in Florida. *See* Opp. at 5 & n.3. Since the filing of the motion under consideration, the parties have continued to dispute jurisdiction for discovery purposes. On November 21, 2024, Judge Tarnofsky granted Parker's application to take jurisdictional discovery concerning Defendants. ECF No. 223. That jurisdictional discovery issue is regarding whether the Court may exercise general jurisdiction over Defendants, and Defendants have agreed to submit a declaration containing the information necessary to make such a determination. *See* ECF No. 232. Whether the Court may exercise jurisdiction over B&F for the Florida acts will likely turn on whether it may exercise general personal jurisdiction over B&F. As such, the Court will not decide issues pertaining solely to B&F, including the question of jurisdiction, until the Court has received the declaration on jurisdictional discovery. Nor will the Court decide whether it exercises general jurisdiction over Bursor at this time. However, the

Court does examine whether it may exercise specific personal jurisdiction over Bursor and finds in the affirmative.

When the Court examines the issue of personal jurisdiction in the absence of a "full-blown evidentiary hearing," the plaintiff need only make a prima facie showing that jurisdiction exists. *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir. 2001). In such an analysis, the Court construes the Complaint in the light most favorable to the plaintiff, resolving all doubts in her favor. *Id.*

Because this is a diversity case, "personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York." *Id.* (internal citations omitted). The analysis is twofold: First, the Court must determine whether jurisdiction is appropriate under New York's long-arm statute. *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021) (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). If yes, then the Court must determine whether the exercise of jurisdiction comports with federal due process requirements—that is, whether "the defendant has certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).

For the first step of this analysis, the applicable long-arm statute is CPLR 302(a)(3). This statute permits a court sitting in New York to exercise specific personal jurisdiction over an out-of-state defendant if the defendant "commits a tortious act without the state causing injury to person or property within the state," provided certain requirements are met. N.Y. C.P.L.R. 302(a)(3)(ii) (McKinney 2025). "Five elements must be satisfied for a court to exercise jurisdiction [under this statute]: (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within

New York; (4) the defendant expected or should reasonably have expected the tortious act to have consequences in the state; and (5) the defendant derives substantial revenue from interstate or international commerce." *Berdeaux*, 561 F. Supp. 3d at 404–05 (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006)).

The next step of the analysis, the constitutional inquiry, has two components. First, the defendant must have "sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction"—otherwise known as "minimum contacts." *World Ass'n of Icehockey Players Unions N. Am. Div. v. Nat'l Hockey League*, No. 24-CV-1066 (MMG), 2024 WL 4893266, at *6 (S.D.N.Y. Nov. 26, 2024) (internal citation omitted). The second component of the constitutional inquiry requires that the assertion of personal jurisdiction "comport[] with traditional notions of fair play and substantial justice," meaning "it [would be] reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (internal citation omitted).

Applying New York's long-arm statute, Parker has sufficiently alleged all five elements. She has alleged that Bursor committed battery outside New York. Compl. ¶¶ 175–90. She has alleged that those acts of battery, specifically the occurrence on May 2, 2023, give rise to the battery claim. *Id.* ¶ 274–77. She has alleged that the battery injured her, a resident of New York. *Id.* ¶ 8. She has alleged that Bursor knew she was a New York resident, and therefore that his actions would have consequences on a person of the State. *See, e.g.*, *id.* ¶ 11. And finally, she has alleged that Bursor derives substantial revenue from interstate commerce as the owner of a law firm having offices in multiple states. *See id.* ¶¶ 7, 10. Under the State's long-arm statute, the Court may exercise personal jurisdiction.

Turning to the constitutional analysis, Bursor satisfies both the minimum contacts and the reasonableness inquiry. Regarding minimum contacts, Parker alleged that Bursor maintains and operates an office in New York. *Id.* ¶ 10. Moreover, Parker has alleged that Bursor frequents New York for personal visits, many of which led to the conduct giving rise to this action. *See, e.g.*, *id.* ¶¶ 22–93. Because Parker has alleged that most of the tortious acts occurred in New York, and that the acts outside the State were a part of the same ongoing abusive conduct, the reasonable inquiry is also satisfied. The circumstances of this case indicate that it would place no unfair burden on Bursor to defend against the Florida acts in New York. Indeed, it would be unfair to Parker if she were required to disassemble her related claims and were prohibited in this action from presenting a cohesive narrative. Accordingly, the Court concludes that it may exercise personal jurisdiction over Bursor.

