FBT Gibbons

**Christine A. Amalfe**
Partner
+1 973.596.4829 (t)
+1 973.639.6230 (f)
camalfe@fbtgibbons.com

June 24, 2026

**FILED ON ECF**

Honorable Robyn F. Tarnofsky
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007

**Re: *Parker v. Bursor*, 24-cv-245 (JGLC) (RFT)**
**Plaintiff's, Defendants' and Certain Counterclaim Defendants' Joint Opposition to Sentinel Insurance Company's Letter Motion to Intervene and Unseal Court Records**

Dear Magistrate Judge Tarnofsky:

This Firm represents Defendants Scott Bursor and Bursor & Fisher, P.A. ("Bursor & Fisher" and, together with Scott Bursor, "Defendants") in the above-referenced matter. We submit this joint letter, on behalf of Defendants, Plaintiff Angelica Parker ("Plaintiff")[1], and Counterclaim Defendants Ivan Wilzig ("Wilzig") and Peter Plaut ("Plaut"), in opposition to the Letter Motion of Sentinel Insurance Company, Ltd. ("Hartford") to Intervene and Unseal this terminated action (the "Action" or "Underlying Action").[2] For the reasons set forth below, Hartford's letter motion should be denied in its entirety. If, however, the Court is inclined to consider Hartford's request, the parties respectfully request that the Court require Hartford to file a formal motion to intervene and unseal, and afford all parties a full opportunity to brief the issues raised.

[1] There are various statements in this letter concerning interactions and communications to which Plaintiff, Mr. Wilzig and Mr. Plaut were not a party. Each of them however, joins in opposing the unsealing request for the reasons described in their declarations, but they do not purport to have personal knowledge about interactions and communications to which they were not a party.

[2] Counterclaim Defendants Robert Hantman and Peter Plaut also have filed separate oppositions to Hartford's letter motion, and Plaintiff and Counterclaim Defendants Hantman, Plaut and Wilzig have made separate declarations in opposition to Hartford's letter motion.

## BACKGROUND

As the Court will recall, Plaintiff initially filed the Underlying Action in the Supreme Court of the State of New York in November 2023 (ECF 1-1), and Defendants removed the Action to this Court on January 11, 2024 (ECF 1). Promptly after the Underlying Action was commenced, Defendants notified their insurer, Hartford, of the Underlying Action and sought coverage under Bursor & Fisher's insurance policies. (Decl. of Kenneth H. Frenchman ("Frenchman Decl.") ¶ 3.) Hartford agreed to participate in Bursor & Fisher's defense, but did so with a reservation of rights, and, as is now clear, with full knowledge that it would later seek to sue Defendants to recoup fees it paid to Bursor & Fisher (and, ultimately, the indemnity amounts paid as settlement in the matter) as soon as the Underlying Action was resolved. (*See id.* ¶¶ 4-5.)

Given its stake in the matter, Hartford required to be, and was, kept fully abreast by Defendants' counsel of all material developments in the Underlying Action, and entered into a confidentiality agreement with Defendants that enabled it to discuss the Underlying Action with Defendants and their counsel, and to receive and review sealed court filings (the "Confidentiality Agreement"). (*See id.* ¶¶ 7-17; *see also* Decl. of Christine A. Amalfe ("Amalfe Decl.") ¶¶ 2-5.) Hartford knew that most of the docket was filed under seal and, throughout the course of the Action, Defendants' counsel provided Hartford a large number of the filings on the docket. (*See* Amalfe Decl. ¶¶ 4-5; Frenchman Decl. ¶ 37.) Moreover, Hartford was fully aware throughout the Action of the critical importance of sealing to Defendants, and that Defendants would have little desire to settle if the case became unsealed. (*See* Amalfe Decl. ¶ 6.)

