**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANGELICA PARKER,<br>Plaintiff,<br>v.<br><br>SCOTT BURSOR, individually and in his professional capacity as owner of Bursor & Fisher, P.A., and BURSOR & FISHER, P.A.,<br>Defendants. | 24-CV-245 (JGLC)<br><br>**DECLARATION OF KENNETH H. FRENCHMAN** |

**DECLARATION OF KENNETH H. FRENCHMAN**

Kenneth H. Frenchman, Esq., an attorney duly admitted to practice before the courts of the State of New York and the United States District Court for the Southern District of New York, hereby declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a partner at the law firm Cohen Ziffer Frenchman & McKenna LLP, located at 1325 Avenue of the Americas, New York, New York 10019, which represents Defendants Bursor & Fisher, P.A. ("Bursor & Fisher") and Scott Bursor ("Mr. Bursor") (together, "Defendants" or the "Insureds") in a pending insurance coverage action filed by Sentinel Insurance Company, Limited ("Hartford") against the Insureds in the Southern District of New York, captioned *Sentinel Insurance Company, Limited v. Bursor & Fisher, P.A. and Scott Bursor*, originally Case No. 4:25-cv-06351-YGR (N.D. Cal.), now Case No. 1:25-cv-10000-AT-VF (S.D.N.Y.) (the "Coverage Action"). I submit this affirmation in support of Defendants' Opposition to Hartford's Letter Motion to Intervene and Unseal (ECF No. 449), filed June 5, 2026 in the above-captioned lawsuit (the "Underlying Action").

2. I have represented Bursor & Fisher and Mr. Bursor in connection with their pursuit of insurance coverage from Hartford for defense and indemnity costs incurred in connection with the Underlying Action since February 2024. I have personal knowledge of

the Underlying Action, including with respect to the Insureds' tender of the Underlying Action to Hartford and Hartford's handling of the claim from beginning to present day.

## I. HARTFORD'S PRIOR AWARENESS OF AND PARTICIPATION IN THE SEALING OF THE UNDERLYING DOCKET

3. The Insureds promptly notified Hartford of the Underlying Action and sought coverage under insurance policies issued by Hartford to Bursor & Fisher consecutively from 2018 through 2024 (the "Hartford Policies").

4. On March 5, 2024, Hartford sent a Reservation of Rights letter to Bursor & Fisher and a Denial letter to Mr. Bursor.

5. In its letter to Bursor & Fisher, Hartford agreed to participate in the defense of Bursor & Fisher under certain Hartford Policies, while reserving its rights. Attached hereto as **Exhibit 1** is a true and correct copy of Hartford's Reservation of Rights letter, sent to Bursor & Fisher, in response to the summons in the Underlying Action, dated March 5, 2024.

6. In its letter to Mr. Bursor, Hartford expressly denied coverage as to Mr. Bursor individually. Attached hereto as **Exhibit 2** is a true and correct copy of Hartford's Denial letter, sent to Mr. Bursor, in response to the summons in the Underlying Action, dated March 5, 2024.

7. On April 1, 2024, the Insureds sent a draft confidentiality agreement to Hartford.

8. On May 8, 2024, the Insureds and Hartford entered into a confidentiality agreement (the "Confidentiality Agreement"). Attached hereto as **Exhibit 3** is a true and correct copy of the Confidentiality Agreement entered into between Bursor & Fisher and Hartford, dated May 8, 2024.

9. The Confidentiality Agreement states that "Bursor & Fisher and Hartford have a common interest in defending the [Underlying Action] and a mutual concern in keeping private any Confidential Information exchanged pursuant to this Agreement away from certain third parties." Ex. 3.

10. The Confidentiality Agreement "also extends to any Confidential Information held and/or otherwise involving Bursor & Fisher's employees and/or members, including Scott Bursor." *Id.* at n.1.

11. "Confidential Information" is defined to include "defense cost invoices, confidential and non-public documents, including documents filed 'under seal' in the Lawsuit." *Id.* ¶ 1.

