Case 1:24-cv-00245-JGLC-RFT   Document 458   Filed 07/01/26   Page 1 of 28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

ANGELA PARKER,

       Plaintiff,

  v.

SCOTT BURSOR and BURSOR & FISHER,
P.A.,

       Defendants.

</td>
<td>

Case No.: 1:24-cv-00245-JGLC-RFT


**MOTION TO INTERVENE AND TO
COMPLETE ADMINISTRATIVE
UNSEALING**

</td></tr>
</table>

**TABLE OF CONTENTS**

I.     THE COMPLAINT ALLEGATIONS ALREADY ARE IN THE PUBLIC DOMAIN .........1

II.    DEFENDANTS HAVE NOT BEEN CANDID WITH JUDGE TORRES ABOUT THE CONTENTS OF THE COURT'S DOCKET ..........................................................................3

III.   DEFENDANTS HAVE MISCHARACTERIZED JUDGE GONZALEZ ROGERS'S RULING ...................................................................................................................................4

IV.    DEFENDANTS REPEATEDLY ATTEMPT TO WIELD THIS ACTION'S SEAL TO FORCE OTHER COURTS TO SEAL THEIR DOCKETS .....................................................8

V.     HARTFORD CANNOT BE MADE TO CIRCUMVENT THE COURT'S SEAL VIA THE CONFIDENTIALITY AGREEMENT OR DISCOVERY .......................................................9

VI.    HARTFORD OBJECTED TO BEING BOUND BY ANY SETTLEMENT AND ESTOPPEL IS IRRELEVANT IN ANY EVENT .................................................................10

VII.   THAT THIS ACTION SETTLED DOES NOT AFFECT THE ANALYSIS ........................12

VIII.  PLAINTIFF PARKER IS JUDICIALLY ESTOPPED TO OPPOSE ENFORCEMENT OF THE UNSEALING ORDERS......................................................................................................14

IX.    HARTFORD'S MOTION IS TIMELY .................................................................................16

X.     THE ISSUES HERE IMPACT THE PUBLIC .....................................................................18

XI.    HARTFORD'S MOTION DOES NOT TOUCH THE COUNTERCLAIMS .....................20

XII.   CONCLUSION .....................................................................................................................21

## TABLE OF AUTHORITIES

*AIU Ins. Co. v. Bothnia Int'l Ins. Co. Ltd.*,
No. 21 MISC. 459, 2021 WL 2206467 (S.D.N.Y. May 28, 2021) ...............................................14

*Alexandria Real Est. Equities, Inc. v. Fair*,
No. 11 CIV. 3694 LTS, 2011 WL 6015646 (S.D.N.Y. Nov. 30, 2011) ................................... 13-14

*Bartlett v. Societe Generale de Banque au Liban SAL*,
No. 19-CV-00007 (CBA) (TAM), 2024 WL 5168734 (E.D.N.Y. Dec. 19, 2024)...................10 n.4

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016) ........................................................................................................13

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) .....................................................................................................21 n.12

*Cisco Sys., Inc. v. Synamedia Ltd.*,
557 F. Supp. 3d 464 (S.D.N.Y. 2021) .........................................................................................14

*Diversified Grp., Inc. v. Daugerdas*,
217 F.R.D. 152 (S.D.N.Y. 2003) .................................................................................................16

*Doe 1 v. JP Morgan Chase Bank, N.A.*,
742 F. Supp. 3d 387, (S.D.N.Y. 2024) ........................................................................................13

*Dorsett v. Cnty. of Nassau*,
283 F.R.D. 85 (E.D.N.Y. 2012)....................................................................................................17

*Eagle Star Ins. Co. v. Arrowood Indem. Co.*,
No. 13 CV 3410 HB, 2013 WL 5322573  (S.D.N.Y. Sept. 23, 2013) ..........................................18

*Gambale v. Deutsche Bank AG*,
377 F.3d 133 (2d Cir. 2004) ...............................................................................................2, 11 n.5

*Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*,
No. 07 CIV. 8196 (PKC), 2008 WL 1805459 (S.D.N.Y. Apr. 21, 2008) .................................18 n.9

*Government of U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.*,
22-cv-10904 (JSR) 2024 WL 3227095 (S.D.N.Y. June 28, 2024).................................................15

*Health & Happiness (H&H) US LLC v. Nutramax Lab'ys, Inc.*,
No. 23 CIV. 10849 (LGS) (GS), 2026 WL 836795, (S.D.N.Y. Mar. 26, 2026).......................14 n.6

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
255 F.R.D. 308 (D. Conn. 2009)...........................................................................................17 n.8

*In re Pineapple Antitrust Litig.*,
No. 04 MD. 1628 RMB MHD, 2015 WL 5439090 (S.D.N.Y. Aug. 10, 2015) .......................17 n.8

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018) ........................................................................................9, 10 n.4

*Lohnn v. Int'l Bus. Machines Corp.*,
No. 21-CV-6379 (LJL), 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022) ......................................20 n.11

*Loomis Sayles Tr. Co., LLC v. Citigroup Glob. Markets Inc.*,
No. 22 CIV. 6706 (LGS), 2026 WL 1679438 (S.D.N.Y. June 10, 2026) ....................................20

*New Hampshire v. Maine*,
532 U.S. 742 (2001)............................................................................................................15

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3rd Cir.1994)..................................................................................................17

*Parker v. Bursor*,
No. 24-CV-0245 (JGLC) (RFT), 2024 WL 4850815 (S.D.N.Y. Nov. 21, 2024)......................3 n.2

*Parker v. Bursor*,
No. 24-cv-245, 2025 WL 2161225 (S.D.N.Y. Apr. 9, 2025) ..............................................20

*Psihoyos v. Pearson Educ., Inc.*,
855 F. Supp. 2d 103 (S.D.N.Y. 2012) ................................................................................10

*Pub. Citizen v. Liggett Grp., Inc.*,
858 F.2d 775 (1st Cir. 1988) ..............................................................................................17

*Robert Bosch GmbH v. Honewell Int'l Inc.*,
No. 14 CV 9432 PKC, 2015 WL 128154 (S.D.N.Y. Jan. 6, 2015) ......................................14

*Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc.*,
No. 23-CV-2349 (JGLC), 2025 WL 343666 (S.D.N.Y. Jan. 30, 2025) ................................12

*Singh v. City of New York*,
40 N.Y.3d 138, 145–46, 217 N.E.3d 1 (2023) .................................................................6 n.3

