

**Kenneth H. Frenchman**

| 212-584-1820 | 1325 Avenue of the Americas | 212-584-1890 P |
| kfrenchman@cohenziffer.com | New York, NY 10019 | 212-584-1891 F |

June 11, 2026

**VIA EMAIL**
James P. Ruggeri
Ruggeri Parks Weinberg LLP
jruggeri@ruggerilaw.com
(202) 469-7752

RE:    **Hartford's Request to Intervene and Unseal in *Parker v. Bursor, et al.*, 1:24-cv-00245-JGLC-RFT (S.D.N.Y.) (the "Underlying Litigation")**

Dear Jim:

We write on behalf of Sentinel Insurance Company, Limited's ("Hartford") Insureds, Bursor & Fisher, P.A. and Scott Bursor (collectively, the "Insureds") in response to Hartford's recent filing in the Underlying Litigation requesting to intervene and unseal the docket (the "Motion").

Hartford's Motion to unseal the docket in the Underlying Litigation is a blatant attempt to extort its Insureds into settlement of Hartford's claims in the coverage action. This is evidenced by the fact that Hartford has been litigating the coverage action, including taking affirmative positions regarding coverage in judicial documents, for nearly one year before making its Motion based on its alleged inability to litigate its case. Thus, it is clear that Hartford's Motion is in immediate response to the Insureds' letter advising Hartford why each of its causes of action is deficient and must be dismissed. In an apparent last-ditch effort to salvage its claim, Hartford has breached several duties owed to its Insureds, namely Hartford's duty of good faith and fair dealing and fiduciary duty.

As discussed below, Hartford's Motion seeking to unseal the docket in the Underlying Litigation entirely disregards its Insureds' interests – interests that Hartford has been aware of since the inception of this claim through settlement and interests that Hartford agreed it shared with its Insureds – for its own financial benefit. In other words, Hartford's sole purpose for bringing its Motion is to extort its Insureds in the coverage action, with full knowledge that a material term of the underlying settlement was the docket remaining under seal, full knowledge that unsealing of the docket may unravel the underlying settlement, full knowledge of the lengths the Insureds went to maintain the docket under seal, and full knowledge of the significant financial harm unsealing of the docket will cause the Insureds.

James P. Ruggeri
June 11, 2026
Page 2

Indeed, Hartford took full advantage of the sealed docket when it suited its own interests. That is, Hartford demanded that the Insureds seek a demand and settle the Underlying Litigation before any potential unsealing of the docket or forfeit ongoing defense coverage – thereby depriving the Insureds from the benefit of fully defending themselves in the Underlying Litigation. With its Motion, however, Hartford has exposed what its plan was all along. Hartford forced settlement during the narrow window before a potential unsealing for the sole purpose of limiting its own exposure and ending its defense obligations. One year later, Hartford is seeking to unseal the docket, knowing of the ramifications to its Insureds, so it can seek to recoup the entirety of the defense and indemnity payments made. These steps, part of Hartford's scheme, reveal that its only concern has been protecting its own interests and it is only loyal to itself.

The timing of Hartford's Motion further elucidates its intentions. Hartford originally brought the coverage action against its Insureds in California. However, when that plan failed, and the action was transferred to the Southern District of New York, Hartford had to face the reality that its claims against its Insureds were meritless. Though Hartford amended its complaint, the Insureds served Hartford with a pre-motion to dismiss letter outlining the factual and legal bases that each cause of action in the amended complaint would be dismissed under New York or Florida law. The next day, Hartford filed its Motion. It is clear that Hartford, facing almost certain dismissal of its amended complaint, reacted negatively, choosing to abandon its duties to its Insureds and deploy the last tool in its arsenal to extort its Insureds into settlement before its claim would likely be limited or dismissed.

More troubling is that the Motion intentionally omits that the relief Hartford seeks in the coverage action is based primarily on its position that it never had a duty to defend either Insured – *a question of law determined based solely on the underlying complaint and the policies*. Hartford already has copies of both. As such, there is no viable basis for Hartford's Motion to seal the entire docket where the majority of it is not relevant to its claims. Additionally, Hartford intentionally omits that it has a significant amount of sealed documents – every document Hartford has requested – because they were provided to Hartford throughout the course of the Underlying Litigation by the Insureds and/or their counsel. These documents, though provided subject to a Confidentiality Agreement preventing their disclosure, do not limit Hartford's ability to prosecute the coverage action. Any additional documents Hartford needs to prosecute its case can be sought during discovery in the Underlying Litigation. These facts, which Hartford's Motion fails to provide the Court with, reveal the pretext of Hartford's Motion.

