**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANGELICA PARKER,

                      Plaintiff,

    - against -

SCOTT BURSOR and
BURSOR & FISHER, P.A.,

                Defendants.

Civil Action No.: 1:24-cv-0245 (JGLC) (RFT)

## JOINT MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE AND TO COMPLETE ADMINISTRATIVE UNSEALING

**FBT GIBBONS LLP**
Christine A. Amalfe
Mark S. Sidoti
Daniel S. Weinberger
One Pennsylvania Plaza, 45th Fl, Suite 4515
New York, New York 10119
Tel: (212) 613-2000
Fax: (212) 290-2018
camalfe@fbtgibbons.com
msidoti@fbtgibbons.com
dweinberger@fbtgibbons.com

*Attorneys for Defendants*
*Scott Bursor and Bursor & Fisher, P.A.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..............................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

LEGAL ARGUMENT ...................................................................................................... 6

    I.     HARTFORD'S LETTER MOTION TO INTERVENE IS UNTIMELY .............. 6

    II.    HARTFORD SHOULD BE ESTOPPED FROM SEEKING TO UNSEAL THE CASE FILE ........................................................................................ 11

    III.   THE PRIVACY INTERESTS OF THE PARTIES OUTWEIGH ANY PUBLIC RIGHT OF ACCESS ...................................................................... 13

    IV.   THE PUBLIC AVAILABILITY OF ONE DOCUMENT DOES NOT JUSTIFY UNSEALING OF THE ENTIRE DOCKET ....................................... 17

    V.    PLAINTIFF IS NOT JUDICIALLY ESTOPPED FROM OPPOSING UNSEALING............................................................................................... 19

    VI.   DEFENDANTS HAVE NOT MISREPRESENTED THE COVERAGE ACTION AND HARTFORD'S CLAIMS PROVIDE NO BASIS FOR UNSEALING THE DOCKET IN THIS ACTION ........................................... 21

    VII.  THE CONTENT OF THE COUNTERCLAIMS WILL BE EXPOSED BY THE DOCKET BEING UNSEALED ................................................................ 22

CONCLUSION............................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
748 F.3d 110 (2d Cir. 2014)...............................................................................................20

*Alvarez v. Experian Info. Sols., Inc.*,
758 F. Supp. 3d 60 (E.D.N.Y. 2024) ...................................................................................8

*Application of Akron Beacon Journal*,
94 CIV. 1402 (CSH), 1995 WL 234710 (S.D.N.Y. Apr. 20, 1995) .......................................10

*Banerjee v. Sadis & Goldberg, LLP*,
715 Fed. App'x 99 (2d Cir. 2018) .......................................................................................19

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019)...................................................................................................9

*City of New York v. Zurich-American Insurance Group*,
27 A.D.3d 609 (App. Div., 2d Dept. 2006) ...................................................................11, 12

*Clark v. AII Acquisition, LLC*,
886 F.3d 261 (2d Cir. 2018)...............................................................................................20

*Dorsett v. Cnty. of Nassau*,
289 F.R.D. 54 (E.D.N.Y. 2012)............................................................................................6

*In re Adelphia Recovery Trust*,
634 F.3d 678 (2d Cir. 2011)...............................................................................................19

*In re Cmty. Bank of N. Virginia Mortgage Lending Practices Litig.*,
03CV0425, 2021 WL 1143611 (W.D. Pa. Mar. 25, 2021)..........................................9, 16, 17

*In re G.S. Distribution, Inc.*,
331 B.R. 552 (Bankr. S.D.N.Y. 2005)..................................................................................20

*Gov't of U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.*,
22-cv-10904 (JSR), 2024 WL 3227095 (S.D.N.Y. June 28, 2024).......................................15

*Kamdem-Ouaffo v. Pepsico, Inc.*,
314 F.R.D. 130 (S.D.N.Y. 2016) .......................................................................................6, 7

*LaRouche v. Fed. Bureau of Investigation*,
677 F.2d 256 (2d Cir. 1982)................................................................................................8

*Leahey v. SP Ctr., LLC*,
579 B.R. 13 (S.D.N.Y. 2017)...............................................................................................20

ii

*Mazzola v. CNA Ins. Co.*,
  548 N.Y.S.2d 610 (Civ. Ct. 1989) ...................................................................................11

*Murray v. Bd. of Educ. of City of New York,*
  248 B.R. 484 (S.D.N.Y. 2000)........................................................................................20

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)........................................................................................................20

*Penn-Star Ins. Co. v. McElhatton*,
  818 Fed. Appx 67 (2d Cir. 2020).......................................................................................7

*Pike Co., Inc. v. Universal Concrete Prod., Inc.*,
  284 F. Supp. 3d 376 (W.D.N.Y. 2018) ..............................................................................8

*S.E.C. v. TheStreet.Com*,
  273 F.3d 222 (2d Cir. 2001)............................................................................................14

*TGP Commc'ns, LLC v. Doe*,
  22-1836, 2023 WL 4230020 (2d Cir. June 28, 2023)...................................................6, 7

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995)............................................................................................14

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994).............................................................................................6, 7

*United States v. Yonkers Bd. of Educ.*,
  801 F.2d 593 (2d Cir. 1986).............................................................................................8

*Utica Mut. Ins. Co. v. INA Reinsurance Co.*,
  No. 612CV194DNHTWD, 2012 WL 13028279 (N.D.N.Y. June 12, 2012)...............14, 16

**Rules**

Fed. R. Civ. P. 12(f)(2) .........................................................................................................23

Fed. R. Civ. P. 24..................................................................................................................6

Fed. R. Civ. P. 24(b)(3)..........................................................................................................9

Defendants Scott Bursor and Bursor & Fisher, P.A. ("Bursor & Fisher" and, together with Scott Bursor, "Defendants" or "Bursor"), by their counsel, joined by Plaintiff Angelica Parker ("Plaintiff"), and Counterclaim Defendants Peter Plaut ("Plaut"), Ivan Wilzig ("Wilzig") and Robert Hantman ("Hantman"),[1] submit this joint memorandum of law in opposition to Sentinel Insurance Company, Ltd.'s ("Hartford") Motion to Intervene and to Complete Administrative Unsealing ("Motion") of the court filings in this action ("Action" or "Underlying Action").

