UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ANGELICA PARKER,

*Plaintiff*,

-- against --

SCOTT BURSOR and
BURSOR & FISHER, P.A.,

*Defendants*.
---------------------------------------------------------X

Case No. 24-cv-245 (JGLC) (RFT)

**DECLARATION OF JUDD BURSTEIN**

**JUDD BURSTEIN** hereby declares:

1. I am an attorney admitted to the Bar of this Court.

2. I am the sole shareholder of Judd Burstein, P.C., attorneys for Scott Bursor ("Mr. Bursor") and Bursor & Fisher, P.A. ("B&F," and together with Mr. Bursor, "Defendants") in the above-captioned case, which was removed from the New York State Supreme Court, County of New York ("State Court Action"), on January 11, 2024. Dkt. No. 1.

3. I submit this Declaration in support of Defendants' motion seeking a Temporary Restraining Order and Preliminary Injunction granting **extremely limited and initially short-term relief**: an Order:

a. Requiring Plaintiff – who is proceeding *pro se*,[1] and who had only filed a Summons with Notice in the State Court Action prior to its removal to this Court – to file her Complaint under seal;

[1] As explained *infra*, Plaintiff is proceeding *pro se* because her former lawyer, Carlos M. Carvajal ("Mr. Carvajal"), refused to file a complaint on her behalf out of fear of being sanctioned. Indeed, as explained in Mr. Bursor's accompanying Declaration ("Bursor Dec."), Mr. Carvajal was the **second** lawyer who refused to commence an action against Mr. Bursor on behalf of Plaintiff.

b. Pending further Order of the Court, requiring Plaintiff also to file under seal any other documents which she wishes to file;

c. During the pendency of any sealing Order, barring Plaintiff from publicly discussing (i) any documents which the Parties file in this case from this date forward, including the current motion, and (ii) any sealing Order issued by the Court;

d. Directing that the sealing Order (i) shall remain in place until the Court renders a decision on a motion which, after review of the Complaint once it has been filed, Defendants will likely file (on a schedule set by the Court) to extend the sealing Order, but (ii) shall expire automatically if Defendants do not timely make such motion; and

e. Granting such other and further relief as deemed just and proper by the Court.

4. The procedural posture of this case is unusual because no Complaint has as yet been filed. Plaintiff originally commenced the State Court Action by filing, pursuant to CPLR 305(b), a Summons with Notice against Mr. Bursor and then an Amended Summons with Notice adding his firm, B&F, as a Defendant. On January 11, 2024, Defendants timely filed, pursuant to CPLR 3012(b), a Demand for Complaint and, immediately thereafter, removed the State Court Action to this Court. Dkt. No. 1.

5. Defendants are not contending that the Court should enter a sealing Order merely because they claim that Plaintiff's accusations about them are false and/or that those accusations will unfairly harm their reputations if alleged in a public Complaint.[2] If that were the standard,

[2] However, for multiple reasons, including those articulated in Exhibits 3 and 4 hereto (true and accurate copies of the letter and email I sent to Plaintiff's prior counsel, respectively, which precipitated his refusing to file a complaint on behalf of Plaintiff and withdrawing from his

sealing orders would be the rule, not the rare exception. But this case is *sui generis*, as the Court is faced with a *pro se* Plaintiff who, as explained below, should not be permitted to act without guardrails because of her conduct to date – conduct which demonstrates that, unless restrained, she will file a Complaint that will be filled with inflammatory and wholly irrelevant allegations designed solely for the improper purposes of harassing Defendants and publicly destroying their reputations.

6. Defendants seek only short-term relief prohibiting Plaintiff from publicly filing a Complaint or any other papers until they have an opportunity to review the Complaint filed by Plaintiff and, if appropriate, seek a further sealing Order. If Defendants do not make such a motion, the Court's sealing Order would automatically expire.

7. I note that Defendants are not asking the Court to seal Plaintiff's Summons with Notice because it has been publicly filed both on the docket in this case and on the docket in the State Court Action. Hence, (a) the public's right of access to the gravamen of Plaintiff's claims will not be materially impacted, and (b) Defendants will be saved the irreparable harm that will be caused by baseless, horrific and wholly irrelevant accusations – *e.g.*, [redacted] – which Plaintiff has stated she will improperly allege so as to "destroy" Mr. Bursor and his firm.