## V.     Defendants' Motion to Dismiss Under Rule 12(b)(6)

Defendants seek to dismiss claims under Rule 12(b)(6). The Court first sets forth the legal standard under 12(b)(6), then examines Parker's VGMVPA, state law battery, and state law IIED claims, finding that Parker has adequately alleged each claim against Bursor. The Court reserves decision on the motion with respect to B&F, given the pending declaration on jurisdictional discovery.

### A.  Legal Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

### B.  Claim Against Bursor Under the VGMVPA

The VGMVPA provides a cause of action for "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104. The VGMVPA defines a "crime of violence" as:

> [A]n act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

*Id.* § 10-1103. The VGMVPA further defines "crime of violence motivated by gender" as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id.* "Generally, the animus element requires the plaintiff to present extrinsic evidence of the defendant's expressed hatred toward the victim's gender as a group or allege specific actions and statements by the perpetrator during the commission of the alleged crime of violence." *Doe v. Gross*, No. 23-CV-6325 (JPC), 2024 WL 3729007, at *8 (S.D.N.Y. Aug. 7, 2024) (cleaned up). There is no "single plain meaning of the term [animus]: it can mean 'prejudiced and often spiteful or malevolent ill will,' but it can also

mean 'basic attitude or governing spirit.'" *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2021 WL 4124616, at *25 (S.D.N.Y. Sept. 9, 2021) (cleaned up). Moreover, "where rape and sexual assault are alleged, malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Gross*, 2024 WL 3729007, at *8 (quoting *Breest v. Haggis*, 115 N.Y.S.3d 322, 330 (1st Dep't 2019)).

Parker has stated a claim for violation of the VGMVPA against Bursor. Parker has alleged sexual assault and other acts of violence occurring in New York City and beyond. Parker's allegation of sexual assault occurring in New York City on March 21, 2020 and September 20, 2020 form the first basis of a viable claim under *Gross*. Even if Parker had not alleged assault of a sexual nature, she would still state a VGMVPA claim through allegations of non-sexual acts of assault on those same dates and in the summer of 2022. In detailing years of Bursor's alleged verbal and psychological abuse related to Parker's denial of sex—abuse often employing gender-specific derogatory language—Parker has alleged facts sufficient to show the existence of gender animus for the non-sexual acts of assault. *See Eckhart*, 2021 WL 4124616 at *25 (finding animus adequately alleged by a complaint detailing degrading conversations, sexual assault, and harassment); *Crisonino v. New York City Hous. Auth.*, 985 F. Supp. 385, 391 (S.D.N.Y. 1997) (noting that the use of offensive gender-specific language, such as the term "dumb bitch," was sufficient to allege animus). These non-sexual acts of violence therefore also form the basis of a viable VGMVPA claim against Bursor.

Defendants argue that Parker's allegation of rape occurring in New York City on September 20, 2020 is contradicted by evidence incorporated in the Complaint, and that absent this allegation, the remainder of Parker's Complaint fails to show the gender animus required under the VGMVPA. Mot. at 20–25. Defendants further contend that because the VGMVPA only

applies to acts occurring in New York City, the Court may only consider the three acts that

Parker alleges occurred in New York City. *Id.* The Court rejects both arguments.

First, Defendants' dispute about the evidentiary strength of Parker's rape allegation is not

grounds for a dismissal under Rule 12(b)(6). Defendants rely on the timestamps in a recording

made at the time of the alleged sexual assault to argue that rape could not have possibly

happened. *See* Mot. at 20–23. This recording was not submitted as a part of the Complaint,

although Parker appears to quote conversations from a recording. To be sure, a complaint may be

"deemed to include any written instrument attached to it as an exhibit or any statements or

documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,

62 F.3d 69, 72 (2d Cir. 1995) (internal citation omitted). But "to be incorporated by reference, the

complaint must make 'a clear, definite and substantial reference to the documents.'" *DeLuca v.

AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*,

277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003). "Limited quotation of documents not attached to

the complaint does not constitute incorporation by reference." *Id.* (cleaned up) (citing *Goldman

v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)). Parker's quotations of a conversation that appear

derived from an unattached recording does not render the recording that Defendants cite

"incorporated by reference." Accordingly, the Court continues to apply a 12(b)(6) standard,

which obligates the Court to accept factual allegations as true, draw reasonable inferences in

Parker's favor, and disregard the evidence Defendants submit. *Goldstein*, 516 F.3d at 56. Under

this standard, Parker has adequately alleged sexual assault. Moreover, as the Court explained

previously, Parker has stated a plausible VGMVPA claim even in the absence of sexual assault.

Second, the Court need not decide the VGMVPA's territorial reach beyond New York

City because Parker has already alleged facts sufficient to state a claim based on acts solely

within the City. Regardless of whether the VGMVPA's territorial reach is limited to acts occurring within New York City, acts occurring outside of New York City are relevant to Bursor's alleged gender-based animus. These acts still serve to elucidate the "animus" requirement of the VGMVPA by showing the prevalence of a "basic attitude or governing spirit" of discrimination. *Eckhart*, 2021 WL 4124616, at *25.

### C. Battery Under New York State Law

To plead civil battery under New York law, a Parker must allege "bodily contact, made with intent, and offensive in nature." *Baker v. City of New York*, 551 F. Supp. 3d 258, 269 (S.D.N.Y. 2021) (internal citation omitted). Battery has a statute of limitations of one year. *See* N.Y. C.P.L.R. § 215(3) (McKinney 2025). However, the Adult Survivors Act ("ASA") revives claims for sexual assault for a one-year period beginning November 14, 2022. *See* C.P.L.R. § 214-j (McKinney 2025). To qualify as a revivable claim under the ASA, the conduct at issue must constitute a sexual offense as defined in Article 130 of the New York Penal Law and have been committed against someone who was eighteen or older. *Id.* Article 130 defines one such offense as "forcible touching," which requires that a defendant "(1) forcibly touch the sexual or other intimate parts of another person, (2) for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire." *Johnson v. NYU Langone Health*, No. 22-CV-9456 (JHR), 2023 WL 6393466, at *2 (S.D.N.Y. Sept. 30, 2023) (cleaned up) (quoting N.Y. PENAL LAW § 130.52(1)).

Parker's allegations of battery in New York occur outside the statute of limitations period but are revived under the ASA. Specifically, Parker has stated a claim for battery with her allegation of sexual assault occurring in New York on September 20, 2020. Compl. ¶¶ 65–93. The same is true for the March 21 and September 10, 2020 incidents. Compl. ¶¶ 23–25, 61–62.

Although Parker does not explicitly describe the forcible touching of her "sexual or intimate parts," it is reasonable to infer from those allegations that they involved such contact. *Id.*

### D. Battery Under Florida State Law

Battery under Florida law requires (1) the intent to cause harmful or offensive contact and (2) a resulting offensive contact with another person. *Baxter v. Roberts*, 54 F.4th 1241, 1272 (11th Cir. 2022). The statute of limitations is four years. FLA. STAT. § 95.11(3)(n) (2024).

Defendants do not dispute that Bursor used force on Parker in Florida on May 2, 2023. Instead, Defendants argue that Florida law permitted Bursor to use force to remove Parker from his home on May 2, 2023 after, according to Defendants, she refused to leave and forcibly damaged his belongings. Mot. at 31–32. Defendants cite Florida's Stand Your Ground law, which governs the right of a person to use deadly force to prevent the imminent commission of a forcible felony. The applicable provision states that "[a] person is justified in using or threatening to use deadly force . . . to prevent imminent death or great bodily harm to himself . . . or another. . . or to prevent the imminent commission of a forcible felony." FLA. STAT. § 776.012(2) (2024) (emphasis added).