In early 2025, Hartford took steps to end the lawsuit. Recognizing the importance of maintaining sealing to the resolution of the case, and seeking to cut off its defense obligations to Bursor & Fisher and other potential risk from the litigation, Hartford repeatedly pressured Defendants, threatening to withdraw even qualified coverage and its agreement to pay the settlement amounts, to settle the Action before the court filings might become unsealed. (*See* Frenchman Decl. ¶¶ 18-22.) Heeding Hartford's demands, Defendants negotiated a settlement with Plaintiff and with most of the Counterclaim Defendants. (*See id.* ¶ 23-26; Amalfe Decl. ¶ 7.) Defendants' counsel provided regular updates to Hartford on the settlement negotiations, repeatedly advising Hartford that maintaining the docket under seal upon dismissal was a critical term of the settlement agreement and that any unsealing could unravel the settlement. (Frenchman Decl. ¶ 23.) In fact, in the weeks preceding consummation of the settlement, Defendants' counsel provided drafts of the settlement agreement with Plaintiff ("Settlement Agreement") to Hartford, which clearly referenced the docket remaining sealed upon dismissal as a material term of the settlement. (*Id.*; Amalfe Decl. ¶ 7.) Hartford expressly or tacitly approved these drafts, and never objected to the maintenance of the docket under seal upon dismissal. (Frenchman Decl. ¶¶ 23-24; Amalfe Decl. ¶ 7.) Hartford consented to the final Settlement Agreement, all of the settlement terms and paid the settlement amounts in full. (Frenchman Decl. ¶ 25.)

The Underlying Action was settled on July 15, 2025, with the execution of negotiated settlement agreements between the various parties. (Frenchman Decl. ¶ 26; Amalfe Decl. ¶ 8.) On June 16, 2025, the Underlying Action was ordered closed with all pending motions rendered moot (ECF No. 439), and on July 24, 2025, an Order of Dismissal was entered by Judge Clarke (ECF No. 447). (Frenchman Decl. ¶ 26; Amalfe Decl. ¶¶ 9-10.) On July 28, 2025, Plaintiff and Defendants filed a stipulation of withdrawal of Defendants' pending appeal with the United States Court of Appeals for the Second Circuit. (Frenchman Decl. ¶ 27; Amalfe Decl. ¶ 11.)

Despite its approval of and active participation in the settlement, and notice of the various court filings, Hartford secretly knew all along—from the very beginning of the Action in early 2024 through its resolution and dismissal in July 2025 (*see* ECF No. 447)—that going along with Defendants' efforts to seal the docket in this Action would allow it to later use the threat of unsealing as a leverage tool in its suit against Defendants. In fact, on July 29, 2025, *only one day after* the proceedings in the Underlying Action had closed in all courts, including the Second Circuit, Hartford filed suit against Defendants in the Northern District of California (the "Coverage Action"). (Frenchman Decl. ¶ 28.)

On October 30, 2025, in connection with exhibits filed in support of Defendants' motion to dismiss, Hartford and Defendants filed a *joint* sealing stipulation in the Coverage Action (Coverage Action, ECF No. 35), wherein they agreed that certain documents containing confidential information "may continue to be sealed." (*Id.* ¶ 29.) While Hartford sought to reserve its right to "later challenge the designations or the documents becoming public," Defendants refused to include this language because it was inconsistent with the Confidentiality Agreement between them. (*Id.*) In its accompanying sealing motion (Coverage Action ECF No. 35-1), Hartford itself requested that "the materials Defendants have requested be sealed or redacted . . . shall remain redacted and/or under seal." (*Id.* ¶ 30.)

Despite this agreement, on November 4, 2025, Hartford reversed course, with a newfound position, and filed an opposition to the Defendants' sealing requests in the Coverage Action (Coverage Action ECF No. 35-1), arguing that the underlying docket had been "ordered unsealed" and the Confidentiality Agreement did not preclude Hartford from challenging designations. (*Id.* ¶ 31.)

On November 24, 2025, the Northern District of California court granted Defendants' motion to dismiss and transferred the Coverage Action to the Southern District of New York (Coverage Action ECF No. 46). (*Id.* ¶ 32.) With respect to the Defendants' sealing requests, the court "defer[red] to the Southern District of New York to make the final determination." (*Id.*)

On May 20, 2026, Hartford filed an Amended Complaint in the Coverage Action (Coverage Action ECF No. 55). (*Id.* ¶ 33.) On June 4, 2026, the Defendants in the Coverage Action served Hartford with a pre-motion to dismiss letter outlining the factual and legal deficiencies in Hartford's Amended Complaint. (*Id.* ¶ 34.) The very next day, on June 5, 2026, Hartford filed the instant Letter Motion to Intervene and Unseal the docket in the Underlying

Action (ECF No. 449). (*Id.* ¶ 35.) Adjudication of Defendants' motion to dismiss the Amended Complaint will not require use of any documents filed under seal in this Action, including the Complaint. (Coverage Action ECF Nos. 62 and 63.)