12. The Confidentiality Agreement requires Hartford, *inter alia*, to:

a. "use commercially reasonable efforts to maintain the confidentiality of all Confidential Information, which steps shall be no less rigorous than those used to protect Hartford's own respective confidential information";

b. use Confidential Information "only… in a manner that is consistent with this Agreement";

c. not disclose Confidential Information absent "Bursor & Fisher's express written consent or a court order providing otherwise";

d. "take all necessary affirmative steps to resist disclosure and maintain the confidentiality and privileged nature of the Confidential Information"; and

e. "cooperate in such efforts by Bursor & Fisher and . . . not oppose Bursor & Fisher's taking any lawful steps to resist, narrow or eliminate the need for the disclosure."

*Id.* ¶¶ 2, 4, 7.

13. The Confidentiality Agreement further provides that the Agreement "shall continue to be binding after the conclusion of the [Underlying] Lawsuit." *Id.* ¶ 14.

14. After execution of the Confidentiality Agreement, and subject to its terms, the Insureds provided Hartford with the complaint from the Underlying Action, which was and remains under seal.

15. On July 16, 2024, Bursor & Fisher submitted the first batch defense invoices to Hartford, stamped "CONFIDENTIAL" pursuant to the Confidentiality Agreement. Attached

hereto as **Exhibit 4** is a true and correct copy of an email dated July 16, 2024 transmitting defense invoices to Hartford's claim handler.

16. Later defense invoices were submitted to Hartford directly from defense counsel.

17. Hartford participated in Bursor & Fisher's defense of the Underlying Action and received regular updates on case proceedings from the Insureds' counsel. Hartford was thus aware of the Insureds' vigorous efforts to maintain the docket under seal, including various briefs filed in support of sealing the complaint, the appeal of the Magistrate Judge's decision to the District Judge, and continued requests by letter motion to seal each relevant filing throughout the litigation.

18. In May and June 2025—recognizing the critical importance of maintaining the Insureds' Confidential Information under seal—Hartford demanded that the Insureds seek a demand from the plaintiff and settle the Underlying Action before a ruling could potentially unseal the entire docket.

19. On May 23, 2025, without any pending request from Bursor & Fisher, Hartford offered settlement authority to settle the Underlying Action. Hartford's claim handler sent an email to the Insureds' counsel, stating: "Given that the Circuit Court ruling could come as early as today, The Hartford agrees to pay up to [REDACTED] to settle Parker's claims against Bursor & Fisher." Attached hereto as **Exhibit 5** is a true and correct copy of a redacted email dated May 23, 2025, from Hartford's claim handler, Jessica Meek, to the Insureds' defense counsel, Christine Amalfe.

20. On June 3, 2025, approximately ten days after its initial grant of settlement authority, Hartford made its demand clear that "[a]s the 2nd Circuit has now ruled that the lawsuit will be unsealed we would like to move forward and see if we can get this matter settled." Attached hereto as **Exhibit 6** is a true and correct copy of an email dated June 3, 2025,

from Hartford's claim handler, Jessica Meek, to the Insureds' defense counsel, Christine Amalfe.

21. On June 6, 2025, Hartford reiterated its desire to settle the underlying litigation to the Insureds' defense counsel, increasing its authority by nearly 50% since its authority from three days earlier. Notably, Hartford also noted that if Bursor & Fisher did not want to settle, it would have to assume its own defense going forward. Attached hereto as **Exhibit 7** is a true and correct copy of a redacted email thread dated June 6, 2025 between Jessica Meek, the Insureds' coverage counsel and the Insureds' defense counsel.

22. On June 9, 2025—consistent with Hartford's recognition that the sealing of the docket and potential settlement were inextricably linked—Hartford requested a status update on settlement discussions based on its understanding that the deadline to submit the joint letter indicating docket entries that should remain sealed had been pushed back "presumably . . . to allow more time for settlement discussions." Attached hereto as **Exhibit 8** is a true and correct copy of an email dated June 9, 2025, from Hartford's claim handler, Jessica Meek, to the Insureds' defense counsel.

23. The Insureds' defense counsel provided Hartford updates regarding settlement discussions in real time, advising Hartford on multiple occasions that maintaining the docket under seal was a material term of the settlement, including for the underlying plaintiff, and that any unsealing could unravel the settlement. In fact, on several occasions in the weeks preceding consummation of the settlement, Hartford was provided with drafts of the settlement agreement from the Insureds' defense counsel, all of which clearly and in multiple locations referenced the material issue of the docket remaining sealed and the parties' mutual obligation to oppose any unsealing. Hartford expressly or tacitly approved these drafts.