*TIG Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
No. 19 CIV. 10238 (PAE), 2019 WL 6310208 (S.D.N.Y. Nov. 25, 2019)..............................14 n.6

*Under Seal v. Under Seal*,
273 F. Supp. 3d 460 (S.D.N.Y. 2017) ..................................................................................6

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) ..................................................................................19 n.10

*United States v. Antar*,
38 F.3d 1348 (3d Cir. 1994) ..................................................................................10

*United States ex rel. Doe v. Horizon Therapeutics PLC*,
No. 20-CV-3207-MKV, 2021 WL 3500911 (S.D.N.Y. Aug. 9, 2021) ............................................12

*United States v. UCB, Inc.*,
 No. 14-CV-2218 (TPG), 2017 WL 838198 (S.D.N.Y. Mar. 3, 2017) ............................................12

*United States v. Visa U.S.A., Inc.*,
No. 98 Civ. 7076 (BSJ), 2000 WL 1682753 (S.D.N.Y. Nov. 9, 2000) ....................................10 n.4

*United States v. W. Prods., Ltd.*,
168 F. Supp. 2d 84 (S.D.N.Y. 2001) ..........................................................................15

*Van Gemert v. Boeing Co.*,
553 F.2d 812 (2d Cir. 1977) ..................................................................................6 n.3

**INTRODUCTION**

Sentinel Insurance Company, Limited ("Hartford"), pursuant to the Court's June 25, 2026 Order, ECF No. 457, files this motion to intervene per Federal Rule of Civil Procedure 24 to seek administrative unsealing of this litigation (the "Action") in accordance with the prior unsealing orders issued in this Action, *e.g.*, ECF No. 345.  Hartford's motion, like its Letter, ECF No. 449, seeks no relief from the Court beyond completing the already-issued unsealing orders.  Hartford does not seek to alter or expand these final and unappealable orders, only to see them enforced.

## I.  THE COMPLAINT ALLEGATIONS ALREADY ARE IN THE PUBLIC DOMAIN

Defendants' chief complaint is that (i) their "weighty" privacy interests outweigh the countervailing public interest in unsealing because the Complaint and other filed documents "contain highly sensitive allegations and information of a deeply personal nature," and (ii) the public disclosure of those allegations would be "profoundly damaging" to Defendants and others.  ECF No. 456 at 8.

Here is the problem with that argument:  Judge Clarke issued her unsealing order on March 31, 2025, including three pages of Factual Background detailing the allegations by Plaintiff Parker against Defendants, complete with cites to the Complaint.  ECF No. 345 at 2-5.  Judge Clarke's unsealing Order was not initially filed under seal, and before Defendants filed their motion to seal Judge Clarke's unsealing Order, *see* ECF 348, and before Judge Clarke addressed that motion, ECF No. 350, CourtListener, a non-profit entity which collects documents from PACER and that is affiliated with the Free Law Project, downloaded a full, unredacted copy of Judge Clarke's unsealing Order while it was publicly available.  That filing is available on the "docket" page by CourtListener, https://www.courtlistener.com/docket/68155347/parker-v-bursor/; the Order:  https://storage.courtlistener.com/recap/gov.uscourts.nysd.613508/

1

gov.uscourts.nysd.613508.345.0.pdf.  The Order has, apparently, been publicly available for over

a year, since at least April 10, 2025, when it was republished by another nonprofit, the Internet

Archive:



Internet Archive
https://archive.org › gov.uscourts.nysd.613508.345.0.pdf    ⋮

**against- SCOTT BURSOR, individually and**

Apr 10, 2025 — Angelica Parker, who was in an intimate relationship with Scott Bursor from 2018 to.
2023, **brings this action against Scott Bursor and Bursor & Fisher, P.A.** ... Read more
30 pages

https://dn721604.ca.archive.org/0/items/gov.uscourts.nysd.613508/gov.uscourts.nysd.613508.34

5.0.pdf.  At least one other website has also disseminated the contents of that Order.[1]

This public disclosure of the allegations that Defendants now seek to hide from the public

effectively moots their argument.  As the Second Circuit has held, once documents become

public, they will stay public:

> This is generally so when information that is supposed to be confidential—whether it
> be settlement terms of a discrimination lawsuit or the secret to making the hydrogen
> bomb, *see United States v. Progressive, Inc.,* 467 F.Supp. 990, *reh'g denied,* 486
> F.Supp. 5 (W.D.Wis.), *appeal dismissed,* 610 F.2d 819 (7th Cir.1979)—is publicly
> disclosed. Once it is public, it necessarily remains public. As Judge Richard Owen, of
> the United States District Court for the Southern District of New York, once aptly
> reminded the author of this opinion while he was acting as counsel for a party at trial:
> "Once the cat is out of the bag, the ball game is over." *Calabrian Co. v. Bangkok Bank
> Ltd.,* 55 F.R.D. 82 (S.D.N.Y.1972) (addressing the use at trial of privileged documents
> when the privileged nature of the documents, which had not been maintained in
> confidence, was first asserted during the relevant witness's cross-examination in open
> court); *see also* Melville B. Nimmer, *The Right To Speak From Times to Time: First
> Amendment Theory Applied to Libel and Misapplied to Privacy,* 56 Cal. L.Rev. 935,
> 961 (1968) (positing that communications that invade personal privacy, unlike false
> defamatory speech, are by definition true and therefore, once revealed, are indelible;
> they cannot be cured by "more speech").

*Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144, n.11 (2d Cir. 2004); *id.* at 144 ("however

confidential it may have been beforehand, subsequent to publication it was confidential no

---

[1]    *See generally* https://app.midpage.ai/document/parker-v-bursor-100043854369.

longer. . . . We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again. . . . The genie is out of the bottle, albeit because of what we consider to be the district court's error.  We have not the means to put the genie back.").  Simply put, the allegations are already public; that cannot be undone.

The substance of Plaintiff's allegations from her Complaint is already public record. There is no reason for the continued sealing of the previously unsealed items on the Court's docket given the above public copies of Judge Clarke's unsealing Order, ECF No. 345.

## II.    DEFENDANTS HAVE NOT BEEN CANDID WITH JUDGE TORRES ABOUT THE CONTENTS OF THE COURT'S DOCKET

Defendants have used this Action's technical continued sealing as a sword and shield. Not only that, Defendants are making *false representations* about the contents of the Court's docket.  On June 16, 2026, Defendants asserted in a letter to Judge Torres, who is currently presiding with Magistrate Judge Figueredo over Hartford's recovery action, *Sentinel Ins. Co. Ltd. v. Bursor & Fisher, P.A. and Scott Bursor*, 1:25-cv-10000-AT-VF (S.D.N.Y.) ("Hartford's Action"), that "the sole claim against B&F was for 'negligent retention and supervision'" in this Action.  LETTER addressed to Judge Analisa Torres from Kenneth H. Frenchman dated 6/16/2026 at 3, Hartford's Action, ECF No. 62.