In short, by filing the Motion, Hartford has revealed its self-interest and disloyalty to its Insureds. While Hartford has already breached these duties and caused harm to its Insureds, continued breach will expose Hartford further to significant ongoing damages flowing from its breaches, including compensatory, consequential, and punitive damages.

**Please confirm no later than June 18, 2026 at 5:00 p.m. ET that Hartford will withdraw its Motion, immediately cease and desist any further actions attempting to unseal the docket in the Underlying Litigation, and will not engage in any such conduct in the future.**

Cohen Ziffer Frenchman & McKenna LLP

James P. Ruggeri
June 11, 2026
Page 3

### I.      Hartford Owes the Insureds a Duty of Good Faith and Fair Dealing, and a Fiduciary Duty

Every insurance contract contains an "implied covenant of good faith and fair dealing" prohibiting an insurer from "conduct constitut[ing] a 'gross disregard' of the insured's interests – that is, [conduct evidencing] a deliberate or reckless failure to place on equal footing the interests of [the] insured with [the] insurer's own interests." *Brown v. Erie Ins. Co.*, 207 A.D.3d 1144, 1145 (4th Dep't 2022) (citing *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 194 (2008) and *Pavia v. State Farm Auto. Ins. Co.*, 82 N.Y.2d 445, 453 (1993), *rearg denied* 83 N.Y.2d 779 (1994)); *see also Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla. 1980) ("the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured").

Likewise, as Hartford is aware, [i]t is well-established that, as between an insured and its assured, a fiduciary relationship does exist, requiring utmost good faith by the carrier in its dealings with its insured." *Rabouin v. Metropolitan Life Ins. Co.*, 182 Misc.2d 632, 634-35 (N.Y. Supr., New York Cnty. Nov. 9, 1999) (citing *Hartford Acc. and Indem. Co. v. Michigan Mut. Ins. Co.*, 93 A.D.2d 337, 340-41 (1st Dep't 1983), *aff'd* 61 N.Y.2d 569); *Doe v. Allstate Ins. Co.*, 653 So.2d 371, 373-74 (Fla. 1995) (in defending its insured, an insurer's "obligation amounts to a fiduciary duty requiring the exercise of good faith") (citation omitted); *see also Liberty Mut. Fire. Ins. Co. v. Kaufman*, 885 So.2d 905, 909 (Fla. Dist. App. Ct. 2004) ("a fiduciary relationship existed between the [insurer and insured] whereby [they] shared common interests during the underlying proceedings"). Specifically, "[i]n defending a claim, an insurer is obligated to act with undivided loyalty; it may not place its own interests above those of its assured." *Rabouin*, 182 Misc.2d at 341.

Therefore, under New York or Florida law, Hartford owes its Insureds a duty of good faith and fair dealing, and a fiduciary duty, because it sold several insurance policies to Bursor & Fisher, under which Mr. Bursor is also an Insured, and it agreed to, and did, participate in the defense of the Underlying Litigation.

### II.     Hartford Breached its Duty of Good Faith and Fair Dealing, and its Fiduciary Duty

Hartford's attempt to unseal the docket in the Underlying Litigation constitutes a gross disregard of the Insureds' interests, a deliberate failure to place the Insureds' interests "on equal footing with" Hartford's own interests, and, to the extent it ever existed, a relinquishment of undivided loyalty to its Insureds. From the inception of the claim, when Hartford agreed to participate in the defense, the Insureds made their interests known to Hartford: Vigorously defend against the false accusations and prevent disclosure of those false accusations because of the potential harm their publicizing would cause the Insureds, even if their defense was ultimately

James P. Ruggeri
June 11, 2026
Page 4

successful.  On April 1, 2024, the Insureds sent a draft confidentiality agreement to Hartford[1]. Hartford agreed to enter into a confidentiality agreement on May 8, 2024 (the "Confidentiality Agreement"), after which, and subject to, the Insureds provided Hartford with the underlying complaint, which was, and remains, under seal.  One of the stated purposes for entering into the Confidentiality Agreement was because "Bursor & Fisher and Hartford have a common interest in defending the Lawsuit and a mutual concern in keeping private any Confidential Information exchanged pursuant to this Agreement away from certain third parties[.]"

Hartford was likewise aware of the extreme lengths the Insureds went to maintain the docket under seal, including the various briefs filed in support of sealing the complaint, appeal of the Magistrate Judge's decision to the District Judge, and continued requests by letter motion to each relevant filing throughout the litigation.

In fact, Hartford was so aware of the Insureds' primary interest in maintaining the docket under seal, to prevent harm and limit their and Hartford's liability, that, on May 23, 2025, Hartford specifically demanded that the Insureds settle while their appeal on the motion to seal was pending and before it could be potentially denied, unsealing the entire docket.  On June 9, 2025, Hartford requested a status of the settlement discussions based on its understanding that "the date to submit the joint letter indicated any docket entries that should remain sealed" was pushed back "presumably…to allow more time for settlement discussions."  Hartford understood the unsealing of the docket would prevent settlement and force the Insureds to defend themselves fully.