## PRELIMINARY STATEMENT

Hartford's instant Motion to intervene and unseal the docket in this Action fails both procedurally and on equitable and substantive grounds. Procedurally, Hartford's motion to intervene should be denied as untimely. Hartford had actual notice of its interest in the sealed filings in the Underlying Action for years as Defendants' insurer. Its decision to seek to intervene at this stage – a year after this Action was settled and closed – is entirely without justification, and intervening to seek to unseal at this time would cause substantial prejudice to Plaintiff, Defendants, and the Counterclaim Defendants, as well as to multiple non-parties. At the same time, Hartford will suffer no prejudice at all from denial of its untimely Motion since it already possesses a significant number of sealed documents in the Underlying Action and could obtain any others it needs without unsealing. Even if Hartford's Motion were not untimely – which it is – principles of equity and justice require that the Underlying Action's docket remain sealed. Specifically, Hartford should be estopped from seeking to intervene and unseal the Underlying Action's filings because it was thoroughly involved in the Underlying Action's settlement negotiations, it

---

[1] There are various statements in this Memorandum of Law concerning interactions and communications to which Plaintiff, Mr. Wilzig, Mr. Plaut and Mr. Hantman were not a party. Each of them, however, joins in opposing the unsealing request for the reasons described herein and in their respective declarations and other submissions in opposition to Hartford's letter motion to intervene and unseal, *see* ECF Nos. 452, 452-1, 454, 455, 456-11, 456-12, except that they do not purport to have personal knowledge about interactions and communications to which they were not a party nor do they purport to have cite-checked the authority relied upon by Defendants herein.

1

pressured Defendants to settle, it knew that keeping the record sealed was a key factor in Defendants' willingness to settle and that maintaining the sealing upon dismissal was a material term of the settlement agreement between Defendants and Plaintiff (the "Settlement Agreement"), as well as the settlement agreements between Defendants and Counterclaim Defendants. Knowing all of this, Hartford never objected to maintaining the record under seal and consented to Defendants' entry into the Settlement Agreement. Under these circumstances, Hartford cannot now seek to unseal the very Court filings whose continued sealing upon dismissal of the Action was a principal term upon which the Settlement Agreement was based.

Finally, as this Court is well aware, the court filings in the Underlying Action contain highly sensitive information that is deeply personal and sexually explicit in nature. As such, the privacy interests of the parties, as well as the many non-parties who are specifically referenced in the sealed court filings, are particularly weighty in this case. Hartford is not a member of the press seeking access to shine light on matters of public concern. Rather, it is an insurance company seeking access to sealed filings to use as leverage in a lawsuit against its insured in a private coverage dispute. The private interests of the parties and affected non-parties outweigh the limited public interest in this matter and the tactical interests of Hartford.

For these reasons and those set forth more fully below, the Court should deny Hartford's motion in its entirety.

## **BACKGROUND**

Plaintiff initially filed the Underlying Action in the Supreme Court of the State of New York in November 2023. (ECF No. 1-1.) Defendants removed the Action to this Court on January 11, 2024. (ECF No. 1.) Promptly after the Underlying Action commenced, Defendants notified their insurer, Hartford, of the Underlying Action and sought coverage under Bursor & Fisher's

insurance policies.  (ECF No. 456-2 at ¶ 3.)  Hartford agreed to participate in Bursor & Fisher's defense, but did so subject to a reservation of rights. (*See id.* ¶¶ 4-5.)

Given its stake in the matter, Hartford required to be, and was, kept fully abreast by Defendants' counsel of all material developments in the Underlying Action, and entered into a confidentiality agreement with Defendants that enabled it to discuss the Underlying Action with Defendants and their counsel, and to receive and review sealed court filings (the "Confidentiality Agreement").  (*See id.* ¶¶ 7-17; ECF No. 456-1 at ¶¶ 2-5.)  Hartford knew that most of the docket was filed under seal and, throughout the course of the Action, Defendants' counsel provided Hartford a large number of the filings on the docket.  (*See* ECF No. 456-1 at ¶¶ 4-5; ECF No. 456-2 at ¶ 37.)  Moreover, Hartford was fully aware throughout the Action of the critical importance of sealing to Defendants, and that Defendants would have little desire to settle if the case became unsealed.  (*See* ECF No. 456-1 at ¶ 6.)

In early 2025, Hartford took steps to end the lawsuit.  Recognizing the importance of maintaining sealing to the resolution of the case, and seeking to cut off its defense obligations to Bursor & Fisher and other potential risk from the litigation, Hartford repeatedly pressured Defendants—threatening to withdraw even qualified coverage and its agreement to pay the settlement amounts—to settle the Action before the court filings might become unsealed.  (*See* ECF No. 456-2 at ¶¶ 18-22.)  Heeding Hartford's demands, Defendants negotiated a settlement with Plaintiff and with most of the Counterclaim Defendants.  (*See id.* ¶ 23-26; ECF No. 456-1 at ¶ 7.)

Defendants' counsel provided regular updates to Hartford on the settlement negotiations, repeatedly advising Hartford that maintaining the docket under seal upon dismissal was a critical term of the settlement agreement and that any unsealing could unravel the settlement.  (ECF No.

3

456-2 at ¶ 23.)  In fact, in the weeks preceding consummation of the settlement, Defendants'

counsel provided drafts of the settlement agreement with Plaintiff ("Settlement Agreement") to

Hartford, which clearly referenced the docket remaining sealed upon dismissal as a material term

of the settlement.  (*Id.*; ECF No. 456-1 at ¶ 7.)  Hartford expressly or tacitly approved these drafts,

and never objected to the maintenance of the docket under seal upon dismissal. (ECF No. 456-2 at

¶¶ 23-24; ECF No. 456-1 at ¶ 7.)  Hartford consented to the final Settlement Agreement, all of the

settlement terms and paid the settlement amounts in full.  (ECF No. 456-2 at ¶ 25.)