8. There are multiple reasons why the facts of this case are sufficiently unique to warrant a short-term sealing Order.

9. **First**, this is not the first time that Plaintiff has sought to improperly use a court case to extort money by making claims which bear similarity to the claims which Plaintiff has

---

representation of her), I believe that even Plaintiff's core allegations of rape and sexual abuse will not withstand a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) and 12(d).

stated she will pursue in this action. In 2011, then using a different name – Angelica Marie Cecora – Plaintiff was sanctioned for bringing a frivolous action against famed boxer Oscar de la Hoya alleging sexual abuse. *See Cecora v. de la Hoya*, 2012 N.Y. Misc. LEXIS 1582 (Sup. Ct. N.Y. Co. 2012), *aff'd*, 106 A.D.3d 565 (1st Dep't 2013). The *de la Hoya* case demonstrates the need for a sealing Order in this case because Plaintiff was sanctioned in *de la Hoya* for doing what she has been threatening Mr. Bursor that she will do in this case (*see* Bursor Dec., at ¶ 6): filing a sensational, frivolous complaint (a true and accurate copy of which is annexed hereto as Exhibit 1) and then hyping it in the media. In *de la Hoya*, Plaintiff gave an exclusive, plainly pre-arranged, interview to the *New York Post* about her claims that was published in the *Post* (complete with a photo of Plaintiff posing in lingerie) immediately after she filed her complaint. *See* Exhibit 2 hereto, a true and accurate copy of the *New York Post* article. In sanctioning Plaintiff and her attorney, the Court condemned her conduct:

> [T]he Court exercises its discretion to impose sanctions on the plaintiff and her attorney for bringing the aforementioned causes of action because they are completely without merit in law and were undertaken primarily to harass or maliciously injure the defendant…, and as a policy, frivolous and baseless causes of action will not be tolerated by this Court. **The Court notes that plaintiff and her attorney's intentional appeal to the media**, including a press 'conference on the steps of the Supreme Court building on the date of the court appearance, and plaintiff's, attorney's attempt to embarrass the defendant in front of the media in the courtroom by making an issue of defendant's absence from the Court on the date of oral argument, knowing that it is common practice in civil cases for only attorneys to appear, **is further evidence that plaintiff's motivation for maintaining two frivolous causes of action was to harass and maliciously injure the defendant.**

*de la Hoya*, 2012 N.Y. Misc. LEXIS 1582 at *11-12 (Emphasis supplied).

10. Plaintiff plainly did not learn her lesson in *de la Hoya*. Instead, she changed her name and then adopted the same game plan with Mr. Bursor. Further, because I represented Mr. de la Hoya, I have personal knowledge of the fact that Plaintiff never paid the sanctions imposed

upon her in that case. This fact is relevant because it demonstrates that the threat of sanctions will not serve as a deterrent in this case.[3]

11. **Second**, while Mr. Bursor is not a world-famous celebrity such as Mr. de la Hoya, he is a very newsworthy figure within the legal community because he is one of the leading class action lawyers in the United States. The irreparable harm which Defendants would suffer, including the ability to attract appropriate class representatives as clients, is obvious. *See* Bursor Dec., at ¶ 13.

12. **Third**, over the past nine months, Plaintiff has sought to extort Mr. Bursor into paying her millions of dollars to avoid the devastating impact which the mere filing of a lawsuit falsely accusing him of rape would cause. Bursor Dec., at ¶ 11. **Most cruelly**, she created a group text with Mr. Bursor's 78-year-old father, who was at home providing hospice care for his terminally ill wife of 52 years (Mr. Bursor's mother). Plaintiff had met Mr. Bursor's father once sometime in the past, and had somehow obtained his mobile phone number. Even though she knew that Mr. Bursor's mother was dying, Plaintiff sent Mr. Bursor's father dozens of outrageous messages hoping that Mr. Bursor would pay her to stop doing so. These messages included claims that (a) she had asked Mr. Bursor "many times to take care of you and his mother or at least visit. and he refused to be associated you both cause he said you weren't rich enough for him to respect,"

[3] To be clear, Defendants are **not** contending that Plaintiff's conduct in the *de la Hoya* case excludes the possibility that her allegations against Mr. Bursor are true – particularly because the last ten years have shown that claims of sexual abuse were easily dismissed in the past. However, her abusive conduct in that case is highly relevant here. Moreover, Plaintiff's complaint in *de la Hoya* was verified, and her palpably false sworn allegations in that case – particularly her facially absurd claim that she was falsely imprisoned in a hotel suite even though Mr. de la Hoya had left her there alone for hours (Exhibit 1 hereto at ¶¶ 31-35) – demonstrate that she is willing to lie under oath when it suits her purposes.

(b) Mr. Bursor "hated" his mother, and (c) [redacted] Bursor Dec., at ¶ 12.