Parker's allegations, which the Court is required to accept at this stage, do not support a finding that this defense bars Parker's claim. Parker alleges that on that night, Bursor forced her to perform oral sex on him, assaulted her when she tried to put on clothes, and repeatedly hit and choked her. Compl. ¶¶ 177, 180, 182–83. Bursor then dragged her naked body through broken glass to remove her from his home. *Id.* ¶ 184. Based on these alleged circumstances, there are no allegations demonstrating that the force used was justified to prevent imminent harm to Bursor or to prevent the imminent commission of a forcible felony. Parker's allegations of physical and sexual assault on May 2, 2023 sufficiently plead a timely claim for battery under Florida law.

### E.  IIED Under New York State Law

Under New York law, the tort of intentional infliction of emotional distress requires: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). Courts have "cautioned that a claim for IIED may not be sustainable where the conduct complained of falls well within the ambit of other traditional tort liability." *Dixon v. Reid*, 744 F. Supp. 3d 323, 329 (S.D.N.Y. 2024) (citing *Turley v. ISG Lackawanna Inc.*, 774 F.3d 140, 159 (2d Cir. 2014)). Instead, IIED claims "serve as gap fillers intended to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied." *Id.* (internal citation and quotation marks omitted). The statute of limitations for IIED claims is one year. N.Y. C.P.L.R. § 215(3) (McKinney 2025). However, where the conduct at issue is a part of a "longstanding campaign of harassment," the continuing violations exception applies and a claim may proceed "so long as the final actionable event occurred within one year of the suit." *Roelcke v. Zip Aviation, LCC*, No. 15-CV-6284 (DAB), 2018 WL 1792374, at *12 (S.D.N.Y. Mar. 26, 2018) (internal citation omitted).

Defendants contend that Parker's IIED claim is duplicative of her battery claims, fails to meet the requisite element of severe distress, and falls outside the applicable statute of limitations. Mot. at 26–27. The Court disagrees.

First, Parker has alleged verbal and psychological abuse spanning the course of years. Compl. ¶ 12; *see generally id.* ¶¶ 11–272. She also alleges that she suffered from emotional trauma as a result of abuse in the relationship. *Id.* ¶ 212. Although Parker does not describe her emotional suffering in detail, it is reasonable to infer from the Complaint's allegations that she

has suffered severe emotional distress. As such, the elements of an IIED claim are sufficiently pled.

Second, "[w]hile there is obvious overlap, Parker's IIED claim does not so completely overlap with her sexual assault/battery claim that it is subsumed within that claim." *Dixon*, 744 F. Supp. 3d at 329. To dismiss Parker's IIED claim at this juncture would be to prematurely extinguish possibilities of relief for years of non-physical abuse. *See Roelcke*, 2018 WL 1792374, at *13 ("Plaintiff has set forward additional allegations . . . that were part of the same campaign of harassment and intimidation, that are not duplicative of her assault claims."); *McGrath v. Dominican Coll. of Blauvelt, New York*, 672 F. Supp. 2d 477, 492 (S.D.N.Y. 2009) (refusing to dismiss an IIED claim under 12(b)(6) because it remained uncertain whether damages under an IIED theory would overlap with damages under other claims) (citing *Bender v. City of New York*, 78 F.3d 787, 793–94 (2d Cir. 1996)).

Finally, Parker's claim is timely. The continuing violations exception applies to Parker's IIED claim because the conduct at issue arises from the same allegedly abusive sexual relationship and the last event of this conduct fell within the limitations period. *See Canosa v. Ziff*, No. 18-CV-4115 (PAE), 2019 WL 498865, at *8 (S.D.N.Y. Jan. 28, 2019) (finding that where the course of conduct involves alleged sexual harassment, the "entire course of harassing, intimidating, and demeaning conduct, the last event of which fell within the limitations period, was what constituted IIED") (cleaned up) (citing *Bonner v. Guccione*, 916 F. Supp. 271, 276–77 (S.D.N.Y. 1996)). Parker and Bursor's relationship appears to have ended on May 2, 2023. *See* Compl. ¶¶ 174, 194. Thereafter, Parker alleges that Bursor continued to harass her and obstruct her ability to seek justice through a lawsuit. *See id.* ¶¶ 197–232. According to Parker, some of these obstructive acts included emotional manipulation that resulted in severe emotional distress.