**ARGUMENT**

**I. Hartford's Letter Motion Is Procedurally Improper**

At the outset, Hartford's letter motion is procedurally improper. Neither Your Honor's Individual Practices in Civil Cases nor the Local Civil Rules of this Court authorize a non-party to seek leave to intervene under Federal Rule of Civil Procedure 24, or to *unseal* sealed court filings, by means of a letter motion. Absent such authority, a motion to intervene and unseal must be made by formal motion, with full briefing from all affected parties. *See* Local Civ. R. 7.1(a), (e); *cf.* Paragraph I.D. of Your Honor's Individual Rules. The procedural safeguards of formal motion practice are particularly important here, where the relief sought — the wholesale unsealing of the case file containing highly sensitive, personal allegations and documents — directly implicates and threatens the privacy interests of all of the parties to the Underlying Action, most of whom expressly oppose intervention and unsealing. (*See* Decl. of Angelica Parker ("Parker Decl."); Decl. of Ivan Wilzig ("Wilzig Decl."); Decl. of Robert Hantman ("Hantman Decl.") (ECF No. 452, 452-1); Decl. of Peter Plaut ("Plaut Decl.") & Plaut Letter Opp'n (ECF No. 454, 455).) To permit a non-party to seek such extraordinary relief by a two-page letter, without affording the parties a meaningful opportunity to respond through full briefing, would deprive the parties of their procedural rights and deny the Court the benefit of comprehensive advocacy on these important issues.

**II. Hartford's Letter Motion to Intervene Is Untimely**

Even if Hartford's letter motion were procedurally proper, it should be denied as untimely. Under Federal Rule of Civil Procedure 24, timeliness is a "threshold inquiry" for both intervention as of right and permissive intervention. *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016); *see TGP Commc'ns, LLC v. Doe*, 22-1836, 2023 WL 4230020, at *1 (2d Cir. June 28, 2023) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 74 (2d Cir. 1994)). In determining whether an intervention motion is timely, courts consider: (1) how long the applicant had notice of the interest before making the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness. *See TGP Commc'ns*, 2023 WL 4230020, at *1 (2d Cir. June 28, 2023) (citing *Pitney Bowes*, 25 F.3d at 70). Each of these factors weighs against Hartford.

*First*, Hartford, as insurer for Bursor & Fisher, has had actual notice of its interest in the sealed filings in this Action since the commencement of the Action. Hartford participated in the defense of Bursor & Fisher and in fact received copies of a large number of the filings in this Action during its pendency under the terms of its Confidentiality Agreement with Defendants.

Moreover, Hartford's reservation of rights at the outset of the Action, together with its filing of the Coverage Action immediately after this Action was settled and dismissed, demonstrates that it had decided, before the Action was settled, that it intended to file suit against Defendants to seek recoupment of defense and indemnity payments it made, and would want to use certain filings from this Action to help prosecute its claims. Indeed, nothing prevents Hartford from doing so subject to its obligations in the Confidentiality Agreement. Yet Hartford waited *over two-and-a-half years* after it had full notice of its interest to request unsealing, and *nearly a year* after filing its Coverage Action against Defendants, to request to intervene in the Action for purposes of unsealing of the filings on the docket. Such inexcusable delay warrants summary denial of Hartford's request to intervene to seek unsealing. *See*, *e.g.*, *Kamdem-Ouaffo*, 314 F.R.D. at 134-36 (holding that motion to intervene made 16 months after actual notice of interest and 19 months after constructive notice was untimely, while recognizing that "[e]ven delays of less than one year can render such motions untimely"); *TGP Commc'ns*, 2023 WL 4230020, at *1-2 (denying motion to intervene and unseal where applicant had been aware of sealed documents for years before moving to intervene and unseal); *see also Penn-Star Ins. Co. v. McElhatton*, 818 Fed. Appx 67, 70-71 (2d Cir. 2020) (holding that insurance company's motion to intervene in coverage action was untimely when it knew or should have known about the litigation at least seven months before it sought intervention and it moved to intervene on the eve of settlement).