24. Hartford never objected to maintaining the docket under seal as a material term of the settlement.

25. Hartford consented to the settlement and paid the settlement amounts in full.

26. The Underlying Action was settled on July 15, 2025 with the execution of a carefully negotiated Settlement Agreement (the "Settlement Agreement"). On June 16, 2025, the Underlying Action was ordered closed with all pending motions rendered moot (ECF No. 439) and on July 24, 2025, an Order of Dismissal was entered by Judge Clarke (ECF No. 447).

27. On July 28, 2025, the parties filed a stipulation of withdrawal of the pending appeal with the United States Court of Appeals for the Second Circuit.

## II. HARTFORD'S CHANGE IN POSITION AND RETALIATORY MOTION TO UNSEAL

28. On July 29, 2025—one day after the proceedings in this action closed in all courts—Hartford filed the Coverage Action against the Insureds seeking to recoup defense and settlement costs it had paid on behalf of Bursor & Fisher in connection with the Underlying Action. It is evident that Hartford had formulated the intent to sue its insured immediately upon the closing of the same case it had worked actively towards settling, under terms of confidentiality and sealing it had fully supported.

29. On October 30, 2025, in connection with exhibits filed in support of Defendants' motion to dismiss, the Insureds and Hartford filed a Joint Omnibus Sealing Stipulation in the Coverage Action (Coverage ECF No. 35). In the stipulation, Hartford agreed that certain documents containing confidential information "may continue to be sealed." While Hartford sought to reserve its right to "later challenge the designations or the documents becoming public," the Insureds refused to include this language because it was inconsistent with the Confidentiality Agreement.

30. In its sealing motion (Coverage ECF No. 35-1), Hartford itself requested that "the materials Defendants have requested be sealed or redacted . . . shall remain redacted and/or under seal."

31. Yet on November 4, 2025, Hartford filed an opposition to the Insureds' sealing requests in the Coverage Action (Coverage ECF No. 35-1), arguing that the underlying docket had been "ordered unsealed" and the Confidentiality Agreement did not preclude Hartford from challenging designations.

32. On November 24, 2025, the Northern District of California granted the Insureds' Motion to Dismiss, or in the Alternative, to Transfer and transferred the Coverage Action to the Southern District of New York (Coverage ECF No. 46). With respect to the Insureds' sealing requests, the court "defer[red] to the Southern District of New York to make the final determination."

33. On May 20, 2026, Hartford filed an Amended Complaint in the Coverage Action (Coverage ECF No. 55).

34. On June 4, 2026, the Insureds served Hartford with a pre-motion to dismiss letter outlining the factual and legal deficiencies in Hartford's Amended Complaint.

35. The very next day, on June 5, 2026, Hartford filed the instant Letter Motion to Intervene and Unseal the Docket in the Underlying Action (ECF No. 449).

36. Hartford's position in the Coverage Action is based primarily on its contention that it never had a duty to defend either Insured—a question of law determined based solely on the complaint from the Underlying Action and the Hartford Policies, both of which Hartford already possesses.

37. Additionally, the Insureds and/or their counsel provided a significant volume of sealed documents from the Underlying Action to Hartford throughout the course of the litigation, including every document requested by Hartford. None of Hartford's requests for documents, during the course of its handling of the claim and participation in the defense of the Underlying Action, was denied – each document was provided subject to the Confidentiality Agreement and Hartford never challenged the confidentiality of any of the

documents. These documents, though provided subject to the Confidentiality Agreement preventing their disclosure, do not limit Hartford's ability to prosecute the Coverage Action.

38. To the extent Hartford needs any additional documents to prosecute the Coverage Action, Hartford may seek such documents during discovery in the Coverage Action.

39. There is no legitimate reason that Hartford would need sealed documents in the Underlying Action to be unsealed and available to the public in order for Hartford to litigate its recoupment claim, particularly at the motion to dismiss stage (Coverage ECF Nos. 62 and 63).

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

New York, New York

Dated: June 24, 2026

Kenneth H. Frenchman, Esq.
Cohen Ziffer Frenchman & McKenna LLP