Defendants' representation to Judge Torres is false.  The claims against Defendant Bursor & Fisher, P.A. were not for negligent retention and supervision, but for intentional infliction of emotional distress and crimes of violence motivated by gender animus.  *See generally* ECF No. 53-1; *see also* ECF No. 345 at 6.[2]  As Hartford said previously, to resolve those disputes, Hartford and the court in Hartford's Action, Judge Torres and Magistrate Judge Figueredo,

---

[2]    *E.g.*, *Parker v. Bursor,* No. 24-CV-0245 (JGLC) (RFT), 2024 WL 4850815, at *1 (S.D.N.Y. Nov. 21, 2024) ("The Complaint advances causes of action for violations of the New York City Victims of Gender Motivated Violence Act, battery, and intentional infliction of emotional distress against Defendants.").

3

necessarily need access to and the ability to discuss the contents of the docket, including the Complaint. This is now especially true given Defendants' false statements on the record to Judge Torres about the true contents of this Court's docket. Defendants are trying to use the docket's administrative seal to inhibit and impair the fair administration of justice. Public access aside, the misrepresentations by Defendants about this Court's docket are good cause alone for the Court to grant the motion.

### III.    DEFENDANTS HAVE MISCHARACTERIZED JUDGE GONZALEZ ROGERS'S RULING

This is not the first court to see Defendants' permanent sealing arguments. Judge Gonzalez Rogers, of the Northern District of California, received and ruled on these issues, finding Defendants' arguments "meritless." Defendants are now trying to rewrite that order, arguing Judge Gonzalez Rogers, instead, simply deferred ruling. But Judge Gonzalez Rogers did not broadly defer the sealing issues; she deferred *one* issue, which was whether "unsealing the documents would 'unravel' the settlement in the underlying litigation" because "Defendants d[id] not provide the Court with the settlement agreement." Defendants continue to collaterally attack and misrepresent this order, so Hartford is compelled to provide the sealing dispute ruling in full to avoid further misrepresentations by Defendants:

> The parties next hotly contest several of defendants' requests to seal certain documents disclosing the allegations against Scott Bursor and his law firm in the underlying litigation. Defendants raise five arguments, almost all of which the Court believes are meritless. That said, because this case will not be litigated here, the Court will defer to the Southern District of New York to make the final determination.
>
> *First*, defendants argue that the documents reveal allegations from the underlying litigation that remain sealed and are not accessible to the public. Not so. The underlying allegations have been disclosed, including in documents that *defendants* filed on the public docket in support of their removal petition. (*Parker* Action, Dkt No. 1-1) (describing the nature of this action as "assault/sexual assault, battery/sexual battery, intentional infliction of emotional distress, negligent infliction of emotional distress, abuse of process, violation of Adult Survivors Act, and violation of Victims of Gender Motivated Violence Act" and claiming that "***plaintiff brings this action for the emotional, physical and sexual abuse that she suffered at the hands of [Scott Bursor] beginning in or around July 2020***") (emphasis supplied.)

4

*Second*, defendants' argument that the underlying case and allegations remain sealed is belied by the procedural history of that case. Judge Clarke previously denied defendants' request to seal. (*Parker* Action, Dkt. No. 345.) Defendants then appealed that order in an effort that Judge Clarke found was "questionable at best." (*Id.* at 351, 352.) Although the Second Circuit initially granted a stay, it ultimately denied Bursor's request to stay the case and terminated its temporary stay, which in effect required the parties to unseal the documents. (*Id.* at 425.) Bursor and his firm settled the case rather than comply. (*Id.* at 439.) That defendants now attempt to argue that the underlying action involves material that should be sealed ignores Judge Clarke's order, and thus, does not persuade.

*Third*, defendants argue that a Confidentiality Agreement prevents Hartford from challenging Bursor and his law firm's confidentiality designations. The Court agrees with Hartford that the policy [*sic*] allows Hartford to disclose Confidential Information when a court order—like Judge Clarke's prior order—provides otherwise. (Dkt. No. 36-1, Agreement ¶ 6.)

*Fourth*, defendants argue that Hartford demanded that Bursor & Fisher settle the underlying lawsuit, and that unsealing "the unproven allegations would harm defendants" through subjecting them to public scandal. The documents defendants submitted to the Court, however, prove the opposite. They show that *Bursor & Fisher* pushed to settle the case and requested more settlement authority than Hartford would authorize. (Dkt. No. 18-19, Ex. 9.) Although the allegations may harm defendants' reputation, that alone is not sufficient to seal documents from the public. *Parker v. Bursor*, No. 24-cv-245, 2025 WL 2161225, at *1 (S.D.N.Y. Apr. 9, 2025) ("Although Defendants may certainly suffer reputational injury from the unsealing of the documents, that injury does not outweigh the interests of the public in their First Amendment right of access to judicial documents.")

*Finally*, defendants argue that unsealing the documents would "unravel" the settlement in the underlying litigation. Defendants do not provide the Court with the settlement agreement. The Court thus declines to address this issue and will defer to the Southern District of New York.

Hartford's Action, ECF No. 46 at 5–6.

As is plain, the only deferred issue – *i.e.*, the "final determination" of the five arguments – was Defendants' argument about the contents of their settlement with Plaintiff, as they did not put that contract on Judge Gonzalez Rogers' docket.  It is one thing to rehash arguments; but Defendants cannot be allowed to shamelessly misrepresent and collaterally attack Judge Gonzalez Rogers' court order.