Ultimately, the Insureds were able to settle the Underlying Litigation before their appeal was decided.  Hartford was kept abreast of settlement discussions in real-time by the Insureds' defense counsel, who advised Hartford on multiple occasions that maintaining the docket under seal was a material term of the settlement, including for the underlying plaintiff, and that any unsealing would unravel the settlement.  In fact, Hartford was informed of the procedural steps the parties would take to ensure the docket would remain under seal in perpetuity without regard for any prior orders otherwise. Hartford never objected to such term or the taking of such intentional steps to maintain the docket under seal.  On the contrary, Hartford consented to the settlement and paid the settlement amounts in full.

Based on Hartford's express knowledge of the Insureds' paramount interest in maintaining the docket under seal, from the claim's inception through ratification of the settlement where maintaining the docket under seal was a material term, the Motion is particularly egregious. Hartford's Motion completely disregards the Insureds' interest.  Not only does it directly conflict with the Insureds' interest to maintain the docket under seal, but it also jeopardizes the entire settlement potentially requiring the Insureds to restart litigation that has been settled for almost a full year.  There can be no doubt that such intentional, self-interested conduct, unequivocally placing Hartford's own financial interest above the interests of its Insured, and to do so based on the false premise that Hartford does not have access to documents to litigate its coverage action, breaches Hartford's duty of good faith and fair dealing, and its fiduciary duty.

---

[1] Information publicly available on the docket in the Underlying Litigation further reveals that, even before the complaint was filed, as early as January 18, 2024, Defendants sought to seal certain filings on the docket. (ECF No. 8).

James P. Ruggeri
June 11, 2026
Page 5

### III.    Hartford is in Breach of the Confidentiality Agreement

Beyond a flagrant repudiation of Hartford's common interest with its Insureds to prevent disclosure of Confidential Information from third parties, Hartford's Motion breaches several other provisions, two of which are addressed below, in the Confidentiality Agreement[2].  These breaches serve not only as evidence that by filing the Motion Hartford breached its duty of good faith and fair dealing, and fiduciary duty, but also as an independent basis for Hartford's liability for compensatory, consequential, and punitive damages.

Hartford is in breach of the Confidentiality Agreement in which Hartford agrees "take all necessary affirmative steps to resist disclosure and maintain the confidentiality and privileged nature of Confidential Information[,]" which Confidential Information is specifically defined to include "documents filed 'under seal' in the [Underlying Litigation.]"  The Motion does the exact opposite as it constitutes an affirmative step to *enable* disclosure, rather than resist it – and not just for Hartford's own use, but to make the docket public.

Even if the docket *should* be unsealed, as the Motion argues, Hartford is required to, with respect to Bursor & Fisher's "ability to seek a protective order or other relief limiting such disclosure" to "cooperate in such efforts by Bursor & Fisher and [] not oppose Bursor & Fisher's taking any lawful steps to resist, narrow or eliminate the need for the disclosure."  As such, Hartford is obligated to withdraw the Motion and, to the extent required, support any attempt to prevent and/or limit any unsealing of the docket.

The Motion goes directly against the spirit of the Confidentiality Agreement and attempts by Hartford to evade its obligations thereunder based on "technicalities" or other "loopholes" will only work to magnify Hartford's disregard of the Insureds' interests and undivided loyalty to its own financial interests.

### CONCLUSION

For the reasons stated herein, Hartford is (1) in breach of its duty of good faith and fair dealing for placing its interests above the known interests of its Insureds; (2) in breach of its fiduciary duty for abandoning its loyalty to its Insureds and placing its interests above its Insureds'; and (3) in breach of the Confidentiality Agreement for failing to maintain the confidentiality of Confidential Information, expressly seeking unsealing of the docket in the Underlying Litigation, and, among other things, failing to cooperate with its Insureds to maintain the confidentiality of Confidential Information, including documents filed under seal in the Underlying Action.

**Please confirm no later than June 18, 2026 at 5:00 p.m. ET that Hartford will withdraw its Request in the Underlying Litigation and immediately cease and desist any further actions attempting to unseal or reveal information shared confidentially to Hartford by its Insureds.**

---

[2] The Confidentiality Agreement "shall continue to be binding after the conclusion of the [Underlying Lawsuit]."

James P. Ruggeri
June 11, 2026
Page 6

       In the meantime, the Insureds reserve all rights, contractual and extracontractual, in the Policies, at law, and in equity.

             Sincerely,

             Kenneth H. Frenchman

cc:     Scott Bursor (Bursor & Fisher, PA)