The Underlying Action was settled on July 15, 2025, with the execution of negotiated

settlement agreements between the various parties.  (ECF No. 456-2 at ¶ 26; ECF No. 456-1 at ¶

8.)  On June 16, 2025, the Underlying Action was ordered closed with all pending motions

rendered moot (ECF No. 439), and on July 24, 2025, an Order of Dismissal was entered by Judge

Clarke (ECF No. 447).  (ECF No. 456-2 at ¶ 26; ECF No. 456-1 at ¶¶ 9-10.)  On July 28, 2025,

Plaintiff and Defendants filed a stipulation of withdrawal of Defendants' pending appeal with the

United States Court of Appeals for the Second Circuit.  (ECF No. 456-2 at ¶ 27; ECF No. 456-1

at ¶ 11.)

Despite its approval of and active participation in the settlement, and notice of the various

court filings, Hartford's post-settlement conduct reveals that it secretly knew all along that going

along with Defendants' efforts to seal the docket in this Action would allow it to later use the threat

of unsealing as a leverage tool in its suit against Defendants. In fact, on July 29, 2025, *only one

day after* the parties in the Underlying Action had stipulated to the withdrawal of Defendants'

pending appeal in the Second Circuit (and only five days after the Underlying Action itself was

dismissed), Hartford filed suit against Defendants in the Northern District of California (the

4

"Coverage Action").  (*See* ECF No. 456-2 at ¶ 28; ECF Nos. 447 & 448; *see also* Second Circuit Case No. 25-771, DktEntry 58.1 & 59.1.)

On October 30, 2025, in connection with exhibits filed in support of Defendants' motion to dismiss, Hartford and Defendants filed a *joint* sealing stipulation in the Coverage Action (Coverage Action, ECF No. 34), wherein they agreed that certain documents containing confidential information "may continue to be sealed." (*Id.* ¶ 29.)  While Hartford sought to reserve its right to "later challenge the designations or the documents becoming public," Defendants refused to include this language because it was inconsistent with the Confidentiality Agreement between them.  (*Id.*)  In its accompanying sealing motion (Coverage Action ECF No. 35-1), Hartford itself requested that "the materials Defendants have requested be sealed or redacted . . . shall remain redacted and/or under seal." (*Id.* ¶ 30.)

Despite this agreement, on November 4, 2025, Hartford reversed course, with a newfound position, and filed an opposition to the Defendants' sealing requests in the Coverage Action (Coverage Action ECF No. 40), arguing that the underlying docket had been "ordered unsealed" and the Confidentiality Agreement did not preclude Hartford from challenging designations.  (*Id.* ¶ 31.)

On November 24, 2025, the Northern District of California court transferred the Coverage Action to the Southern District of New York (Coverage Action ECF No. 46).  (*Id.* ¶ 32.)  With respect to the Defendants' sealing requests, the court "defer[red] to the Southern District of New York to make the final determination." (*Id.*) On May 20, 2026, Hartford filed an Amended Complaint in the Coverage Action (Coverage Action ECF No. 55). (*Id.* ¶ 33.)  On June 4, 2026, the Defendants in the Coverage Action served Hartford with a pre-motion to dismiss letter outlining the factual and legal deficiencies in Hartford's Amended Complaint.  (*Id.* ¶ 34.)  The

5

very next day, on June 5, 2026, Hartford filed a Letter Motion to Intervene and Unseal the docket in the Underlying Action (ECF No. 449).  (*Id.* ¶ 35.)

On June 24, 2026, Defendants, joined by Plaintiff and several Counterclaim Defendants, filed a letter opposition to Harford's Letter Motion to Intervene and Unseal the docket in the Underlying Action requesting that Hartford file a formal motion and that all affected parties be able to fully brief the issues (ECF No. 456). On June 25, 2026, the Court ordered that Hartford file its motion to intervene by formal motion (ECF No. 457), which Hartford filed on July 1, 2026 (ECF No. 458).

## **LEGAL ARGUMENT**

### I.    **HARTFORD'S LETTER MOTION TO INTERVENE IS UNTIMELY**

Hartford's motion should be denied at the outset as untimely. Under F.R.C.P. 24, timeliness is a "threshold inquiry" for both intervention as of right and permissive intervention.  *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016); *see TGP Commc'ns, LLC v. Doe*, 22-1836, 2023 WL 4230020, at *1 (2d Cir. June 28, 2023) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 74 (2d Cir. 1994)).

Timeliness is determined on a case-by-case basis and courts apply several factors to the facts of each case to assess whether a motion is timely or not.  *See Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 72 (E.D.N.Y. 2012) (citing *Pitney Bowes*, 25 F.3d at 70) ("A district court has discretion to evaluate the timeliness of a motion to intervene in light of 'all the circumstances,'. . ."). Specifically, in determining whether an intervention motion is timely, courts consider: (1) how long the applicant had notice of the interest before making the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.  *See TGP*

*Commc'ns*, 2023 WL 4230020, at \*1 (2d Cir. June 28, 2023) (citing *Pitney Bowes*, 25 F.3d at 70) (footnote omitted).  Each of these factors weighs against Hartford.

*First*, Hartford, as insurer for Bursor & Fisher, has had actual notice of its interest in the sealed filings in this Action since the commencement of the Action.  Hartford participated in the defense of Bursor & Fisher and in fact received copies of a large number of the filings in this Action during its pendency under the terms of its Confidentiality Agreement with Defendants.  Moreover, Hartford's reservation of rights at the outset of the Action, together with its filing of the Coverage Action immediately after this Action was settled and dismissed, demonstrates that it had decided, before the Action was settled, that it intended to file suit against Defendants to seek recoupment of the defense and indemnity payments it made, and would want to use certain filings from this Action to help prosecute its claims.  Yet Hartford waited *over two-and-a-half years* after it had full notice of its interest in unsealing, and *nearly a year* after filing its Coverage Action against Defendants, to move to intervene in the Action for purposes of unsealing the filings on the docket.  Such inexcusable delay warrants summary denial of Hartford's request to intervene to seek unsealing.  *See*, *e.g.*, *Kamdem-Ouaffo*, 314 F.R.D. at 134-36 (holding that motion to intervene made 16 months after actual notice of interest and 19 months after constructive notice was untimely, while recognizing that "[e]ven delays of less than one year can render such motions untimely") (citations omitted); *TGP Commc'ns*, 2023 WL 4230020, at \*1-2 (denying motion to intervene and unseal where applicant had been aware of sealed documents for years before moving to intervene and unseal); *see also Penn-Star Ins. Co. v. McElhatton*, 818 Fed. Appx 67, 70-71 (2d Cir. 2020) (holding that insurance company's motion to intervene in coverage action was untimely when it knew or should have known about the litigation at least seven months before it sought intervention and it moved to intervene on the eve of settlement).