13. **Fourth**, Plaintiff is proceeding *pro se* in this case because her prior counsel, Mr. Carvajal, resigned and refused to file an action on her behalf after I had sent him a letter and a follow-up email explaining why he would surely be sanctioned if he filed a complaint against Mr. Bursor. *See* Exhibits 3-5 hereto.[4]

14. **Fifth**, if the Court reads the text messages between Plaintiff and Mr. Bursor which are annexed as Exhibits B and D to the Bursor Aff., it is clear that Plaintiff is either cynically continuing to make desperate threats in an effort to extort monies from Mr. Bursor or, as I believe, is seriously unbalanced.[5] Of particular note are the text messages which she sent to Mr. Bursor last week in which she forwarded obviously fabricated messages supposedly sent to her from a purported "hit man" whom, she said, Mr. Bursor or I had likely hired to run her over while she was riding her bicycle and also take "3 fingers and 2 toes" from her. *See* Exhibit D to the Bursor Dec.

---

4 Exhibit 3 hereto is a true and accurate copy of a letter which I sent to Mr. Carvajal on November 17, 2023. Exhibit 4 hereto is a true and accurate copy of an email, with attachments, which I sent to Mr. Carvajal on November 18, 2023. Certain pictures of Mr. Bursor and Plaintiff have been redacted for Mr. Bursor's privacy. Exhibit 5 hereto is a true and accurate copy of Mr. Carvajal's November 21, 2023 email to me stating that he would no longer be representing Plaintiff and that she would be proceeding *pro se*.

5 Defendants are not alleging that Plaintiff is delusional in the sense that she has invented a relationship with Mr. Bursor. They in fact had had an on-again/off-again tempestuous relationship for many years, culminating in a May 3, 2023 dispute during which, Plaintiff alleges, Mr. Bursor sexually assaulted her. However, a secret recording which Plaintiff made of her interaction with Mr. Bursor that night and which she inexplicably then shared with him, demonstrates that Plaintiff was both refusing to leave Mr. Bursor's apartment at his request and instead kept asking him why he would not engage in oral sex and intercourse with her. *See* Exhibit 3 hereto; and the Bursor Dec., at ¶ 10.

15. **Sixth**, since Mr. Carvajal's resignation in November 2023, Plaintiff, whether unbalanced or not, has repeatedly sent text messages to Mr. Bursor stating that she intends to use this litigation to "destroy" and "expose" Mr. Bursor in every single way by making allegations and engaging in conduct which she has acknowledged no lawyer representing her would engage or would permit her to engage, including:

a. "I'm unhinged and filled [6] loaded…."

b. "Since you eliminated my lawyers I'll send whatever I want...."

c. "No lawyer can stop me…."

d. "Now I'm like a kid without an adult as you say telling me what to do so…. Now that it's up to me not a proper lawyer…."

Exhibit B to the Bursor Dec., at 3-4, 7, and 11.[7]

16. **Seventh**, on the other hand, Plaintiff claims that even though she is proceeding *pro se*, she still has "like 59 lawyers so you only got rid of 2 trust me everyone is out for you and will guide me" and also has a "million lawyers behind me you'll never know about…." Exhibit B to

---

[6] Unless indicated with brackets, Plaintiff's written communications discussed throughout this Declaration are all quoted verbatim, including all spelling errors, etc., because it would be impractical to do otherwise.

[7] As discussed *infra*, at ¶ 19, Plaintiff has also made wholly inappropriate – albeit false and frivolous – threats to destroy my career unless I cease representing Mr. Bursor. In one of her communications (a true and accurate copy of which is annexed hereto as Exhibit 6), she informed me that she will be "looking into all legal and **non legal** means to seek justice" against me. (Emphasis supplied).

I note that in this email, as well as in the other emails from her which are annexed hereto as Exhibits, Plaintiff inexplicably addresses me as "Judd" instead of as "Mr. Burstein." It is possible (although I do not recall) that, as she contended in *de la Hoya*, I participated in one settlement call with her and another one of Mr. de la Hoya's attorneys prior to her suing. However, the only time I have ever seen her in person was the day of the oral argument on Mr. de la Hoya's motion to dismiss her complaint and for sanctions. While I have no such recollection, I may have been introduced to her by her counsel. But I did not otherwise speak to her on that occasion or thereafter.

the Bursor Dec., at 2 and 15. Obviously, these claims are false. However, they make clear that Plaintiff is not in full control of herself and cannot be trusted to act responsibly.