*See id.* ¶¶ 211–13, 218. These acts allegedly occurred up to days before Parker filed the instant action, *see* ¶¶ 216–32, 233, and continued after the commencement of the lawsuit. *See* ¶¶ 234–54. Parker has stated a plausible and timely IIED claim.

## VI.    Defendants' Motion to Strike Under Rule 12(f)

Defendants move to strike the Complaint under Rule 12(f), Mot. at 11–13, which authorizes a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Specifically, Defendants argue that the Complaint contains "scandalous" allegations and fails to be a "compilation of facts." *Id.* at 13.

 "Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." *Winfield v. Citibank, N.A.,* 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012) (quoting *In re Tronox Sec. Litig.*, No. 09-CV-6220 (SAS), 2010 WL 2835545, at *4 (S.D.N.Y. June 28, 2010); *see also Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (noting that motions to strike are "infrequently granted") (citing *In re Merrill Lynch & Co., Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003)). "The movant must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Dixon v. Reid*, No. 23-CV-9878 (VEC), 2024 WL 3794452, at *6 (S.D.N.Y. Aug. 13, 2024) (cleaned up) (citing *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 642 (S.D.N.Y. 2001)). In considering such a motion, a court "must deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike[.]" *Id.* (citing *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-CV-9580 (HB), 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008)) (cleaned up).

The Second Circuit has commented that the only exception for the presumption against striking is when impertinent and immaterial matter is also "scandalous." *Brown v. Maxwell*, 929 F.3d 41, 52 n.42 (2d Cir. 2019). In making this comment, the Circuit emphasized that "such rejected or stricken material is not relevant to the performance of the judicial function" and "would enjoy no presumption of public access." *Id.* (internal citation omitted). Courts have defined "scandalous" as "any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012), *overruled on other grounds*, *Zarda v. Altitude Express, Inc*., 883 F.3d 100, 108 (2d Cir. 2018) (en banc). (citing 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.37(3) (3d ed. 2010)); *accord United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 773 (S.D.N.Y. 2018).

In arguing that the Complaint is scandalous, Defendants attack virtually every aspect of the Complaint that paints them in a poor light. *See* Mot. at 15–17. The Court identifies the following categories of challenged allegations to address: excerpts of recorded and text conversations; details on the toxicity of the relationship between Parker and Bursor; opinions on Bursor's mental state and moral character; details about Bursor's sexual interests and sexual behavior; references to Bursor's sexual medical history; references to Bursor's drug use; references to Bursor's use of scatological language; references to litigation matters; allegations of violations of the Rules of Professional conduct by Bursor; allegations of misconduct by Bursor's attorney; and allegations of misconduct pertaining to obstruction of Parker's efforts to file a lawsuit. *Id.* The Court addresses each category in turn.

First, there is no prohibition on the inclusion of relevant conversations in a complaint. Although the Court does not now determine the admissibility at trial of these recordings, Parker is not barred from stating them as factual recollections in a complaint.

Second, details of the toxic nature of Parker and Bursor's relationship are not scandalous or impertinent because they are relevant to the VGMVPA and IIED claims. Specifically, Parker must prove discriminatory animus under the VGMVPA as well as extreme and outrageous conduct causing severe emotional distress under the New York IIED claim. As discussed in Discussion Section V(B), the animus element of the VGMVPA means "malevolent ill will" or "basic attitude or governing spirit." *Eckhart*, 2021 WL 4124616, at *25. Moreover, New York law on IIED claims sets a high bar for what is tortious "extreme and outrageous" conduct—it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Specht v. City of New York*, 15 F.4th 594, 606 (2d Cir. 2021) (cleaned up). Although Rule 12(f) prohibits allegations that "unnecessarily reflect[] on the moral character of an individual," *Anderson*, 850 F. Supp. 2d at 416, Parker's claims require a showing that Bursor's conduct was outrageous and extreme. Allegations regarding the abusive nature of their relationship does not "unnecessarily reflect" on Bursor's character; instead, they bear on gender animus and whether his conduct is sufficiently outrageous.

Third, for this same reason, allegations regarding Bursor's mental state and moral character are also sufficiently relevant to avoid striking.