*Second*, intervention at this late stage would cause grave prejudice to the parties. *See Alvarez v. Experian Info. Sols., Inc.*, 758 F. Supp. 3d 60, 88 (E.D.N.Y. 2024) (noting that prejudice to the existing parties is the most important factor for determining timeliness of a motion to intervene). The parties to this Action — Plaintiff, Defendants, and most of the Counterclaim Defendants — worked diligently to settle this matter with the understanding that the docket at the time of negotiations was sealed, and the expectation that it would remain permanently so after the matter was settled and dismissed. (*See*, *e.g.*, Parker Decl.; Wilzig Decl.; Plaut Decl.) Indeed, the docket remaining sealed upon dismissal of the Action was a paramount term of the parties' settlement agreements because the court filings in the Action contain deeply personal and sensitive allegations and information that all parties desire to remain sealed. (*See generally id.*) Allowing intervention and unsealing now would undermine the painstaking work by the parties and the Court to settle this matter and essentially nullify a key purpose of the settlement agreements, to the parties' great detriment. *See United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986) ("in making the choice between the possibility of harm to the late-arriving prospective intervenors as against the possible harm to parties who have participated diligently during the pertinent portions of this litigation, it does not strike us as unjust that intervention on the part of the late-arrivers must yield"). Indeed, because the Action is now settled, unsealing of the docket will cause even greater harm to the parties, as no party will have an opportunity to fully respond to the allegations against him or her in open court. Thus, all allegations and information in the filings on the court docket will go unanswered, and unsealing will do nothing more than "'promote public scandal' or 'serve as reservoirs of libelous statements for press consumption.'" *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019) (citation and internal quotation marks omitted).

*Third*, Hartford will suffer no prejudice from denial of its untimely motion. Hartford already possesses a significant volume of the sealed documents in the Underlying Action, including the Complaint, because those documents were provided to it throughout the course of the Action in its capacity as insurer for Defendants. *See In re Cmty. Bank of N. Virginia Mortgage Lending Practices Litig.*, 03CV0425, 2021 WL 1143611, at *4-5 (W.D. Pa. Mar. 25, 2021) (denying insurer's motion to intervene to unseal where the insurer already possessed the documents it sought). Indeed, none of Hartford's requests for filings from the Action, during the course of its handling of the coverage claim and participation in the defense of the Underlying Action, were denied; each document was provided to it subject to the Confidentiality Agreement and Hartford never challenged the confidentiality of any of the documents or the fact that they would remain sealed on the docket. (Frenchman Decl. ¶ 37.) In fact, in addition to its duty to its insured, Hartford's possession of all documents in the case explains why it funded, without objection, the repeated and vigorous efforts of Defendants to keep the majority of documents on the docket sealed throughout the litigation, including when that issue was taken up on appeal. Moreover, to the extent that Hartford claims to need any additional documents to prosecute the Coverage Action—and it does not and will not unless and until it defeats Defendants' motion to dismiss—it may seek such documents during discovery in the Coverage Action. (*Id.* ¶¶ 36-38.) But even if Hartford were to need any such documents, there is no legitimate reason that it would need sealed documents in the Underlying Action to be unsealed and available to the public in order for Hartford to litigate its claim for recoupment of fees, particularly at the motion to dismiss stage. (*See id.* ¶ 39.) Hartford is perfectly able to file any filings in the Underlying Action that may be relevant to the Coverage Action under seal in the Coverage Action.

*Fourth*, no unusual circumstances militate in favor of finding timeliness. This is a private insurance coverage dispute between an insured and its insurer. It is not a matter of public concern. *See Application of Akron Beacon Journal*, 94 CIV. 1402 (CSH), 1995 WL 234710, at *8 (S.D.N.Y. Apr. 20, 1995) (reasoning that the fourth factor militated against a finding of untimeliness because the sealed documents related to matters of public concern, as they related to alleged bribes paid to state officials). To the contrary (and as described in more detail in Section II below), a number of factors militate against a finding of timeliness of the motion to intervene. Hartford knew about and participated in the defense of the Underlying Action since its inception, it entered into a Confidentiality Agreement with Defendants agreeing to not publicly disclose any filings in the case and to not affirmatively risk any such disclosure, and it not only approved Defendants' Settlement Agreement with Plaintiff, but pressured Defendants to enter into it, knowing full well and accepting that a material term of the Settlement Agreement required that the court docket remain sealed upon dismissal of the Action and that the parties wanted, and would seek, to keep the docket sealed were a motion to unseal ever filed. Having benefited from the settlement, with full knowledge of its terms and access to the filings on the Court docket, Hartford cannot now claim—2.5 years after the Action was commenced and a year after it was settled, dismissed and closed—that its motion to intervene in order to request unsealing is timely.