Hartford has the judicially-confirmed contractual right under the Confidentiality Agreement (ECF No. 456-5) "to disclose Confidential Information when a court order—like Judge Clarke's prior order—provides otherwise."  Confidentiality Agreement ¶ 6 ("Hartford shall

not, absent Bursor & Fisher's express written consent <u>or a court order providing otherwise,</u> provide, give, show, communicate, or otherwise disclose the Confidential Information provided pursuant to this Agreement . . .").  Despite *contractually agreeing* that Hartford could disclose just this kind of information, Defendants continue to seek to frustrate Hartford's rights and deny Hartford the fruits of the Confidentiality Agreement, which is, in fact, a bad faith breach of that agreement.[3]

Notably, Defendants made the same arguments to Judge Gonzalez Rogers they make here – that the Confidentiality Agreement requires Hartford to "take all necessary affirmative steps to resist disclosure and maintain the confidentiality and privileged nature" (ECF No. 456 at 7) to keep these documents sealed.  *Compare* Hartford's Action, ECF No. 41 at 4.  Judge Gonzalez Rogers ruled them "meritless."  Defendants ignore context (they quote paragraph 7 of the Confidentiality Agreement, referring to what Hartford shall do "[i]f Hartford receives a subpoena or other request or demand for Confidential Information" that was "provided pursuant to this Agreement" – not the case here), ignore the carve out for court orders, and ignore that paragraph 11 states "that this Agreement is without prejudice with respect to any future production of documents or other information, without prejudice to the rights and obligations following from the Policies or at law."  This clearly relates to a "future production of documents or other information," and Hartford has rights "at law" to seek to unseal documents, especially ones directly relevant to Hartford's Action.  Indeed, Hartford's motion is limited to those documents *already* ordered unsealed, all of which are judicial documents.  *Under Seal v. Under Seal*, 273 F.

---

[3]    *Singh v. City of New York*, 40 N.Y.3d 138, 145–46, 217 N.E.3d 1, 5 (2023) ("Broadly stated, the implied covenant 'embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract' '") (citations omitted); *Van Gemert v. Boeing Co.*, 553 F.2d 812, 815 (2d Cir. 1977) (noting "'that in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .'") (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933)).

Supp. 3d 460, 469 (S.D.N.Y. 2017) ("The relevant filings are the pleadings, the motion papers and related submissions, and the court's opinion and orders.  Generally, the presumption of access applies to all documents filed with the court . . . Pleadings are judicial documents for purposes of common-law and First Amendment rights of access.") (citing various).

Despite knowing all the above, Defendants here and by letter continue to threaten to sue Hartford for exercising its judicially confirmed contractual rights, *see* ECF No. 456 at 8 and Exhibit 1.  Judge Gonzalez Rogers has already ruled that Defendants' false narrative are "meritless," such as their argument that Hartford pressured Defendants to settle (ECF No. 456 at 2, 6, 7, *passim*) when, in truth, as Judge Gonzalez Rogers found, "*Bursor & Fisher* pushed to settle the case and requested more settlement authority than Hartford would authorize."  *See supra*; *see also* Hartford's Action, ECF No. 49-7 at 1, 4 (showing Defendants' demands for authority as early as March 21, 2024 – before the Complaint was even filed – and September 2024).  While Hartford's Action, ECF No. 49-7, is subject to a present confidentiality order, *see* Hartford's Action, ECF No. 50, the unredacted versions of emails (available at ECF No. 18-17 on Judge Torres's and Judge Gonzalez Rogers' dockets) reflect, as Judge Gonzalez Rogers found, that Defendants sought far more settlement authority than Hartford ever authorized far earlier in the case.  *Compare* Hartford's Action, ECF Nos. 49-9 (redacted) and 18-22 (unredacted) at 1–2.

Relatedly, Defendants also attach an email chain, ECF No. 456-9, and suggest Hartford, out of the blue, offered settlement authority on June 6, 2025.  In fact – and Defendants have now put Hartford's settlement authority and reasoning squarely at issue, due to Mr. Frenchman's assertion that Hartford "increase[ed] its authority by nearly 50% since its authority from three days earlier" (ECF No. 456-2 at 5) – the full chain shows that Hartford was responding to Defendants' "[t]ime is of the essence" demands that Hartford give them authority to make a

"substantive offer" – which it did. *See* Exhibit 2 at 1–2. Defendants even conditioned their willingness to settle on Hartford paying Mr. Bursor, personally, *millions* of dollars for prior defense costs adjustments and write offs for outsized costs. *See* Exhibit 2 at 2.

Hartford respectfully asks the Court to rule in accord with Judge Gonzalez Rogers's ruling so Hartford can avoid more frivolous litigation by Defendants.

## IV.   DEFENDANTS REPEATEDLY ATTEMPT TO WIELD THIS ACTION'S SEAL TO FORCE OTHER COURTS TO SEAL THEIR DOCKETS

As noted above, Defendants have attempted to wield the continued administrative seal in this case to force *other* courts to seal documents, starting with Judge Gonzalez Rogers. Notably, Defendants also have stated this aim here. ECF No. 456 at 6 ("Hartford is perfectly able to file any filings in the Underlying Action that may be relevant to the Coverage Action under seal in the Coverage Action."). Standing alone, this is a key problem justifying Hartford's motion: the parties concede that various documents this Court has ordered unsealed are "relevant" to Hartford's Action and would otherwise be discoverable therein. Hartford is *not* required to litigate in secret, and it is *not* required to make spurious arguments to contravene the right of public access, which applies just as much to this Action as it does Hartford's Action. Given that the Court has already ruled that the documents on its docket should not remain under seal, it is specious for Defendants to argue that Hartford is required to continue putting those documents under seal in *other* actions in knowing derogation of the extant unsealing orders here.

Moreover, Defendants do not deny that they have claimed that they intend to sue other insurers as third-party defendants in that case, Hartford's Action, ECF No. 38 at 6 ("This proposal anticipates that Defendants will file their . . . Third Party Complaints against the other insurers"). No doubt, Defendants will argue that the third-party defendants, too, must file everything under seal. That Defendants are attempting to wield the administrative seal in this

8

Action to seal *other* cases before *other* courts, impacting how those courts can manage their own dockets while compounding the harm to public access, is good and just cause enough to complete the already-ordered unsealing now.

### V.    HARTFORD CANNOT BE MADE TO CIRCUMVENT THE COURT'S SEAL VIA THE CONFIDENTIALITY AGREEMENT OR DISCOVERY

Various parties make various arguments that Hartford can get the documents on this Court's sealed docket by knowingly attempting to subvert the Court's administrative seal via discovery to Defendants.  Notably, *Defendants* will not even commit to that argument, arguing they get to litigate a motion to dismiss before Hartford can see anything.  *See* ECF 456 at 6. Regardless, the argument that Hartford could *potentially* get those documents from Defendants is nonsense.  Paragraph 11 of the Confidentiality Agreement states "that, by entering into this Agreement, Bursor & Fisher are not obligating themselves to disclose Confidential Information to Hartford[.]"  The Confidentiality Agreement provides no right or recourse for Hartford to access even copies of the sealed documents from Defendants, and any discovery request would end up right back here.  If Defendants had their way, Hartford would forever be in the dark, unable to see even unambiguously unsealed filings, at Defendants' whims.