*Second*, intervention at this late stage would cause grave prejudice to the parties. *See Alvarez v. Experian Info. Sols., Inc.*, 758 F. Supp. 3d 60, 88 (E.D.N.Y. 2024) (citing *Pike Co., Inc. v. Universal Concrete Prod., Inc.*, 284 F. Supp. 3d 376, 395 (W.D.N.Y. 2018)) (noting that prejudice to the existing parties is the most important factor for determining timeliness of a motion to intervene). The parties to this Action — Plaintiff, Defendants, and most of the Counterclaim Defendants — worked diligently to settle this matter with the understanding that the docket at the time of the negotiations was sealed, and the expectation that it would remain permanently so after the matter was settled and dismissed. (*See*, *e.g.*, Decl. of Angelica Parker ("Parker Decl.") (ECF No. 456-11); Decl. of Ivan Wilzig ("Wilzig Decl.") (ECF No. 456-12); Decl. of Peter Plaut ("Plaut Decl.") (ECF No. 454)). Indeed, the docket remaining sealed upon dismissal of the Action was a paramount term of the parties' settlement agreements because the court filings in the Action contain deeply personal and sensitive allegations and information that all parties desire to remain sealed. (*See generally id.*)

Allowing intervention and unsealing now would undermine the painstaking work by the parties and the Court to settle this matter and essentially nullify a key purpose of the settlement agreements, to the parties' great detriment. *See United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986) (citing *LaRouche v. Fed. Bureau of Investigation*, 677 F.2d 256, 257 (2d Cir. 1982)) ("in making the choice between the possibility of harm to the late-arriving prospective intervenors as against the possible harm to parties who have participated diligently during the pertinent portions of this litigation, it does not strike us as unjust that intervention on the part of the late-arrivers must yield"). Indeed, because the Action is now settled, unsealing of the docket will cause even greater harm to the parties, as no party will have an opportunity to fully respond to the allegations against him or her in open court. Thus, all allegations and information in the

8

filings on the court docket will go unanswered, and unsealing will do nothing more than "'promote public scandal' or 'serve as reservoirs of libelous statements for press consumption.'" *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019) (citation and internal quotation marks omitted).

In their Motion, Hartford seeks to sidestep the clear prejudice to the parties by arguing that Federal Rule of Civil Procedure 24(b)(3) focuses on whether intervention will unduly delay or prejudice the adjudication of the original parties' rights (*see* ECF No. 458 at 16) and that courts have recognized that the timeliness requirement may be relaxed in the context of motions to intervene to seek unsealing. (*See id.*) Even under a relaxed standard, though, Hartford's untimeliness is still inexcusable, particularly given its full knowledge of and acquiescence to the fact that the case file remaining sealed upon dismissal of the Action was a material term of the parties' settlements. *See infra* at Section II.

*Third*, Hartford will suffer no prejudice from denial of its untimely motion. Hartford already possesses a significant volume of the sealed documents in the Underlying Action, including the Complaint, because those documents were provided to it throughout the course of the Action in its capacity as insurer for Defendants. *See In re Cmty. Bank of N. Virginia Mortgage Lending Practices Litig.*, 03CV0425, 2021 WL 1143611, at *4-5 (W.D. Pa. Mar. 25, 2021) (denying insurer's motion to intervene to unseal where the insurer already possessed the documents it sought). Indeed, none of Hartford's requests for filings from the Action, during the course of its handling of the coverage claim and participation in the defense of the Underlying Action, were denied; each document was provided to it subject to the Confidentiality Agreement and Hartford never challenged the confidentiality of any of the documents or the fact that they would remain sealed on the docket. (Frenchman Decl. ¶ 37.) In fact, in addition to its duty to its insured, Hartford's possession of court filings in the Action explains why it funded, without

9

objection, the repeated and vigorous efforts of Defendants to keep the majority of documents on the docket sealed throughout the litigation, including when that issue was taken up on appeal. Moreover, to the extent that Hartford claims to need any additional documents to prosecute the Coverage Action—and it does not and will not unless and until it defeats Defendants' motion to dismiss—it may seek such documents during discovery in the Coverage Action. (*Id.* ¶¶ 36-38.) Importantly, however, even if Hartford were to somehow need the sealed documents at some point in the future, there is no legitimate reason that it would need sealed documents in the Underlying Action to be unsealed and available to the public. (*See id.* ¶ 39.) Hartford is also perfectly able to file any court submissions in the Underlying Action that may be relevant to the Coverage Action under seal in the Coverage Action.

*Fourth*, no unusual circumstances militate in favor of finding timeliness. Contrary to what Hartford would have this Court believe, this is *not* a dispute concerning the right of public access. This is a private insurance coverage dispute between an insured and its insurer. It is not a matter of public concern. *See Application of Akron Beacon Journal*, 94 CIV. 1402 (CSH), 1995 WL 234710, at *8 (S.D.N.Y. Apr. 20, 1995) (reasoning that the fourth factor militated against a finding of untimeliness because the sealed documents related to matters of public concern, as they related to alleged bribes paid to state officials). In this context, a number of factors militate against a finding of timeliness. Hartford actively participated in the defense of the Underlying Action from its outset, it entered into a Confidentiality Agreement with Defendants agreeing to not publicly disclose any filings in the case and to not affirmatively risk any such disclosure,[2] and it not only

---

[2] Hartford misstates the meaning of the disclosure provision in Paragraph 6 of the Confidentiality Agreement. Paragraph 6 allows Hartford to disclose information if *compelled* to do so by court order. It does not grant Hartford *carte blanche* to proactively seek the unsealing and public disclosure of confidential documents that are currently filed under seal. Hartford's efforts to seek unsealing is anathema to the plain meaning and intent of the parties' Confidentiality Agreement, and its attempt to interpret the provision in this way smacks of bad faith.

approved Defendants' Settlement Agreement with Plaintiff, but pressured Defendants to enter into it, knowing full well and accepting that a material term of the Settlement Agreement required that the court docket remain sealed upon dismissal of the Action and that all parties wanted, and would seek, to keep the docket sealed.  Having benefited from the settlement, with full knowledge of its terms and access to the filings on the Court docket, Hartford cannot now claim—2.5 years after the Action was commenced and a year after it was settled, dismissed and closed—that its motion to intervene in order to request unsealing is timely.