17. **Eighth**, Plaintiff has repeatedly stated in writing that she intends to make horrific and irrelevant accusations in her Complaint and then, as noted above, gratuitously seek to destroy Mr. Bursor's personal and business reputation by publicizing them in the media. No lawyer meeting his or her Rule 11 obligations, or even a minimally responsible *pro se* plaintiff, would ever send the text messages which Plaintiff has sent to Mr. Bursor threatening to file a Complaint which, *inter alia*, alleges that Mr. Bursor:

a. [redacted];

b. [redacted];

c. has raped multiple other women;

d. [redacted]

e. is "hooked on painkillers and cocaine";

f. is a "[l]oser stalker who is a gay and hates women";

g. has "used company funds to pay for drugs and covering up abuse"; and

h. is "a drug addict who has hookers in [his] office at night.

Exhibit B to the Bursor Dec., at 3, 8-9, 12, and 15-17.

18. **Ninth**, Plaintiff's improper goal of using this litigation to humiliate Mr. Bursor and destroy Defendants' business is further demonstrated by the December 8, 2023 email which she sent to ten lawyers at B&F with a subject matter line of "**Scott Bursor v Angelica /disqualify him as an** [redacted]" (emphasis in original), and stating, *inter alia*:

> Scott is hiding a lot of things from the firm and is about to be disbarred. Attached is a lot of information (all legal I hope you'll review it before I have to go forward with the next stepsagainst him and the entire firm) I've tried to sort it out properly but with his actions but he wants a public relations disaster/media attention for him

> and the entire firm as he's risked everyone! He used a lot of company $ to pay for crimes, drugs, and cover-ups of his abuse to me and others. His current lawyer whom he hired cause he wants to fight me in massive media outlets and he knows I have a history with, is Judd Burstein. ( not a proper lawyer I'm sure none of you would of hired) Scott wants me to use my public relations team to fight him yet he's likely not shared any of this with his firm cause he says no one has any equity in the firm and everyone works for him. He's pure evil….
>
> Scott is very drugged out (which my attorney proved he used company funds to pay for amongst many other crimes, cover-ups, wires, and witnesses ) Scott is in serious trouble and someone needs to guide him as he is not fully capable anymore to make the right choices due to his very embarrassing and public life choices, social media, drugs many foreign girls living with him who he gets banned from the country when they don't "perform". Hopefully, he won't continue this behavior. This is just part of it it's much worse how he's treated me. And abused his power as a lawyer. I filed against him last week!

Exhibit C to the Bursor Dec., at 1-2.

19. **Tenth**, Plaintiff has also sought to threaten me into ending my representation of Mr. Bursor by sending me a letter claiming, *inter alia*, that (a) my prior representation of Mr. de la Hoya in her litigation against him amounts to a "past history" with her that has created "a conflict and a moral and ethical rationale" that prevents me from representing Mr. Bursor, (b) she has damning audio, video and documentary evidence of my supposed misconduct in the *de la Hoya* case,[8] and (c):

> I have a very large and extensive PR team as well as many legal friends to guide me that are well prepared to expose the crimes Scott Bursor did to me as well as many other young women. Your unethical and conflicted defense of Scott and other young and defenses women will be brought front and center…. I'm very aware of how you handle your clients that you extort from! … [Y]ou have (and your law firm) until 5pm Thursday Dec 14th to resign a Scott Bursor's attorney or I will be report you to the Ny Attorney Grievance Committee/Supreme Court Appellate Division For taking on a case in which you are severely conflicted….

---

[8] There is no such evidence because I did nothing wrong. Plaintiff is referring to a matter which was addressed by the *de la Hoya* Court's denial of her motion to disqualify me in that case. The Court held that the motion should be denied even assuming that the facts alleged by Plaintiff were true (which they were not). *Id.*, 2012 N.Y. Misc. LEXIS 1582 at *14-16.

> This will be the last time I deal with you Judd Burstein- you will not extort your clients to prey on young women like me! I'm very well aware of how you operate. You should question your morals and ethics. Do you have a daughter or sister or mother? Are they proud of the criminals that you defend like Scott Bursor who also [redacted]
>
> * * *
>
> I guess you are too desperate for money…. I will make sure to do everything in my power(trust me I have a lot) to make you face justice. YOU WILL HAVE NO CAREER IF YOU CONTINUE THIS PURSUIT TO HURT ME!

Exhibit 7 hereto[9] (capital letters in original).

20. On January 17, 2024, Plaintiff made a new outrageously false claim against me: I had been [redacted] *See* Exhibit 10 hereto, at pp. 2-3.