Fourth, details about Bursor's sexual interests and sexual behavior as it pertains to Parker generally bear on gender animus and the degree of emotional distress inflicted upon Parker.

However, the Court will strike footnote 3 of Paragraph 14 of the Complaint, which is tangentially relevant, at most, to Parker's IIED claim and not relevant at all to her VGMVPA claim.

Fifth, generalized references to Bursor's sexual medical history are sufficiently tied to the IIED claim to avoid striking. These references are either alleged in the context of Bursor employing psychological abuse and control over Parker, Compl. ¶¶ 14, 46–47 or alleged to show physical harm suffered by Parker as a result of Bursor's sexual medical history and failure to disclose. *Id.* ¶¶ 46, 135. However, Parker is directed to redact, without striking, the specific nature of any illness beyond the fact that it was a sexually transmitted disease.

Sixth, references to Bursor's drug use are not scandalous or impertinent because they inform the context of the alleged incidents of assault, abuse, and harassment. As such, these references are relevant to illuminate the egregiousness of Bursor's conduct under an IIED claim.

Fifth, references to Bursor's use of scatological language are not scandalous. These references are not only relevant to showing outrageous behavior under an IIED claim, but also relevant to showing gender animus under the VGMVPA—particularly where such language was used in conjunction with gendered terms.

Sixth, references to litigation matters involving and identifying B&F's clients, standing alone, may warrant striking. However, Parker has generally referenced these matters in connection with conduct intimidating or otherwise harassing Parker, thereby rendering them relevant to the IIED claim. *See, e.g.,* ¶¶ 202, 235–37.

Seventh, for the same reasons just stated, allegations of violations of the Rules of Professional Conduct by Bursor may withstand a motion to strike if they demonstrate conduct intimidating or harassing Parker. *See* ¶¶ 209 n.11, 235–36. But the Court will strike paragraphs 39–41, which do not demonstrate intimidation upon or harassment of Parker.

28

Eighth, the same analysis applies to allegations of misconduct by Bursor's attorney. Because Parker has alleged that misconduct by Bursor's attorney is attributable to Bursor himself, *see id*. ¶ 254, and such misconduct was intended to harass or intimate her from pursuing this lawsuit, these allegations similarly contribute to her IIED claims and do not meet the definition of "scandalous."

Ninth, and last, allegations regarding obstructing Parker's efforts to file a lawsuit constitute intimidation and harassment relevant to an IIED claim and will not be stricken.

Defendants make the final argument that Parker's Complaint should be stricken or dismissed because she is attempting to defame and extort Bursor based on "irrefutably false allegations." Mot. at 1–3; 34–35. This argument lacks a legal basis. It is not the Court's role to determine the ultimate credibility of Parker's well-pled allegations at this stage.

## CONCLUSION

For the reasons stated above, Lara Goldfelder's motion to intervene is DENIED. Judge Tarnofsky's R&R is ADOPTED IN PART and Defendants' motion to seal the Complaint and related documents is DENIED. Defendants' motions to dismiss under Rule 8(a)(2), Rule 12(b)(2), and Rule 12(b)(6) are DENIED, except that the Court reserves decision regarding claims against B&F pending the submission of the jurisdictional declaration. *See* ECF No. 232. By **April 10, 2025**, parties are ORDERED to submit an update on the declaration regarding jurisdictional discovery along with a proposed schedule on any additional briefing regarding whether the Court may exercise general jurisdiction over B&F and Bursor. Defendants' motion to strike is GRANTED IN PART.

On April 4, 2025, Plaintiff is directed to file the Complaint unsealed, striking Paragraphs 39–41 and footnote 3 of Paragraph 14, and redacting the portions of Paragraph 14 specifying

names of illnesses. The unsealing of all related documents pursuant to this Order and all further

disputes concerning sealing fall within the scope of the General Pretrial referral to Judge

Tarnofsky. The Clerk of Court is ordered to TERMINATE ECF Nos. 51, 69, 70, and 168.

Dated:  March 31, 2025
        New York, New York

                                    SO ORDERED.

                                    _Jessica Clarke_

                                    JESSICA G. L. CLARKE
                                    United States District Judge