**III. <u>Hartford Should Be Estopped from Seeking to Unseal the Case File</u>**

In addition to the untimeliness of Hartford's letter motion to intervene, equity and justice mandate that Hartford be estopped from seeking to intervene and unseal the court filings in this Action. The doctrine of equitable estoppel "rests upon the word or deed of one party which is rightfully relied upon by another who, as a result, changes his position to his injury, so that it would be inequitable to permit the first to enforce rights inconsistent therewith." *Mazzola v. CNA Ins. Co.*, 548 N.Y.S.2d 610, 614 (Civ. Ct. 1989) (citations omitted) (applying equitable estoppel to prohibit insurance company from reneging on offer to pay plaintiff $15,000 to settle after plaintiff accepted the offer, where the insurance company sought to renege because it realized that the defendant's policy only had a $10,000 limit). Invocation of this doctrine is necessary and appropriate to prevent prejudice and injustice under the circumstances here.

In *City of New York v. Zurich-American Insurance Group*, 27 A.D.3d 609, 609-11 (App. Div., 2d Dept. 2006), a case where New York City brought a lawsuit for indemnification against an insurance company after the City settled an underlying suit that the insurance company participated in on behalf of the co-defendant, the court held that "[w]here an insurer is involved in the underlying proceeding yet fails to challenge the reasonableness of the settlement there, it may not do so in a separate declaratory judgment action"). *Id.* at 611. The facts presented here call for the same result.

Hartford was intimately involved in the defense of the Underlying Action and entered into a Confidentiality Agreement with Defendants, expressly agreeing to "take all necessary affirmative steps to resist disclosure and maintain the confidentiality and privileged nature" of documents that were filed under seal in the Underlying Action." Yet Hartford's letter motion does the exact *opposite* of what it agreed—explicitly seeking to cause public disclosure of sealed filings.

Moreover, as the Action proceeded, Hartford pushed Defendants to settle it in order to cut off Hartford's defense obligations and its potential indemnification risks. Throughout settlement negotiations, Hartford was kept fully apprised of discussions, it knew that the case file remaining sealed upon dismissal was a material term of the Settlement Agreement, and that keeping the file sealed permanently was a major motivating factor and desire of the settlement. With full knowledge of these facts, Hartford repeatedly pressured Defendants to accept the settlement, consented to the terms of the Settlement Agreement it had reviewed and approved, and paid the settlement amounts on behalf of Defendants, presumably aware the whole time that it intended to sue Defendants and undermine the continued sealing on which the settlement was premised. As such, Hartford should be estopped from now seeking to unseal the docket.

Indeed, given the context in which Hartford filed its letter motion—having done so immediately after receiving Defendants' pre-motion letter to dismiss the Coverage Action and despite already having every filing from the Action it needs—it is clear that Hartford's letter motion to unseal was motivated purely by a bad faith effort to pressure Defendants with the

threat of unsealing to attempt to avoid having to meet Defendants' motion to dismiss on the merits. Such unbridled bad faith and unclean hands, which will be addressed by the Defendants in the Coverage Action as well, only adds to the equities favoring estoppel.

## IV. <u>The Privacy Interests of the Parties Outweigh Any Public Right of Access</u>

Even if the Court were to reach the merits of Hartford's request to unseal, the privacy interests of the Plaintiff, Defendants, and Counterclaim Defendants far outweigh any purported public right of access asserted by Hartford. In analyzing whether sealed documents on the court docket should be unsealed, courts must balance the presumption of public access against the privacy interests of parties involved. *Utica Mut. Ins. Co. v. INA Reinsurance Co.*, No. 612CV194DNHTWD, 2012 WL 13028279, at *7 (N.D.N.Y. June 12, 2012). In conducting this analysis, the court must first determine the weight to be given to the presumption of public access. *Id.* at *4. On the other side of the balancing test, the court must determine "the weight to be accorded an assertion of a right of privacy[.]" *United State v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). In assessing the right of privacy, "courts should first consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* at 1051. The "privacy interests of innocent third-parties" also "'should weigh heavily in a court's balancing equation.'" *Utica Mut. Ins. Co.*, 2012 WL 13028279, at *7 (quoting *S.E.C. v. TheStreet.com*, 273 F.3d 222, 232 (2d Cir. 2001)). In addition, "[t]he nature and degree of injury must also be weighed. This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information." *Amodeo*, 71 F.3d at 1051.