The suggestions that Judge Torres could or should be the one to order the Defendants to defy the current administrative seal in this Court is puzzling.  The parties cannot seriously be suggesting that Hartford should have first attempted to use discovery in another court to seek sealed documents in *this* Court without notice to the Court or litigants.  Just such efforts have been properly rejected by the Second Circuit.  *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018) ("The decision to alter the confidentiality order without Shell's participation, and without considering the costs of disclosure to Shell, makes this case exceptional, and mandates reversal.").  Simply put, it is settled that collateral litigants must apply

to *this* Court to seek the documents that are sealed on *this* Court's docket, not attempt to end-run the Court's administrative seal by serving discovery on parties that have access.[4]  The Court controls its docket, and it is audacious to suggest that Hartford should instead turn to Judge Torres to order the production of copies from Defendants in *knowing* contradiction of this Court's continuing administrative seal.

Regardless, Hartford, and the public generally, is entitled to see the docket as filed, especially given the extant unsealing orders:  "what exists of the right of access if it extends only to those who can squeeze through the door?"  *United States v. Antar*, 38 F.3d 1348, 1360 (3d Cir. 1994) (quoted at *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)).  The suggestion that Hartford might, by some other avenue, be able to circumvent the Court's seal is irrelevant to the right of public access.

## VI.    HARTFORD OBJECTED TO BEING BOUND BY ANY SETTLEMENT AND ESTOPPEL IS IRRELEVANT IN ANY EVENT

Defendants argue that Hartford should be "equitably estopped" to seek unsealing because it knew of Defendants' settlement agreements.  ECF No. 456 at 7.  Defendants' contention is wholly unsupported by the scant law they cite and countervails basic law on equitable estoppel.  "Courts have warned that '[e]stoppel is a drastic remedy and must be utilized sparingly.  Clearly, a successful application of this remedy requires the party asserting estoppel to use due care and not fail to inquire as to its rights where that would be the prudent course of conduct.'"  *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 129 (S.D.N.Y. 2012) (quoting *Keane Dealer Servs.,*

---

4    *Kiobel*, 895 F.3d at 241, 243–48 (ancillary discovery under 28 U.S.C. § 1782 cannot be used to "undermine" protective orders from "prior litigation . . . in [the Southern District of New York]"); *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-00007 (CBA) (TAM), 2024 WL 5168734, at *2 (E.D.N.Y. Dec. 19, 2024) ("Plaintiffs . . . used the <u>Bartlett</u> Discovery Material in redacted form because they were left with 'insufficient time to renew their discovery motion' to the <u>Freeman II</u> court . . .the Honorable Pamela K. Chen . . . denied Plaintiffs' request to subpoena . . . because 'it would end up being an end run around the protective order that exists [in <u>Bartlett</u>].'"); *see also United States v. Visa U.S.A., Inc.*, No. 98 Civ. 7076 (BSJ), 2000 WL 1682753, at *1 (S.D.N.Y. Nov. 9, 2000) ("parties who gain access to sealed material inadvertently disclosed cannot be allowed to retain those documents.").

*Inc. v. Harts*, 968 F. Supp. 944, 948 (S.D.N.Y. 1997)).  Yet, even taking the contentions at face value, Defendants' estoppel argument is, unsurprisingly, based on falsehoods.

Defendants' argument is premised on the notion that Hartford was required to contemporaneously "challenge" the settlement terms (ECF No. 456 at 7); in fact, Hartford did. When Defendants provided Hartford with a copy of the draft settlement with Plaintiff, Hartford stated *repeatedly* that it objected to having any obligations foisted upon it.  Attached as Exhibit 3 is the pertinent email exchange.[5]  When presented with a draft, Hartford said:  "Hartford is not a party to the agreement.  We think Paragraph 2 should be changed . . ."  Exhibit 3 at 6. Defendants' counsel stated:  "The Hartford is clearly not a party to the agreement.  Plaintiff has not asked for that and we don't intend to agree to it even if they did."  *Id.* at 5.  Defendants, however, nevertheless objected to Hartford's language change.  *Id.*  Hartford responded:

> Hi Christine-
>
> Not sure why that language is important to your client, but it's not appropriate to impose in this agreement an obligation on a non-party to the agreement. Let's go with: "Defendants will direct their insurance carrier(s) to deposit . . ." That protects whatever issue your client has while not effectively making Hartford a party to the agreement, which it is not.
>
> Thanks,

*Id.* at 4.  As Hartford stated, "it's not appropriate to impose in this agreement an obligation on a non-party to the agreement."  Defendants acceded to the change.  *Id.* at 1.

Simply put, Defendants knew Hartford objected to being bound by the settlement or having any obligations foisted upon it; Hartford firmly objected to anyone "effectively making

---

[5]    The exchange includes a reference to the settlement amount to Plaintiff on page 6, which Hartford has redacted, pending any potential Court instruction, as Plaintiff and Defendants made their settlement confidential.  *See Gambale v. Deutsche Bank AG,* 377 F.3d 133, 143 (2d Cir. 2004) ("That amount is set forth in settlement documents that were entered into on a confidential basis between the parties and are not themselves part of the court record.  There is no established presumption of access of which we have been made aware with respect to the information contained in them.") (protecting confidential settlement amount revealed in transcript).  Hartford files concurrently with this motion a letter motion on those redactions with unsealed versions of Exhibits 2 and 3 to this motion.

Hartford a party to the agreement, which it is not." For Defendants to now assert estoppel on a detrimental reliance theory to try to bind Hartford is not only legally unsupported but, when Hartford objected to being referenced in the settlement and specifically objected to having any obligations put upon it by the agreement, based entirely on further misrepresentations by Defendants in any event. It is, in fact, *Defendants* who are estopped to argue Hartford is somehow bound by the provisions in the agreement after acknowledging Hartford would not be so bound.