## II.    HARTFORD SHOULD BE ESTOPPED FROM SEEKING TO UNSEAL THE CASE FILE

Notwithstanding the untimeliness of its motion, Hartford must be equitably estopped from seeking to intervene and unseal the court filings in this Action.  The doctrine of equitable estoppel "rests upon the word or deed of one party which is rightfully relied upon by another who, as a result, changes his position to his injury, so that it would be inequitable to permit the first to enforce rights inconsistent therewith."  *Mazzola v. CNA Ins. Co.*, 548 N.Y.S.2d 610, 614 (Civ. Ct. 1989) (citations omitted) (applying equitable estoppel to prohibit insurance company from reneging on offer to pay plaintiff $15,000 to settle after plaintiff accepted the offer, where the insurance company sought to renege because it realized that the defendant's policy only had a $10,000 limit). Invocation of this doctrine is necessary and appropriate to prevent prejudice and injustice under the circumstances here.

In *City of New York v. Zurich-American Insurance Group*, 27 A.D.3d 609, 609-11 (App. Div., 2d Dept. 2006), a case where New York City brought a lawsuit for indemnification against an insurance company after the City settled an underlying suit that the insurance company participated in on behalf of the co-defendant, the court held that "[w]here an insurer is involved in the underlying proceeding yet fails to challenge the reasonableness of the settlement there, it may

11

not do so in a separate declaratory judgment action." *Id.* at 611 (citations omitted). The present situation mandates the same result.

Hartford claims that equitable estoppel cannot apply to it because it purportedly "objected to having any obligations foisted upon it" and "objected to being bound by the settlement" because it was not a named party to the settlement agreement between Defendants and Plaintiff. (ECF No. 458 at 11-12.) Hartford's argument misses the mark entirely, as it fails to grasp that equitable estoppel does not rest upon Hartford's being a party to the settlement agreements, but rather on its statements and actions throughout the case which induced Defendants to settle the Action. Hartford was intimately involved in the defense of the Underlying Action and entered into a Confidentiality Agreement with Defendants, expressly agreeing to "take all necessary affirmative steps to resist disclosure and maintain the confidentiality and privileged nature" of documents that were filed under seal in the Underlying Action. (ECF No. 456-5 at ¶ 7.) Hartford's letter motion and the instant motion do the exact *opposite* of what it agreed—explicitly seeking to cause public disclosure of sealed filings. Moreover, as of April 2025, as defense costs mounted, Hartford pushed Defendants to settle the case in order to cut off Hartford's defense obligations and its potential indemnification risks.[3] Throughout settlement negotiations, Hartford was kept fully

---

[3] Hartford cites a line from Judge Gonzalez Rogers' transfer decision that states that "documents submitted to the Court … show that *Bursor & Fisher* pushed to settle the case and requested more settlement authority than Hartford would authorize." (ECF No. 458 at 5 (quoting Coverage Action, ECF No. 46 at 5-6).) However, Judge Gonzalez Rogers' statement was incorrect, as it focused on Defendants' request for settlement authority several months earlier, in response to this Court's scheduling of a settlement conference, which request for appropriate authority Hartford denied. (Decl. of Christine Amalfe ("Amalfe Decl.") at ¶ 3, Ex. A (Coverage Action, ECF No. 18-17 (Ex. 9)).) In April 2025, *more than five months after* that request was denied, and with no pending request from Defendants for settlement authority, Hartford began its push to settle the case, in contrast to its position months earlier when it came to the settlement conference with little settlement authority. (Amalfe Decl. at ¶ 4, Ex. B (Email from Jessica Meek to Christine A. Amalfe, dated April 23, 2025 at 6:05pm).) This communication was not before Judge Gonzalez Rogers in connection with the motion to dismiss or motion to seal. Thus, Judge Gonzalez Rogers' statement was, respectfully, based on an incomplete timeline of events – an understanding, however, that this Court is more intimately familiar with. In any event, Judge Gonzalez Rogers' statement, in *dicta*, cannot change what actually happened. Defendants acknowledge that after Hartford began its push for settlement, Defendants sought greater settlement authority, but that was the result of understanding what it would take to reach a settlement—a settlement which Hartford repeatedly

12

apprised of discussions, it knew that the case file remaining sealed upon dismissal was a material term of the Settlement Agreement, and that keeping the file sealed permanently was a major motivating factor of the settlement.

With full knowledge of these facts, Hartford repeatedly pressured Defendants to accept the settlement, consented to the terms of the Settlement Agreement it had reviewed and approved, and paid the settlement amounts on behalf of Defendants. Defendants rightfully relied on Hartford's support for and consent to the settlement of the Action on the terms set forth in the Settlement Agreement, and on the basis of that reasonable reliance, they proceeded with the settlement with a full and reasonable expectation that its partner in reaching a settlement, Hartford, would not thereafter undermine a key premise on which the settlement was achieved. Yet that is exactly what Hartford seeks to do here.

In fact, given the context in which Hartford filed its letter motion (ECF No. 449)—having done so immediately after receiving Defendants' pre-motion letter to dismiss the Coverage Action and despite already having the filings from the Action it needs—it is clear that Hartford's letter motion and instant motion to unseal were motivated purely by a bad faith effort to pressure Defendants with the threat of unsealing to attempt to avoid having to meet Defendants' motion to dismiss on the merits. Such unbridled bad faith and unclean hands only adds to the equities favoring estoppel.