21. No lawyer, or even a minimally reasonable *pro se* plaintiff, would ever communicate with opposing counsel in such an abusive and insulting manner.

22. In sum, this motion is not about whether Plaintiff's allegations are true or false. Nor are Defendants asking the Court to deprive Plaintiff of the latitude generally afforded to *pro se* plaintiffs. But that latitude is surely not unbounded. On the unique facts of this case, the extremely limited sealing Order which Defendants seek is their only hope of not being victimized by a plaintiff who has made it clear that she intends to abuse the litigation process and cause unfair harm to Defendants. This is particularly so because, as explained above, Plaintiff has already

---

[9] Plaintiff has also sent me a draft complaint alleging that I defamed her by reason of statements about her which I made in 2013 in the course of representing Mr. de la Hoya. Her email attaching the draft complaint stated that she would file it unless I stopped representing Mr. Bursor. Attached as Exhibit 8 hereto are true and accurate copies of Plaintiff's email, dated December 12, 2023, and the draft complaint which she attached to it. I am also annexing, as Exhibit 9 hereto, true and accurate copies of additional harassing emails which Plaintiff has recently sent me.

demonstrated that the threat of sanctions will not deter her from acting in an abusive and inexcusable manner.

23. Moreover, pending a resolution of this motion, the Court should issue a Temporary Restraining Order requiring Plaintiff to file all documents under seal until the Court rules on Defendants' motion for a preliminary injunction because, otherwise, if the Court ultimately decides that a sealing Order is warranted, the value of that Order will be rendered nugatory and Defendants will thereby have been irreparably harmed.

24. Also, during the pendency of any sealing Order, Plaintiff should be barred from publicly discussing (a) any documents filed in this case from this date forward, including the current motion, and (b) any sealing Order issued by the Court. Absent this restraint, Plaintiff can, and likely will, render illusory the protections of any sealing Order entered by the Court.

25. Granting the Temporary Restraining Order and Preliminary Injunction sought by Defendants will not unduly prejudice Plaintiff nor, as explained in the accompanying Memorandum of Law, offend the First Amendment or the common law presumption of the public's right to access judicial documents because Defendants are seeking only a short-term sealing Order and, in the interim, Plaintiff's Summons with Notice will remain publicly available on the dockets of both this case and the State Court Action.

26. On the other hand, as also explained in the accompanying Memorandum of Lw, Defendants will be irreparably harmed if the Court does not grant the relief sought herein.

**PROCEDURAL REQUIREMENTS**

27. The motion is brought on by Order to Show Cause because of the urgency of the relief sought.

28. At 4:47 p.m. on January 16, 2024, I sent an email to Plaintiff informing her that this motion would be filed that night or the following morning. Plaintiff responded nine hours later, at 1:49 a.m. on January 17, 2024, without addressing this motion or consenting to the temporary relief. At 11:24 a.m. on January 17, 2024, I replied to Plaintiff's email stating, *inter alia*, that I would wait until 2:00 p.m. that day for her to substantively respond to my prior email before I wrote the Court pursuant to the Individual Rules and Practices in Civil Cases of Judge Jessica G. L. Clarke, U.S.D.J. Exhibit 10 hereto is a true and accurate copy of these communications. Plaintiff did not respond by 2:00 p.m. and I sent an email to Judge Clarke's Chambers addressing this motion.

29. On January 17, 2024, Judge Clarke referred this case to Magistrate Judge Tarnofsky. Dkt. No. 6. That same day, I sent Plaintiff the docket entry regarding Judge Clarke's referral and also a copy of Magistrate Tarnofsky's Individual Rules. The following day, January 18, 2024, Plaintiff informed me by email that she did not consent to the sealing requested in connection with this motion.

30. No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, your Declarant respectfully prays for an Order:

a. Requiring Plaintiff to file her Complaint under seal;

b. Until further Order of the Court, requiring Plaintiff also to file under seal any other documents which she wishes to file;

c. During the pendency of any sealing Order, barring Plaintiff from publicly discussing (i) any documents which the Parties file in this case from this date forward, including the current motion, and (ii) any sealing Order issued by the Court;

d. Directing that the sealing Order (i) shall remain in place until the Court renders a decision on a motion which, after review of the Complaint once it has been filed, Defendants will likely file (on a schedule set by the Court) to extend the sealing Order, but (ii) shall expire automatically if Defendants do not timely make such motion; and

e. Granting such other and further relief as deemed just and appropriate by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of January, 2024, in the State of New York, County of New York.

JUDD BURSTEIN