Here, the privacy interests are especially weighty, and any countervailing public interests are insignificant. As this Court is aware, the Complaint, Counterclaims and various documents filed during the course of this Action contain highly sensitive allegations and information of a deeply personal nature concerning each of the parties, as well as a great number of non-parties. Public disclosure of such allegations and information is likely to be profoundly damaging to each of the parties (including those who are not party to the Coverage Action), as well as to individuals who were never parties to the Underlying Action, but who are referenced in various submissions and documents on the court docket. For these reasons, most of the parties to this Action—Plaintiff, Defendants, and three of the additional Counterclaim Defendants—oppose unsealing. To that point, the grounds on which Judge Clarke's original unsealing order (ECF Nos. 344-45) were premised — namely that Plaintiff sought unsealing and only Defendants opposed it — have fundamentally changed. It is not solely Defendants who now seek to retain sealing, but rather, Plaintiff, Defendants and most of the Counterclaim Defendants now *all* request that the case file remain sealed. Thus, the privacy interests at stake here are far more weighty than in the typical case, and the personal and professional harm they would suffer from unsealing is significant. *See, e.g., Gov't of U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.*, 22-cv-10904 (JSR) 2024 WL 3227095, at *3 (S.D.N.Y. June 28, 2024) (denying motion to

intervene by individuals who were plaintiffs in a different action, who sought to obtain records that were subject to a protective order in the then-closed *Virgin Islands v. JPMorgan* action, noting that "the claims in the underlying case involve sensitive accusations of sexual assault and abuse, the victims of which have an especially acute privacy interest in maintaining their anonymity").

Against these substantial privacy interests, Hartford's claim to a public right of access is weak. Hartford is not a member of the press or the public seeking access to documents involving matters of public concern. Rather, Hartford is an insurance company that is now suing Defendants in a private contractual action over the scope of insurance coverage. Courts have drawn a clear distinction between the press seeking to unseal documents involving matters of public concern, and an insurance company seeking to unseal documents for use in private coverage litigation. *See In re Cmty. Bank of N. Virginia*, 2021 WL 1143611, at *3 (denying insurer's motion to intervene to unseal after distinguishing between motions to unseal by the press in order to obtain matters of public interest and a request by an insurance company to unseal filings in one action in order to use them in a separate insurance coverage litigation). There is a limited, if any, public interest in the narrow subject matter of Hartford's private insurance coverage contract action against Defendants, and that limited interest does not outweigh the substantial privacy interests of all parties to this Action. *See Utica Mut. Ins. Co.*, 2012 WL 13028279, at *7 ("because public interest in the narrow subject matter of this [private insurance dispute] is likely to be relatively low, [the parties'] privacy interests outweigh the public right of access").

Moreover, as explained above, Hartford already possesses the very documents it seeks to unseal, having received them throughout the course of this Action in its capacity as Defendants' insurer. This not only negates any prejudice to Hartford, but essentially renders their motion to intervene and unseal moot. *See In re Community Bank of N. Virginia*, 2021 WL 1143611, at *4. Hartford's obvious motivation is not to obtain access to documents it already has, ostensibly to use in its Coverage Action, but to use the threat of unsealing as strategic leverage against Defendants in that matter.[3]

[3] In Hartford's reply to Robert Hantman's opposition letter (ECF No. 453 at 2), it essentially acknowledges that its letter motion was not motivated by a need for, or lack of ability to obtain access to, the sealed filings in this Action, but rather merely to make the filings public.

**V. Conclusion**

For the foregoing reasons, the parties respectfully request that the Court deny Hartford's letter motion to intervene and unseal in its entirety. In the alternative, if the Court is inclined to consider Hartford's request, the parties respectfully request that the Court require Hartford to file a formal motion to intervene and unseal, and afford all parties a full opportunity to brief the issues raised.

Respectfully submitted,

*/s/ Christine A. Amalfe*

Christine A. Amalfe