### VII.    THAT THIS ACTION SETTLED DOES NOT AFFECT THE ANALYSIS

Mr. Plaut and Mr. Hantman have suggested that because this case did not reach a final adjudication, none of the documents are judicial documents to which the right of public access attaches. That contention is wrong. "Documents do not cease to be judicial documents merely because a case has been closed or settled, and the need for the public to be able to evaluate a case does not end with its closure." *Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc.*, No. 23-CV-2349 (JGLC), 2025 WL 343666, at *2 (S.D.N.Y. Jan. 30, 2025). The "voluntary dismissal of this case has no bearing on the presumption of public access." *United States ex rel. Doe v. Horizon Therapeutics PLC*, No. 20-CV-3207-MKV, 2021 WL 3500911, at *2 (S.D.N.Y. Aug. 9, 2021); *United States v. UCB, Inc.*, No. 14-CV-2218 (TPG), 2017 WL 838198, at *2 (S.D.N.Y. Mar. 3, 2017) ("However, a pleading's status as a judicial document does not, as Nash suggests, hinge on whether it has been subject to adjudication or has been voluntarily dismissed. . . . It also cannot be the case that a document ceases to be a judicial document simply because the plaintiff ultimately voluntarily dismisses his action.").

This, notably, was among the arguments Judge Gonzalez Rogers rejected when presented by Defendants, *see supra, see also* Hartford ECF No. 41 at 5. To be sure, as the Second Circuit has held, "pleadings—even in settled cases—are Judicial records subject to a presumption of

12

public access." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016) ("the fact of filing a complaint, whatever its veracity, is a significant matter of record. Even in the settlement context, the inspection of pleadings allows 'the public [to] discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed.' . . . Thus, pleadings are considered judicial records 'even when the case is pending before judgment or resolved by settlement.'") (citations omitted); *Doe 1 v. JP Morgan Chase Bank, N.A.*, 742 F. Supp. 3d 387, 394 (S.D.N.Y. 2024) ("Since only potential and not actual reliance is required for judicial document status, the fact that a summary judgment motion is never ruled on prior to settlement does not affect the judicial document status of exhibits filed . . . "). That this case eventually settled has no bearing on the analysis, especially considering the unsealing was ordered well *before* any settlement.

The parties also argue they had some "expectation" that the docket would, for some reason, remain permanently sealed (despite receiving no such order from the Court). The Court never permanently sealed this action; quite the opposite. In fact, Defendants' counsel omits that, as she informed a Hartford claims handler, this Court warned all parties on a settlement conference call, on or about June 11, 2025, that the Court would *not* permanently seal the docket in contravention of the right of public access. Knowing this, the parties settled anyway. No party can seriously claim an "expectation" (*e.g.*, ECF No. 454 at 2, ECF No. 456 at 5) that the docket would remain permanently sealed, contrary to the Court's warning, and no such expectations would bind the Court in any event. Indeed, "the mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access." *Alexandria Real Est. Equities, Inc. v. Fair*, No. 11 CIV. 3694 LTS, 2011

13

WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011). [6]  As it also happens, "neither Federal Rule of Evidence 408(a) nor the Court's interest in protecting the confidentiality and candor of settlement negotiations outweighs the public's interest in unredacted versions" of the pleadings. *Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 476 (S.D.N.Y. 2021) (citing *Sasson v. Hachette Filipacchi Presse*, No. 15-CV-00194 (VM) (SN), 2016 WL 1599492, at *7 (S.D.N.Y. Apr. 20, 2016)); *AIU Ins. Co. v. Bothnia Int'l Ins. Co. Ltd.*, No. 21 MISC. 459, 2021 WL 2206467, at *1 (S.D.N.Y. May 28, 2021) ("Here, Plaintiff contends that sealing is appropriate because the parties agreed to file under seal . . .  Confidentiality agreements alone are not an adequate basis for sealing, however."). Indeed, the parties "cannot have a legitimate expectation of privacy" because every "party should know of the presumption of public access to judicial proceedings." *Robert Bosch GmbH v. Honewell Int'l Inc.*, No. 14 CV 9432 PKC, 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015) (ruling otherwise "private" arbitration becomes public when proceedings end up in court).

## VIII.    PLAINTIFF PARKER IS JUDICIALLY ESTOPPED TO OPPOSE ENFORCEMENT OF THE UNSEALING ORDERS

Hartford understands that Plaintiff's settlement agreement with Defendants required her to oppose Hartford's Letter and the instant motion.  Hartford does not believe that obligation is enforceable in context, but does not fault her for filing whatever papers she believes she is contractually obligated to file.  Still, Plaintiff Parker's filings on this issue are immaterial.

---

[6]    *TIG Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 19 CIV. 10238 (PAE), 2019 WL 6310208, at *4 (S.D.N.Y. Nov. 25, 2019) ("the sole competing interest identified by the parties is the existence of the confidentiality agreement that governed the underlying arbitration. That agreement does not bind the Court and is, without more, insufficient to overcome the public's countervailing interest in access to the courts."); *see also Health & Happiness (H&H) US LLC v. Nutramax Lab'ys, Inc.*, No. 23 CIV. 10849 (LGS) (GS), 2026 WL 836795, at *2 (S.D.N.Y. Mar. 26, 2026) ("Material designated as Confidential by a protective order 'might not overcome the presumption of public access once it becomes a judicial document.'") (quoting *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19 Civ. 10104 (AJN) (KHP), 2022 WL 2116686, at *1 (S.D.N.Y. June 13, 2022)).

Plaintiff was the successful movant for unsealing, and she is judicially estopped to oppose the enforcement of those orders now.  As the Supreme Court has stated:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895).  This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8 [. . .]

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Judicial estoppel applies when party has taken one position, won that position in court, and then contradicts that winning position later.  *E.g.*, *United States v. W. Prods., Ltd.*, 168 F. Supp. 2d 84, 88 (S.D.N.Y. 2001) ("First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner.") (quoting *Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993)).  Plaintiff argued for the docket's unsealing, and the Court has adopted that position.  Judicial estoppel, therefore, applies to prevent her opposition to her own successful motion in this Court, as well as her successful opposition to Defendants' sealing arguments in the Second Circuit proceedings.[7]

The parties cite *Government of U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.*, 22-cv-10904 (JSR) 2024 WL 3227095, (S.D.N.Y. June 28, 2024); this citation is off-point.  Here, Plaintiff Parker did not file with "anonymity" and vigorously sought to unseal.  It is already public that Plaintiff Parker sought recompense for "emotional, physical and sexual abuse at the

---

[7]     *See* Opposition to Appellant's Emergency Motion for Administrative Stay and Stay Pending Appeal, *Parker v. Bursor, et al.*, 25-771 (2d. Cir.), Apr. 22, 2025, ECF No. 35.1; Motion Order, *Parker v. Bursor, et al.*, 25-771 (2d. Cir.), May 30, 2025, ECF No. 49.

hands of" Scott Bursor.  *See* ECF No. 1-1; Hartford's Action, ECF No. 46.  Again, Plaintiff

Parker's opposition, if she files one, is immaterial.