## III.  THE PRIVACY INTERESTS OF THE PARTIES OUTWEIGH ANY PUBLIC RIGHT OF ACCESS

Anticipating Defendants' next argument, Hartford claims essentially that the court filings in this Action must be unsealed because court filings are presumptively public. This, however,

---

pressured Defendants to reach, including for the explicit purpose of reaching settlement prior to potential unsealing of this case. (Amalfe Decl. at ¶ 5, Ex. C (Coverage Action, ECF No. 18-19 (Ex. 10)).)

completely distorts Defendants' argument.  Defendants do not claim that court filings are not presumptively public, but rather that there are circumstances when court documents should not be made public.  Those circumstances exist here because the privacy interests of the Plaintiff, Defendants, and Counterclaim Defendants that are implicated in the court filings in this Action far outweigh any purported public right of access asserted by Hartford.

In analyzing whether sealed documents on the court docket should be unsealed, courts must balance the presumption of public access against the privacy interests of parties involved.  *Utica Mut. Ins. Co. v. INA Reinsurance Co.,* No. 612CV194DNHTWD, 2012 WL 13028279, at *7 (N.D.N.Y. June 12, 2012).  In conducting this analysis, the court must first determine the weight to be given to the presumption of public access.  *Id.* at *4.  On the other side of the balancing test, the court must determine "the weight to be accorded an assertion of a right of privacy[.]"  *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995).

In assessing the right of privacy, "courts should first consider the degree to which the subject matter is traditionally considered private rather than public.  Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public."  *Id.*  The "privacy interests of innocent third-parties" also "'should weigh heavily in a court's balancing equation.'"  *Utica Mut. Ins. Co.*, 2012 WL 13028279, at *7 (quoting *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001)) (footnote omitted).  In addition, "[t]he nature and degree of injury must also be weighed.  This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information."  *Amodeo*, 71 F.3d at 1051.

14

Here, the privacy interests are especially weighty, as evidenced by the highly sensitive allegations as specifically pointed out by Hartford in its motion, and any countervailing public interests are insignificant in comparison. Public disclosure of such allegations and deeply personal information is likely to be profoundly damaging to each of the parties (including those who are not party to the Coverage Action), as well as to individuals who were never parties to the Underlying Action but who are referenced in various submissions and documents on the court docket. For these reasons, numerous parties to this Action—Plaintiff, Defendants, and three of the additional Counterclaim Defendants— vehemently oppose unsealing.

Hartford skips over these paramount privacy interests, claiming instead that Judge Clarke already decided this issue. But the grounds on which Judge Clarke's original unsealing order (ECF No. 345) were premised — namely that Plaintiff sought unsealing and only Defendants opposed it — have fundamentally changed. It is not solely Defendants who now seek to retain sealing, but rather, Plaintiff, Defendants and most of the Counterclaim Defendants now *all* request that the case file remain sealed. (*See* ECF Nos. 452, 452-1, 454, 455, 456-11, 456-12.) Thus, the privacy interests at stake here are far more weighty than in the typical case, and the personal and professional harm they would suffer from unsealing is significant. *See, e.g.*, *Gov't of U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.*, 22-cv-10904 (JSR), 2024 WL 3227095, at *3 (S.D.N.Y. June 28, 2024) (denying motion to intervene by individuals who were plaintiffs in a different action, who sought to obtain records that were subject to a protective order in the then-closed *Virgin Islands v. JPMorgan* action).[4]

_____

[4] Hartford seeks to distinguish *Government of U.S. Virgin Islands* on the grounds that Plaintiff in this case did not seek to maintain her anonymity, as the alleged victims did in that case. That is a distinction without a difference. The parties are not seeking to seal the name of the Plaintiff herself, but rather to maintain the sealing of court filings which contain significant amounts of highly sensitive, private and personal accusations and information. Plaintiff, Defendants, the Counterclaim Defendants and non-parties have a strong interest in keeping that information sealed.

Hartford's claim to a public right of access is weak when compared to these substantial privacy interests. Hartford is not a member of the press or the public seeking access to documents involving matters of public concern. Rather, Hartford is an insurance company that is now suing Defendants in a private contractual action over the scope of insurance coverage. Courts have drawn a clear distinction between these interests. *See In re Cmty. Bank of N. Virginia*, 2021 WL 1143611, at *3 (denying insurer's motion to intervene to unseal after distinguishing between motions to unseal by the press in order to obtain matters of public interest and a request by an insurance company to unseal filings in one action in order to use them in a separate insurance coverage litigation). There is limited, if any, public interest in the narrow subject matter of Hartford's private insurance coverage contract action against Defendants, and that limited interest does not outweigh the substantial privacy interests of all parties to this Action. *See Utica Mut. Ins. Co.*, 2012 WL 13028279, at *7 ("because public interest in the narrow subject matter of this [private insurance dispute] is likely to be relatively low, [the parties'] privacy interests outweigh the public right of access") (footnote omitted).

Seeking to sidestep the above cases that are directly on point, Hartford argues that it is the court filings in this Underlying Action, not the Coverage Action, that is of public concern and merits public disclosure. This argument, of course, completely ignores the court's decision in *In re Cmty. Bank of N. Virginia*, 2021 WL 1143611, at *3-4, which correctly found an insurance company's motion to unseal court filings for use in a separate insurance coverage action should be denied. But in addition, Hartford's argument also ignores the compelling private interests that weigh heavily in favor of maintaining the docket under seal.