## IX.    HARTFORD'S MOTION IS TIMELY

Hartford's renewed motion is undoubtedly timely.  Defendants' motion to dismiss in

Hartford's Action has been continued to July 27, 2026; Hartford needs this docket to be

administratively unsealed, again, in accordance with the prior orders by this Court and Judge

Clarke, to hold Defendants to account for any and all misrepresentations about this Court's

docket.

Otherwise, and to be clear, under Rule 24(b)(3), when discussing the timeliness of a

motion to intervene, courts are to consider "whether the intervention will unduly delay or

prejudice <u>the adjudication</u> of the original parties' rights."  Thus, any claimed prejudice to the

parties *outside* that context is irrelevant if it does not result in delay or prejudice to the actual

adjudication to this Action.  Notably, when a party solely seeks to intervene on sealing or

confidentiality orders, the time limit is already relaxed:

> " '[I]ntervention to challenge confidentiality orders may take place long after a case
> has been terminated.' " *E.E.O.C. v. National Children's Ctr., Inc.,* 146 F.3d 1042, 1047
> (D.C.Cir.1998) (quoting *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 779 (3rd
> Cir.1994)). "Rule 24(b)'s timeliness requirement is to prevent prejudice in the
> adjudication of the rights of the existing parties, a concern not present when the
> existing parties have settled their dispute and intervention is for a collateral purpose."
> *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990)
> (allowing intervention three years after the case had been settled because intervention
> "was for the sole purpose of challenging a protective order").

*Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 158 n.4 (S.D.N.Y. 2003).  And, given that,

as the parties note, this Action *is* settled and closed, the "timeliness" required to intervene is

further relaxed, as the risk of prejudice or delay to pending litigation has ceased to exist:

> Moreover, "[w]hen considering a motion for permissive intervention, a court must
> examine whether intervention will prejudice the parties to the action or cause [undue]
> delay." *Envirco Corp. v. Clestra Cleanroom, Inc.,* No. 98 Civ. 120, 2002 WL
> 31115664, at *4 (N.D.N.Y. Sept. 24, 2002) (citing *D'Amato v. Deutsche Bank,* 236
> F.3d 78, 84 (2d Cir.2001)). The Court finds that there is no risk of undue delay or

> prejudice because the underlying case has been closed for nearly one year. "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990); *see E.E.O.C. v. Nat'l Children's Ctr., Inc.,* 146 F.3d 1042, 1047 (D.C.Cir.1998) (quoting *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 779 (3rd Cir.1994)) (" '[I]ntervention to challenge confidentiality orders may take place long after a case has been terminated.' "). Thus, the Court finds that the PBA made the present motion in a timely fashion . . .

*Dorsett v. Cnty. of Nassau*, 283 F.R.D. 85, 91 (E.D.N.Y. 2012). In sum, the fact that this case is settled and closed *supports* a finding of timeliness to intervene. And, as noted above, "intervention to challenge confidentiality orders may take place long after a case has been terminated." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 779 (3rd Cir.1994).[8]

Hartford only seeks to enforce unsealing orders that have *already* been granted. As this Action is already over, the risk of prejudice or delay is nil and the timeliness requirement is further relaxed. To be sure, even if it were not, that would not provide excuse or exception to keep the docket under seal, in contravention of the right of public access, where it has *already* been ordered unsealed. ECF No. 449, n.1. Moreover, there is obviously no time limit to the public right of access:

> [T]o the extent [a right of access] exists, it exists today for the records of cases decided a hundred years ago as surely as is does for lawsuits now in the early stages of motions litigation. The fact that a suit has gone to judgment does not in any sense militate against the public's right to prosecute a substantiated right to see the records of a particular case. Moreover, access to court records does not involve relitigation of the underlying dispute, so the rationale behind requiring extraordinary circumstances for postjudgment intervention does not as a rule apply to access claims.

*Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988) (alterations original) (quoting *Mokhiber v. Davis*, 537 A.2d 1100, 1105 (D.C. 1988)) (quoted as altered in *Application of Akron Beacon J.*, No. 94 CIV. 1402 (CSH), 1995 WL 234710, at *6 (S.D.N.Y. Apr. 20, 1995)).

---

[8]    *E.g.*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 316 (D. Conn. 2009) ("Because the intervention by Stone Paradise for the limited purpose of modifying the protective order would not impose significant delay or expense on the existing parties, the motion to intervene is timely."); *In re Pineapple Antitrust Litig.*, No. 04 MD. 1628 RMB MHD, 2015 WL 5439090, at *2 (S.D.N.Y. Aug. 10, 2015) ("we note that the burden cited by defendants would not meaningfully change whether the delay was three years or five.").

17

That the Action started more than two years ago and resolved just over a year ago is irrelevant to public access. The public will have that right today, tomorrow, a decade from now, and beyond. Even if Hartford's intervention failed entirely, the public rights subsist, and this Court's control over its docket makes the issue unendingly pertinent and *sua sponte* resolvable. "The Court may *sua sponte* unseal the records at issue irrespective of a motion to intervene." *Eagle Star Ins. Co. v. Arrowood Indem. Co.*, No. 13 CV 3410 HB, 2013 WL 5322573, at \*1 (S.D.N.Y. Sept. 23, 2013) (citing *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 141 (2d Cir. 2004) ("we see no reason why the absence of a motion of a party to the litigation or some third party requesting that a seal or protective order be lifted should remove a federal court's ability to monitor and modify its previous orders in exercise of its 'supervisory power over its own records and files.'") (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

## X.    THE ISSUES HERE IMPACT THE PUBLIC

The parties, in varying levels of depth, argue that this dispute is essentially private, and so the public right of access should, for some reason, not attach to it. That argument, implicitly if not expressly, has been rejected many times. If parties want privacy, they should agree to arbitration.[9] Documents filed in court, however, are presumptively public, even when inane (which these allegations are not). Notably, the right of public access is not limited to literally

---

[9]    *C.f. Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*, No. 07 CIV. 8196 (PKC), 2008 WL 1805459, at \*1 (S.D.N.Y. Apr. 21, 2008), *as amended* (Apr. 24, 2008) ("Arbitration remains a species of contract and, in the absence of some governing principle of law (*e.g.* in the regulatory requirements), parties are permitted to keep their private undertakings from the prying eyes of others.") (quoting prior order).