At bottom, Hartford's public interest argument is a ploy to deflect from the fact that its unsealing crusade is nothing more than a sharp litigation tactic aimed at gaining leverage in its

16

private coverage litigation with Defendants.  Indeed, *Hartford already possesses many of the very documents it seeks to unseal*, having received them throughout the course of this Action in its capacity as Defendants' insurer.  This not only negates any prejudice to Hartford, but essentially renders their motion to intervene and unseal moot.  *See In re Cmty. Bank of N. Virginia*, 2021 WL 1143611, at *4.  Hartford's obvious motivation is not to obtain access to documents it already has, ostensibly to use in its Coverage Action, but to use the threat of unsealing as strategic leverage against Defendants in that matter.[5]

## IV. THE PUBLIC AVAILABILITY OF ONE DOCUMENT DOES NOT JUSTIFY UNSEALING OF THE ENTIRE DOCKET

Given the weakness of its arguments on the merits to unseal, Hartford argues that Judge Clarke's initial public filing of her decision on Defendants' motion to dismiss and seal the Complaint (ECF No. 345) (the "Decision"), which contained a mere three pages of factual background summarizing the Complaint's allegations, requires that the *entire docket* be unsealed—despite the fact that the Court sealed its Decision the very same day it filed it (*see* ECF No. 351).  Hartford seeks to bolster this argument by attaching links to public court docket-watching websites that managed to download and publish the Court's Decision before it was placed under seal.[6]  But as the Court is aware, the full docket in this case contains a tremendous amount of highly private, sensitive and deeply personal information and allegations concerning all of the parties to the Action, as well as many non-parties.  The incidental capture and publishing of the Court's Decision by a non-governmental, private website during the short time between filing

---

[5] In Hartford's reply to Robert Hantman's opposition letter (ECF No. 453 at 2), it essentially acknowledges that its letter motion was not motivated by a need for, or lack of ability to obtain access to, the sealed filings in this Action, but rather merely to make the filings public.

[6] It appears that the websites Hartford cites in its moving papers are docket-watching websites, which presumably were automatically alerted to the Court's Decision, and automatically downloaded it, immediately upon its initial public filing or in the few brief hours between the time of its initial public filing and its sealing by the Court that same day.

17

and sealing, is not a basis to unseal the highly detailed and disputed allegations of the Complaint or the hundreds of other highly private and sensitive documents filed on the Court docket in the Action. The inadvertent public release of one document (ECF No. 345) containing a very brief overview of the allegations underlying this Action does not require – or justify – unsealing the entire docket.

Hartford's tortured argument—that "[t]here is no reason for the continued sealing of the previously unsealed items on the Court's docket" simply because copies of Judge' Clarke's Decision were posted to a publicly available website—is an extraordinarily overbroad application of the "cat's out of the bag" principle they cite, and one that cannot be reconciled with the relevant circumstances here, where only a brief summary of the allegations in the Complaint slipped their way into a non-court administered website through no fault of the parties, whereas a tremendous amount of highly personal, private and sensitive information remains sealed. The docket contains *over 450* filings detailing highly sensitive and personal information about the nature of Plaintiff and Defendants' lives and the people closest to them. Making the entirety of this information open to the public is a drastic and unwarranted response to the inadvertent temporary public availability of a single opinion that contains only a minimal amount of information concerning the underlying allegations in the Action. Thus, while the Court may not be able to change the fact that it posted the Decision on the public docket for a few hours and then quickly sealed it, there is no reason to unseal the Decision now,[7] let alone the hundreds of other highly sensitive and personal documents filed under seal on the Court docket—especially from a party who already has the document and

---

[7] The "cat's out of the bag" argument typically arises when one party files a motion to seal a court filing after it has already been made public, not when, as is the case here, a non-party moves to *unseal* a court filing because the filing inadvertently slipped into the public sphere.

is seeking to publicize it for an illegitimate purpose (*see* Amalfe Decl. at ¶ 6, <u>Ex. D</u> (E-mail from Christine Amalfe to Jessica Meek, dated Apr. 1, 2025)).

## V.    PLAINTIFF IS NOT JUDICIALLY ESTOPPED FROM OPPOSING UNSEALING

Hartford separately argues that Plaintiff in the Action should be judicially estopped from opposing the unsealing of the case file because she previously "was the successful movant for unsealing[.]" ECF No. 458 at 15. Hartford claims that because Plaintiff previously argued in the Action for the docket's unsealing – a position the Court adopted in its Decision – Plaintiff cannot now oppose the position she previously succeeded on. *Id*. Hartford's argument misconstrues the doctrine of judicial estoppel, which simply is not applicable here.

First, the basic elements of judicial estoppel are not met here. The Second Circuit has held that "[j]udicial estoppel applies where '1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.'" *Banerjee v. Sadis & Goldberg, LLP*, 715 Fed. App'x 99, 100 (2d Cir. 2018) (quoting *In re Adelphia Recovery Trust*, 634 F.3d 678, 695-96 (2d Cir. 2011)). The purpose of judicial estoppel is "to avoid 'prejudice of the party who has acquiesced in the position formerly taken.'" *Id*. (quoting *In re Adelphia Recovery Trust*, 634 F.3d at 695). Hartford is not a party to this Action and it did not acquiesce in Plaintiff's prior unsealing position in the Action at any time. To the extent any party could be said to have acquiesced to Plaintiff's original position in favor of unsealing, it was Defendants, but Defendants vigorously opposed unsealing all along and would not now be prejudiced by Plaintiff's position in favor of keeping the docket sealed. To the contrary, Defendants would be prejudiced by unsealing.

But even if the basic elements of judicial estoppel could apply here, which they do not, courts still must exercise discretion in determining whether to apply judicial estoppel to a given

19

circumstance. *In re G.S. Distribution, Inc.*, 331 B.R. 552, 564 (Bankr. S.D.N.Y. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)) ("A court has discretion in determining whether a party should be judicially estopped from contradicting a prior position in a later litigation."). As part of their judicial estoppel analysis, courts may consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751 (citations omitted). Similarly, "[b]efore judicially estopping a litigant, a court must inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of doing so." *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266-67 (2d Cir. 2018) (citing *New Hampshire*, 532 U.S. at 751). "[T]he exact criteria for invoking judicial estoppel will vary based on specific factual contexts." *Id.* at 265 (quoting *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014)). Furthermore, a "judicial estoppel defense cannot succeed, absent a showing that plaintiff acted in bad faith or with intent to mislead the Court." *Leahey v. SP Ctr., LLC*, 579 B.R. 13, 18 (S.D.N.Y. 2017) (quoting *Murray v. Bd. of Educ. of City of New York,* 248 B.R. 484, 487 (S.D.N.Y. 2000)).