18

reading the pleadings but implicates, in every case, trust in the judicial process and a myriad of other public values and interests.[10]

To argue that allegations made on a federal court's docket are "private" (ECF No. 452-1 at 2) is contrary to the law. The bare assertions that this Action is a mere private dispute is belied by the allegations Hartford has seen. It is public that this Action raises allegations over "emotional, physical and sexual abuse" (*see* ECF No. 1-1). Defendants themselves have apparently alleged a racketeering enterprise, *see* ECF 431 at 2–3, asserting the counterclaim defendants "orchestrated a multi-year extortion scheme targeting public figures and attorneys . . ." *Id.* at 4. That is no mere private contract dispute.

Defendants, knowing that this issue has already been lost, try sleight of hand. Defendants state: "This is a private insurance coverage dispute between an insured and its insurer. It is not a matter of public concern." ECF No. 456 at 6. Defendants repeat this again, ECF No. 456 at 9, attempting to switch the focus away from this Action. Defendants then cite a series of unreported decisions to argue the right of public access does not attach as strongly to insurance disputes (a dubious contention, even if inapplicable here).

But *this* Action is not Hartford's Action. Again, this Action raises allegations relating to "emotional, physical and sexual abuse" (*see* ECF No. 1-1). Those are *criminal* allegations, clearly implicating the public writ large. In this day and age, it cannot seriously be contended that the public does not have a strong interest in knowing about an alleged prolific abuser, especially when they hold positions of wealth, power, and even appear as judicial officers in this district and various other courts.

---

[10]    *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Although courts have a number of internal checks . . . professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings.").

When balancing the rights of public access against pleas to seal, courts "can seal documents based on this right only 'if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Loomis Sayles Tr. Co., LLC v. Citigroup Glob. Markets Inc.*, No. 22 CIV. 6706 (LGS), 2026 WL 1679438, at *1 (S.D.N.Y. June 10, 2026) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006)).  As Judge Clarke ruled:  "When this Court and Judge Tarnofsky considered the issue of sealing in its Opinion and Order at ECF No. 345 and in the Report and Recommendation, the matter was not a close question." *Parker v. Bursor*, No. 24-cv-245, 2025 WL 2161225, at *1 (S.D.N.Y. Apr. 9, 2025).  "Although Defendants may certainly suffer reputational injury from the unsealing of the documents, that injury does not outweigh the interests of the public in their First Amendment right of access to judicial documents." *Id.*[11]  The parties, at most, were entitled to spot redactions, *see* ECF 345, not a permanent seal of the case.

## XI.    HARTFORD'S MOTION DOES NOT TOUCH THE COUNTERCLAIMS

Various of the third-party defendants filed oppositions to Hartford's prior Letter.  To the extent those parties are concerned about Defendants' allegations post-dating the unsealing orders, which appears to be the entire extent of their concern, those issues are outside the scope of Hartford's motion because those issues were not decided by the unsealing orders Hartford seeks to have completed.  *See* ECF No. 453 at 2–3.  Hartford's Letter even acknowledged that the "the interests of certain third parties, *i.e.*, minors, are beyond those that can be waived by the parties[.]" ECF No. 449 at 2.  Hartford reiterates that point now.  Hartford only seeks to enforce the prior issued, final unsealing orders.  Those orders did not address Defendants' counterclaims,

---

[11]     Nor does it outweigh the public's common-law rights to public access, either.  *See Lohnn v. Int'l Bus. Machines Corp.*, No. 21-CV-6379 (LJL), 2022 WL 36420, at *6 (S.D.N.Y. Jan. 4, 2022) ("The Supreme Court and Second Circuit have long held that there is a presumption of immediate public access to judicial documents under both the common law and the First Amendment.") (citing various).

as they predate the counterclaims.  Given that the counterclaims will go unanswered and that Defendants have already asserted that because they "will go unanswered . . . unsealing will do nothing more than promote public scandal or serve as reservoirs of libelous statements for press consumption[,]" ECF No. 456 at 5 (citation and quotation marks omitted), Defendants could presumably agree to strike their counterclaims under Rule 12(f)(2) as scandalous, impertinent, and immaterial to assuage these apparent concerns,[12] as such motion would technically be timely.

## CONCLUSION

The Court and Judge Clarke have already ruled on unsealing.  Despite the parties' attempt to relitigate settled issues, the Court has done all the balancing due them and found the public interest to prevail.  The parties cannot avoid those orders; just because the parties now purportedly agree to a permanent seal does not mean an action *can* be permanently sealed. Hartford's requests are aimed at completing the already-entered unsealing orders.  Plaintiff Parker is judicially estopped to oppose the enforcement of those orders; Defendants, having given up their appeal, cannot oppose the enforcement of those orders; and the third-party defendants have no basis to oppose their enforcement, having never objected previously. Nevertheless, Hartford did not and does not seek to unseal the counterclaim or any allegations by Defendants against the third-party defendants.  But, whatever concerns the counterclaim defendants have do not outweigh either Hartford's needs to be able to actually see and discuss the documents unambiguously unsealed by extant court orders and the right of public access and would, at most, entitle those parties to redactions of the allegations against them, not a seal over

---

[12]     *See Brown v. Maxwell*, 929 F.3d 41, 51–52 (2d Cir. 2019) ("Because such rejected or stricken material is not 'relevant to the performance of the judicial function' it would not be considered a 'judicial document' and would enjoy no presumption of public access.") (quoting *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995)).  "Although motions to strike material *solely* 'on the ground that the matter is impertinent and immaterial' are disfavored, when material is also 'scandalous,' no such presumption applies."  *Id.* at 51 n. 42 (citing various).

the docket generally.  Hartford asks the Court to direct the Clerk to finish the unsealing of the

docket, in accordance with the prior unsealing orders.


Dated:  July 1, 2026                                        Respectfully submitted,

                                                           /s/ *James P. Ruggeri*
                                                           James P. Ruggeri (NY Bar No. 2389575)
                                                           RUGGERI PARKS WEINBERG LLP
                                                           1875 K Street NW, Suite 800
                                                           Washington, DC 20006
                                                           (202) 469-7752
                                                           jruggeri@ruggerilaw.com

                                                           *Attorney for Intervenor Sentinel Insurance*
                                                           *Company, Ltd.*

23

## <u>CERTIFICATE OF LOCAL CIVIL RULE 7.1(c) COMPLIANCE</u>

As this document is over ten pages, the undersigned certifies that the above-filed motion consists of <u>7754</u> words, except for the caption, tables of contents and authorities, signature block, and required certificate, as counted by Microsoft Word's Word Count.

<u>*/s/ James P. Ruggeri*</u>
James P. Ruggeri (NY Bar No. 2389575)

23