Here, the progression of the litigation of this matter culminating in a private settlement between Plaintiff and Defendants justifies Plaintiff's present position in opposing unsealing. The genuine nature of Plaintiff's change in position as to unsealing is clearly evidenced by Plaintiff's June 24, 2026 Declaration in which Plaintiff states that (1) the docket and underlying filings contain private and highly sensitive information, pictures, and videos of her that would cause her great harm if publicly released; (2) none of the highly sensitive information is of public concern due to the amicable resolution of this matter; (3) she has since moved on from this matter and it was her intention when the matter settled that the record in the case remain permanently sealed; (4) she took steps to keep this highly sensitive information confidential, including entering into

20

the Settlement Agreement wherein a material term was that the parties take steps to ensure the docket remain sealed and oppose any effort to unseal it; (5) it was her expectation that the docket would remain permanently sealed after the matter was dismissed; and (6) unsealing the docket would undermine her expectations in settling the matter. (ECF No. 456-11 at ¶¶ 3-6.) Plaintiff's opposition to Hartford's motion to unseal plainly is not made in bad faith or in an attempt to mislead the Court. On the other hand, Hartford's bad faith in seeking unsealing is transparent and should weigh heavily against any imposition of judicial estoppel against Plaintiff.

Given the equitable nature of the judicial estoppel doctrine coupled with the good faith of Plaintiff in now opposing unsealing, allowing her to move on from the Action, and the bad faith of Hartford in seeking to unseal, Plaintiff should not be judicially estopped from opposing the unsealing of the docket.

## VI.  DEFENDANTS HAVE NOT MISREPRESENTED THE COVERAGE ACTION AND HARTFORD'S CLAIMS PROVIDE NO BASIS FOR UNSEALING THE DOCKET IN THIS ACTION

Contrary to Hartford's claim, Defendants have not mischaracterized the proceedings in the Coverage Action and their claims have no bearing on the intervention and unsealing motion before this Court. Initially, it is for this Court – not any other – to decide whether *its docket in this Action* shall remain sealed. Arguments made by Hartford to disclose confidential information or seal documents in *another action* is not determinative of whether the docket in *this Action* should be unsealed.

Moreover, in the Coverage Action itself, Judge Gonzalez Rogers in the Northern District of California in fact did *not* decide even the issue of whether certain documents in *that action* should be sealed. Instead, Judge Gonzalez Rogers transferred the case to this District and deferred to the Southern District of New York Court "to make the final determination." (Coverage Action, ECF No. 46 at 5-7.) Judge Gonzalez Rogers' analysis of the parties' various arguments is mere

21

*dicta*, offered by a court that, through its own admission, was less well-placed to decide these issues than this Court, and in fact, as noted in footnote 3 above, Judge Gonzalez Rogers did not have all of the relevant documents and communications before her when she commented on the sealing issue in *dicta*. Thus, even in the Coverage Action, nothing has been fully or finally decided as to sealing in *that action*, let alone a final or binding determination as to whether the docket in *this Action* should be unsealed.

Ultimately, as explained further above, the continuing sealing of the docket in this Action will not prevent Hartford from litigating its claims. Hartford admittedly has access to the Complaint in this Action, which it can cite to in sealed or redacted papers in the Coverage Action in any opposition it chooses to file to Defendants' anticipated motion to dismiss in that action (*see* Coverage Action, ECF No. 63 at 3). Hartford also already has access to a great many of the other filings in this Action, as it received them from defense counsel pursuant to a Confidentiality Agreement throughout the course of this Underlying Action. And should the Coverage Action survive a motion to dismiss, Hartford is free to seek other filings in this Action through discovery in the Coverage Action.

In short, despite all of its grandstanding and false accusations, Hartford has no need for the case file in this Action to be unsealed. Rather, it is simply using the threat of unsealing in a bad faith ploy to attempt to pressure Defendants into capitulating.

## VII.    THE CONTENT OF THE COUNTERCLAIMS WILL BE EXPOSED BY THE DOCKET BEING UNSEALED

Finally, Hartford claims that any concerns raised by Counterclaim Defendants about Defendants' allegations post-dating Judge Clarke's unsealing orders are outside the scope of Hartford's present motion, which, according to Hartford, only seeks to unseal court filings that pre-date the Court's March 31, 2025 Decision on Defendants' motion to dismiss, strike and seal.

22

According to Hartford, since Defendants' Counterclaims post-date that Decision, they fall outside the scope of its motion, and since the Counterclaims remained unanswered, Hartford suggests that Defendants could simply strike the Counterclaims under F.R.C.P. 12(f)(2). (ECF No. 458 at 20-21.)

Putting aside the fact that attempting to strike a pleading after the case has already been dismissed and closed presents a procedural conundrum in its own right, Hartford's feigned protection of the Plaintiff and Counterclaim Defendants is meaningless. The allegations set forth in Defendants' Counterclaims are contained in, and based upon, a significant number of documents that were filed with the Court *before* it issued its March 31, 2025 Decision (ECF No. 345). For example, a Declaration of Scott Bursor filed on January 3, 2025 (ECF No. 240) sets out in immense detail, with documentary support, many of the facts that Defendants later allege in their Counterclaims. And that Declaration is just one of many documents filed in this case that, if unsealed, would reveal the details of Defendants' Counterclaims and other deeply personal, private and sensitive information concerning them.

Ultimately, there is no way to unseal the docket in such a way that only Defendants' privacy rights are impinged, nor would such an impractical solution be supported by the law or be in the interests of justice.

## **CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court deny Hartford's Motion to Intervene and to Complete Administrative Unsealing of the court filings in this Action.

DATED:  July 22, 2026
New York, New York

23

**GIBBONS P.C.**

By: */s/ Christine A. Amalfe*
Christine A. Amalfe
Mark S. Sidoti
Daniel S. Weinberger
One Pennsylvania Plaza, 45th Fl, Suite 4515
New York, New York 10119
Tel: (212) 613-2000
Fax: (212) 290-2018
camalfe@fbtgibbons.com
msidoti@fbtgibbons.com
dweinberger@fbtgibbons.com

*Attorneys for Defendants*
*Scott Bursor and Bursor & Fisher, P.A.*

24