UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELICA PARKER, : Docket #24-cv-00245

Plaintiff, :

-against- :

SCOTT BURSOR, et al., : New York, New York
January 24, 2024

Defendants.

---------------------------------:

PROCEEDINGS BEFORE
THE HONORABLE ROBYN F. TARNOFSKY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff: ANGELICA PARKER, PRO SE
400 East 57th Street, Apt 15A
New York, New York 10022

For Defendant: JUDD BURSTEIN, PC
BY: JUDD BURSTEIN, ESQ.
110 East 59th Street, 22nd Floor
New York, New York 10022

Transcription Service: Marissa Lewandowski
Phone: (631) 813-9335
E-mail:marissamignano@gmail.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
| --- | --- | --- | --- | --- |
| None | | | | |

E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
| --- | --- | --- | --- | --- |
| None | | | | |

THE DEPUTY CLERK: Good morning, everyone. Today we have case 24-cv-245, Parker vs. Bursor. Judge Robyn Tarnofsky is presiding. She is currently in the conference.

THE COURT: Good morning, everyone, and thank you for being here.

Mr. Burstein, it's your application. Why don't you get started?

MR. BURSTEIN: All right. Thank you, Your Honor.

We're asking for a limited sealing order so that the complaint in this matter is sealed. We find ourselves in a very difficult situation. This is not the normal case. Ms. Parker, were making just the core allegations, I'd be in a very different procedural posture and have a very uphill battle.

And I apologize for the noise behind me. I'm actually in a waiting room of a medical center, waiting for my fiancée to come out. So I'm sorry for the noise.

I have a client who's been threatened with all sorts of extraneous, devastating claims, such as [redacted] that he's raped multiple women. Ms. Parker -- this is not sort of

hypothetical. There are tons of texts with these threats. Ms. Parker actually sent a letter to all the lawyers in his law firm accusing him of all these things. [redacted] this is the kind of thing that can destroy somebody for literally no solid reason.

And as I said before, this is an unusual case also because Ms. Parker has previously been sanctioned for bringing a lawsuit for an improper purpose. I understand that people have a right to sue, but they don't have a right, as the case law says to, I think *Lugosch* said, to bring allegations that get before the Court only to determine that they're improper.

Now, is it possible that she could plead something that I would lose on a sealing motion? Yes, but I'm not asking for anything other than to see that the complaint is filed in the first instance under seal.

Your Honor might review it and say, no, there's nothing problematic here. And that's Your Honor's obvious right. I would ask for an

opportunity to make an appropriate motion, but this is an extraordinarily limited application, and it's brought on because of the unusual procedural posture of this case. I think our papers are laid out in probably too much detail.

So unless Your Honor has any more questions, I think that I've made our argument, and I don't see that I can add much more to what's in our papers, unless Your Honor has questions.

THE COURT: Thank you, Mr. Burstein.

And I do have a question. And my question, you know, whether even if I had a complaint in front of me that said Mr. Bursor raped multiple unnamed women and [redacted] would you be making this motion to seal?

MR. BURSTEIN: Yes, I would.

THE COURT: Well --

MR. BURSTEIN: Yes.

THE COURT: And then I guess my other question is, how do you think I could grant it under *Lugosch*? Which tells me that the public has a strong interest in seeing complaints, not because they have a right to know Mr. Bursor's private

business, but because they have a right to evaluate how the Courts are doing their job, which they can only do if they see the Court papers that are filed.

MR. BURSTEIN: I understand that. But by the same token, in this unusual situation -- and we don't know exactly what's going to be filed. That's the first question. So we simply don't. And also --

THE COURT: So I guess my other point though, Mr. Burstein, is, you don't know what's going to be filed and yet an application to seal, if granted, and certainly a TRO and PI, if granted, require specific, concrete factual findings on the record about what exactly it is that justifies overriding this strong presumption that core judicial documents like complaints, are going to be available to the public. What can I base those findings on, besides the possibility that the complaint is going to include the stuff we're talking about?

MR. BURSTEIN: Well, I think, Your Honor, the difference in this case is you have a history of text with Ms. Parker making these claims. And we should understand here, the allegation in this case, and I'm not going to get into the truth of it or

not, is simply that -- and I don't say simply because it's a horrible allegation, that there was a sexual assault and a rape. Those are the allegations. The notion that [redacted] certainly would not have any basis and would be inappropriate. The fact that there has been threats that -- I don't think you've ever seen threats where a plaintiff says, I don't care about money, I only want to destroy you publicly. I think that this is a situation where, if I am right and there's overwhelming evidence that that's exactly what's going to happen, that a very brief TRO, to look at it, and then if Your Honor believes that either it's all appropriate or if there's a portion of it that should be struck or sealed for the short term, that's not an impact on the public in the short term. Because if I'm wrong, they've lost two weeks of having something public.

This is not asking for a sealing of a case. This is asking to Your Honor to not make a final determination about the public having rights. The public's rights will be vindicated very promptly if they have the rights in this situation. But by the same token, if they don't, if this is something that should be stricken, then I have a defendant who

employs 70 people, who is going to -- with a law firm that's been sued for no conceivable reason, is asking just to be protected in the very short run, because there's an overwhelming amount of evidence that this is going to happen.

This is just -- I have a plaintiff who is making allegations about hitmen being sent out to take her toes, none of which is really supposed to be in a complaint, and a TRO with a very short return date. Make me -- Your Honor, send a TRO -- her complaint is due, I think, Monday of next week. If you file under seal and you ask me to make another submission on Tuesday, you'll have everything that Your Honor can decide. But what I'd say to Your Honor is, that if I'm right, the damage is done. And if you weigh that under *Lugosch* and you weigh that under *Brown*, one of the issues is that, yes, there's a weighing process, but if you don't grant the relief, you're not going to be able to weigh.

THE COURT: I mean, Mr. Burstein, can you point me to any case where this relief, kind of relief was granted under these circumstances?

MR. BURSTEIN: No.

THE COURT: No.

MR. BURSTEIN: No, because this is a hugely unusual procedural case where the case was removed to the federal court. So once it's removed to the federal court with it --

THE COURT: No. And I understand, right, this is an artifact of the sort of unique, or at least unusual New York procedure that allows you to start a complaint by summons and notice.

But look, I am certainly sympathetic to the reputational concerns. I am more than sympathetic. I am deeply troubled by the possibility that [redacted] by the filing of this complaint. [redacted]

But beyond that, nothing that you have described to me is the type of information that can be kept out of the public view under the governing case law, other than [redacted] There are lots of cases out there where people are accused falsely of doing

terrible things. And the way our system works is, that there is an expectation that the public can see it so it can evaluate how the judges are doing their function.

As a practical matter, the complaint is due Monday. I'm going to issue a report and recommendation today. I imagine you are going to go directly to Judge Clarke with an objection. But then plaintiff has 14 days to respond to that objection. I don't know whether Judge Clarke is going to rule before that time without having the benefit of plaintiff's thoughts on the matter.

What I'm inclined to do is, my report and recommendation doesn't cause anyone to do anything, and therefore, nothing happens until there's an order issued. So I will issue my reporting recommendation. The status quo will remain the same with respect to your filings, so then the issue -- you know, until Judge Clarke makes her ruling.

So the issue really is know the status of the filings in support of your TRO and PI motion, but what Ms. Parker files on the docket between today and Monday -- and I guess with that, I would ask Ms. Parker what her intentions are with respect to filing the complaint and whether it is the case

that, Ms. Parker, you plan to file a complaint that includes the allegation that [redacted]

MS. PARKER: Hello, Your Honor. So I want you to know that all of the claims that I am making are absolutely credible, provable, and everything that I'm saying is very verifiable. Both Mr. Burstein and Scott have the evidence of this, and they know their wrongdoing.

I don't have an attorney because they've removed them from me. So my complaint -- I haven't even had a chance to file my complaint yet. It's due, and it will be given as soon as it's due, very soon. I'm just doing the best I can because I'm representing myself, but I can absolutely just within -- I don't know if it's right, but I can absolutely play for you just two of the main claims where Scott says he's going to absolutely rape me. I have it on my audio. It's only, like, 20 seconds long. And all of the claims that I'm making are very credible, very provable, and very real, and there's a ton of evidence and witnesses to back it up.

THE COURT: So I understand, Ms. Parker, that you feel very strongly about your claims and

12

believe that you can prove them. I do understand that.

The question I'm asking you is a little bit different. And let me just try to explain. I understand that you're pro se.

MS. PARKER: Yeah.

THE COURT: The issue is that even if it is true that -- and we're now only talking about the question of whether [redacted] Not the claim that he raped you.

MS. PARKER: Right. Or raped me -- and raped me.

THE COURT: With respect to the claim that he raped you, you are entitled to publicly make that claim and to file a complaint --

MS. PARKER: Right. Right. Thank you, Your Honor.

THE COURT: -- that says that.

With regard to the claim that [redacted] I don't believe that you are permitted to make that claim publicly. I believe that you can say in a general way that [redacted]

MS. PARKER: Yes.

THE COURT: [redacted]

MS. PARKER: Yes. Your Honor --

THE COURT: So my question to you isn't whether you're planning to say in your complaint that he raped you. My question is whether you're planning to say in your complaint that [redacted]

MS. PARKER: Your Honor, so with that being said, I have never actually specifically said that. He tends to [redacted]

So my only allegation, what Mr. Burstein is making is that I felt it was very unsafe, considering I've been around the man for many years, and I've seen what happens around. So what Mr. Burstein is saying is that I was scare -- you know, [redacted] and he is not in the right state of mind, Mr. Bursor.

And my only threat that I've ever made, I would never do that publicly, because he has only -- [redacted] It's a public knowledge. [redacted] That was kind of the only intent with that.

THE COURT: I mean, look, maybe I need to be clearer.

MS. PARKER: Yes.

THE COURT: You may not file on the public docket a complaint that says that [redacted] --

MS. PARKER: Unless he said it himself. I understand.

THE COURT: No, not even if he said it himself.

MS. PARKER: Okay.

THE COURT: You cannot file on the public docket --

MS. PARKER: I wouldn't.

THE COURT: -- a complaint that includes a claim that [redacted]

MS. PARKER: Yes, I understand.

THE COURT: You can say [redacted] You can say [redacted]

MS. PARKER: Correct.

THE COURT: You cannot say [redacted] And saying that [redacted]

MS. PARKER: I understand, Your Honor.

THE COURT: So to [redacted] if you are going to file a complaint accusing him of [redacted] you need to come into the pro se intake office, and they will explain to you how you can file one version of the complaint that identifies everyone and everything that happened, which will be kept in a sealed envelope in a vault. And another version of the complaint that whites out [redacted] Do you understand that?

MS. PARKER: I do.

THE COURT: Because this is very important.

MS. PARKER: I do, Your Honor.

THE COURT: If you file something on the public docket that [redacted] you will be sanctioned.

MS. PARKER: No, I understand. I absolutely understand, Your Honor.

THE COURT: And that is not to protect Mr. Bursor. [redacted]

MS. PARKER: No, I absolutely understand. That's my only goal.

The main concern is the rape that's been done to me. So I have no intent at all whatsoever at all, to say anything public at all about [redacted] I'm much more concerned with the actions he's taken on me. And unfortunately, because he's been a part of my life for many years, [redacted]

I know -- I understand very much that obviously, that cannot be the most important thing is [redacted] But the main concern is the rape that's been done to me and many other things, but mainly that. And the fact that he's trying to

move it to different jurisdictions, and I haven't even had a chance to file -- my complaint is due. I haven't even had a chance to file it yet. So it will be filed.

But, yeah, the main concern is, I would never want to [redacted] He knows that better than anybody. It's more about what he's done to me. [redacted] and I've told him this is the only reason. Mr. Burstein knows this. [redacted] So my only concern was that I was able to get the justice for myself and that [redacted] and the amount of audio. And I'm very happy to play it for you. It's only 22 --

THE COURT: This is not -- this session is not about proving your claims.

MS. PARKER: Okay.

THE COURT: Right now, the only thing we're talking about are issues surrounding whether or not

the complaint, which is how you -- the next step in the litigation, it's not the proof, it's just where you say what it is that you want to prove. It's about the confidentiality of that document and whether that document is going to be publicly available. And my belief is that it should be publicly available except to the extent that it [redacted]

MS. PARKER: Absolutely.

THE COURT: If you are planning to say anything about [redacted] in this complaint --

MS. PARKER: No.

THE COURT: -- before you file it, you need to come in in person to the pro se intake office and talk to them.

You know what? We just lost Mr. Burstein. And therefore we're now ex parte. And so I am going to halt the conference until he rejoins. And I'm going to mute my mic and step away for now until he rejoins.

MS. PARKER: I appreciate it, Your Honor.

And I just want you to know that by no means do I intend to at all [redacted] That was my main concern of my defense, to

make sure [redacted] So I just want you to understand that I have no intent at all to include --

THE DEPUTY CLERK: Ms. Parker?

MS. PARKER: YES.

THE DEPUTY CLERK: We appreciate it if you can continue when counsel is back online. Please note that the judge has stepped away from her desk so further statements will not reach her.

MS. PARKER: I understand. Thank you.

THE DEPUTY CLERK: Thank you.

MS. PARKER: Do I call back or what should I do now?

THE DEPUTY CLERK: No. No. No. You could stay on. You could just hold off on any further statements until we get the counsel back.

MS. PARKER: Yeah. Thank you.

THE DEPUTY CLERK: Well, we'll let you know when that happens. We see on our screens.

Okay. One second while I'll get --

MR. BURSTEIN: Yeah. Your Honor, I'm very --

THE DEPUTY CLERK: One second while I get the judge. One second. One second. One second. We halted the conference to wait for you to join

back.

MR. BURSTEIN: Thank you. I don't know exactly what happened.

THE DEPUTY CLERK: No, it's fine. I just wanted to let you know that we paused for the time being, and I will go get the judge now.

MS. PARKER: Thank you, Mr. Burstein.

THE COURT: Okay, I am back. Yes. Technology glitches happen.

MR. BURSTEIN: I apologize, Your Honor.

THE COURT: I really understand. Like I said, technology glitches happen.

Okay. So my plan is this. My plan is to issue a report and recommendation today. It will say that -- recommend that Judge Clarke unseal the docket entries that you sealed. I think it's, I don't know, 13, 14, 15 and 16, except to the extent that there are references to [redacted] I'm going to recommend that she direct you to refile on the docket within seven days of her order, assuming that she agrees with me. And if she doesn't, she'll tell you exactly what it is she wants to do. That you file a redacted version that takes out references to [redacted] because just the fact of having that on the docket

[redacted] And Ms. Parker is admonished that she not file a complaint that contains any references that are not whited out to the claim that [redacted] or any other claims that [redacted]

If she is going to include those kinds of claims in her complaint, she needs to come into the pro se intake office to make her filing so that they can assist her with filing a redacted version that takes out references to [redacted] on the public version. And the sealed version in the vault, can say whatever she wants.

At that point in time --

MR. BURSTEIN: May I just be heard for one more minute?

THE COURT: Of course.

MR. BURSTEIN: What I was going to say is, just by example, there is a difference between somebody respectfully -- and I think this is clear with *Lugosch* and other cases. Let's assume for the moment that she also put in an allegation completely unrelated to this proceeding which said, and by the way, he killed three heads of state.

Now, in that circumstance, there's got to

be some protection in this situation. And the burden on the Court and the public is very, very, very minimal. Nobody's saying, and I'm certainly not saying, that anything that's appropriately there within the realm of possibility is fine. But if you have someone who's already stated it, and it's very clear in the papers that she's intending on filing for an improper purpose, to a large degree, the burden on --

MS. PARKER: Mr. Burstein, I would never --

THE COURT: Okay, we're going to be one at a time. One at a time.

MS. PARKER: Sorry.

MR. BURSTEIN: I think that you have a history. You know, this is a chance. What is it? The animals will be out before the barn door closes.

And at least, maybe the answer is that I give Ms. Parker another week to file. And in the interim, I mean, I certainly would like to have a chance to go to Judge Clarke, and I would like a chance to go to the Court of Appeals if necessary.

You know, but I shouldn't be, respectfully, put in a position where Your Honor issues a report recommendation. There's no restraint in place, even for a day or two, before I can get to Judge Clarke,

and then I don't have any remedy left.

So at a minimum, I'd ask the Court to give me a day or two to go to Judge Clarke. And if she says she agrees with Your Honor, then at that point, I'd like an opportunity to go to the Court of Appeals.

But the way that Your Honor has structured it now, I could well be left -- or my client could be well left with no remedy whatsoever, because I don't think, respectfully, that the public interest, which I know is strong in an open court process, is the least bit harm for a few days of things not being on the public docket. So all I'm asking at this point is --

THE COURT: But, Mr. Burstein, it's not only my concern that the public will be harmed by a temporary sealing of the complaint. It's also that nothing that you have pointed me to, except claims that would [redacted] is, in my view, something that would be sealed in the merits of a sealing analysis under the governing case law. And that would include a claim that Mr. Bursor is laundering money and dealing drugs. That would include an allegation that [redacted]

[redacted]

You know, I'm sorry that he is facing this litigation. I think it's, you know, a problem with our system that there are people who are hurt as a result of the determination we've made as a society that we place such a high value on the openness of the Courts. But whether that's a right determination or a wrong determination, that's the determination that I'm bound by.

MR. BURSTEIN: I guess my only point, Your Honor, would be, obviously, you're the judge, so whether I disagree doesn't make too much of a difference. But if someone is making an allegation, for example, that he's a money launderer, where she's not damaged by that information, she's not seeking damages based upon it, it's only placed in the complaint to harm Mr. Bursor's reputation, it would be stricken because it's completely irrelevant.

The notion that she can come in and make horrific claims that there are no relationship to her underlying claims, that is something that's different. What is the conceivable relevance to him being a drug dealer and a money launderer when the claim is that he raped her? There's just no

connection. And that's all I'm talking about.

I said right from the start --

MS. PARKER: Your Honor --

MR. BURSTEIN: I just wanted to finish one thing. If Ms. Parker were coming in with, even if she said he had raped other people, I would understand that's relevant. But if she's going to add things which, for example, could never, ever be admitted into evidence under any circumstances, and that would be harmful to somebody, that's my concern. I don't know why -- that's where I think the unfairness lies. And --

THE COURT: And I hear you, right. But the remedy that we operate -- the way our system works, is the remedy for that. The remedy for harmful and extraneous allegations being contained in this complaint is not sealing the complaint. It's making a motion to strike those portions of the complaint and then being vindicated or not vindicated when the Court rules or doesn't rule in your favor, striking or not striking those allegations.

MR. BURSTEIN: Although *Lugosch* says that it's a weighing factor -- and one of the things that it weighs is, for example, the eligibility of sanctions. Sanctions are not going to make a

difference for a pro se plaintiff.

In the weighing process, I would say that, Your Honor, given the history here and given what we've seen, that Your Honor would not at least have a chance.

I guess if Ms. Parker were saying, I'm only going to allege the rape at this point, that's not problematic. It's just this extraneous stuff. And there is no hard and fast rule under *Lugosch*. *Lugosch* says it's a weighing thing and specifically says that part of the weighing process is for a Court to look at allegations which would not come before them, but for their irrelevance and impropriety. And the goal here in this circumstance is, respectfully, is that if that's what the test is and what *Brown* says about, it's the obligation of the Courts not to allow this, where somebody is threatening to do this, to say, well, let's find out if she does it before, and then we can deal with it afterwards. Which is respectfully, not what *Lugosch* says. It is not what *Brown* says. It says there has to be a weighing process. In the unusual circumstance here is this -- is the case where -- it just -- I've made my point, Your Honor.

THE COURT: And I understand your point,

and I understand that it's a weighing exercise, but the presumption in favor of public access to a core document like a complaint, is so heavy that it takes a lot to overcome that.

Let me ask you this, Ms. Parker.

MS. PARKER: Yes.

THE COURT: Do you have a date by which you intend to file your complaint?

MS. PARKER: Absolutely, Your Honor. Because I've had attorneys trying to help me in the past, and Mr. Burstein and Scott also removed them to make sure that I don't have a voice.

I am absolutely going to be filing a complaint. I know the due date, and it hasn't even been filed yet because they're moving very fast against me, and I'm by myself, kind of.

So absolutely there will be a complaint filed, but there should not be motions before even a complaint was even filed. And I want to be clear, I absolutely do not intend to [redacted]

THE COURT: I appreciate the point you're making about [redacted] and I understand you plan to file your complaint. And I understand as a pro se litigant, it can be difficult to complete drafting a complaint and filing a complaint.

MS. PARKER: Yes.

THE COURT: My question to you is, do you, as we are sitting here today, know when you plan to file? I'm not going to hold you to it. I'm just asking you the question.

MS. PARKER: No, absolutely. So I know my deadline is January 31, and I'm doing it as fast as I can. But being pro se, obviously, it's a little bit more difficult, but it will absolutely be filed in the next few days, and definitely before the date.

THE COURT: My question to you then --

MR. BURSTEIN: To extend the time.

THE COURT: Yes.

MS. PARKER: Yes.

THE COURT: Does it make sense to agree to extend the deadline for filing the complaint? Would you agree to --

MS. PARKER: I don't need to --

THE COURT: -- not file the complaint until February 29 or February 15? Pick a date.

MS. PARKER: I'm comfortable to prepare it. It's been difficult on me. Obviously, as you understand, I'm pro se, but I'm doing it as fast as I can. I know the deadline is -- so I don't need an

extension or anything like that. It will absolutely be filed at the date --

THE COURT: And I understand, and I'm asking a somewhat different question. I understand that you would get it in by the deadline if you're required to do that.

MS. PARKER: Yes.

THE COURT: I'm saying, would it make more sense for this case, for everyone to give you a chance to finish in the way that you want to finish without feeling so much pressure and to give Mr. Burstein a chance to take my order to the district court judge for an appeal and for an objection and to the Court of Appeals for an appeal, if she also rules against him. Would it make sense to say, all right, let's just slow everything down and agree that you don't have to and will not file your complaint until, say, we can pick a day, February 15, February 29, one of those two days? Would that make sense?

MS. PARKER: That absolutely makes sense. I want to do the best that I can. I'm trying the best that I can by myself to get through this. I wasn't asking for an extension, but if it makes sense to you and Mr. Burstein, absolutely, I will do

that. But I'm preparing my complaints, and I was just trying to follow the prep of pro se law to file it at the right time.

THE COURT: And I appreciate your efforts as a pro se litigant to comply with the rules. I know it can be difficult.

MS. PARKER: It's very difficult.

THE COURT: Why don't we then say, and I'll put this in the order, that your time to file a complaint is extended through and including up until February 29, 2024, and that you indicate that it's your intent to file the complaint on that date.

MS. PARKER: Absolutely. Of course.

THE COURT: Okay. Is that going to give you the time you need, Mr. Burstein?

MR. BURSTEIN: Your Honor, yeah. I was just hoping that we could have it in essence, since we're on the record, is that a stipulation that she will not file before that date.

THE COURT: Are you agreeable, Ms. Parker, to agreeing not just that you have until February 29 to file your complaint, but that you will not file until then? You will not file before then?

MS. PARKER: I absolutely agree. But the complaint, because I'm pro se and it's online, it

says that it's due on the date. So as long as you will --

THE COURT: I will issue an order making clear that it is not due until February 29.

MS. PARKER: Okay. Thank you.

THE COURT: And I will also issue -- I will sign, if you, Mr. Burstein, submit a stipulation --

MS. PARKER: What's the implications of waiting?

THE COURT: I'm sorry, I didn't hear that.

MS. PARKER: What is the implications of, like, waiting? I'm sorry.

THE COURT: So the implication of waiting is that you aren't telling your story as soon as you would otherwise.

MS. PARKER: Yes. Correct.

THE COURT: But it's not a very long delay.

MS. PARKER: Yes.

THE COURT: And it does give you the opportunity to say things in the way that you want to say things. And it also gives Mr. Burstein, on behalf of Mr. Bursor, the chance to go to other judges to say, I think that Judge Turnofsky got it wrong, and that Ms. Parker's complaint should be kept away from the public for a period of time so

that we can ask the Court to require her to take out portions that are improper. Do you understand?

MS. PARKER: I understand.

But also, I just want to say one more thing. They're specifically trying to move this through a different jurisdiction to hurt my complaint. Just to be clear, that's obviously what they're doing. Mr. Bursor and Mr. Burstein, they're moving it to a different jurisdiction. They've taken already two attorneys of mine to help me, but they're also now moving it to a different jurisdiction. And I just want to be clear that I will be absolutely prepared to follow the deadlines. I don't need a delay. I'm not sure what the delay actually means, because you know, I'm by myself, I'm pro se. So I'm not really sure why there would even be a delay, because I will be prepared to serve it in the time that it was due. And I know that their intent is to move it to a different jurisdiction to specifically hurt my complaint. So --

THE COURT: Well, look, I don't know what their intentions are. All I can say is that they have moved the case from state court to federal court.

MS. PARKER: Yeah.

THE COURT: I don't know if they plan to try to move it from this federal court to a different federal court. I suppose --

MR. BURSTEIN: We do not. We do not.

THE COURT: Okay. Well, then if they have removed the case, it is permissible to move a case from state court to federal court when one party is from one state and the other party is a citizen of another state. My understanding is that you are a New York citizen.

MS. PARKER: Yes. And so was Scott at the time --

THE COURT: Mr. Bursor is currently a Florida citizen. I'm not sure about the citizenship of the professional association.

MS. PARKER: At the time of the crime, he was living in New York City. We lived in a co-op together. We had a co-op approval in an apartment we lived in together. So at the times of the crimes that I'm addressing, he absolutely was. And his office is not a satellite office. It's his --

THE COURT: Yeah, no, Ms. Parker, and I understand that, but this is sort of a technical legal question about not where he lived at the time, but where he's a citizen now.

MS. PARKER: And I also want to say he doesn't even have 50 percent of his -- a lot of the things. So yesterday I was hit with 300 pieces of paperwork, and it claims that he's 50 percent -- he's never been -- he's agreed, even responsible for his children. He signed off on that, like, 15 years ago. So a lot of the things that are being addressed to me are a lot of lies.

THE COURT: Well, again, this is not about the truth of the --

MS. PARKER: I don't need more time. I don't want more time.

THE COURT: Okay. No, and I understand. So this isn't about -- right, remember we talked about the fact that today isn't about proving your claims --

MS. PARKER: Yes.

THE COURT: -- or even talking about what you will do to prove your claims or try to do to prove your claims. Today is just trying to talk about some technical but important issues about how the procedures are going to work for you filing the complaint.

I do have a question, Mr. Bursor, before we go much further about, I guess, the citizenship of

the professional association.

MR. BURSTEIN: The professional association is unincorporated business. Under the case law, it's treated as essentially an LLC. The sole owner of the professional association is Mr. Bursor, who is a citizen of Florida.

THE COURT: Okay. Then if, you know, based on that understanding, then a defendant can remove a case from state court to federal court. You can challenge that with something called a request to remand the case. If you want it to go back to state court, you can make that application. The New York State Court is a good court. This court is a good. Both courts are places where I think that you substantively can be heard and get justice. But it's your decision whether or not you want to ask this court to send it back to that court.

So that is something that you can consider. If you are going to do that, you need to do it within 30 days of the date that the case was removed to federal court, which I believe is 30 days from January 11. That's my recollection. So you can make that request.

But let's put that aside for now, because what we're talking about now is the schedule on

which you're planning to and agreeing to file the complaint. And as the magistrate judge assigned to this case, I can tell you that it is okay, and I will put it on the record, I can change the deadline to February 29, 2024. And my intention is to do that.

My next question for you then, though, is are you willing to agree with Mr. Burstein that you will not file your complaint here before then?

MS. PARKER: Your Honor, I want to ensure that by moving to federal, Mr. Burstein can't use it against me. Appealing your ruling, otherwise, I intend to file my complaint on the day that it's due, January 31. And I don't need an extension. I don't see a reason for an extension.

THE COURT: Okay. So, you know, if you don't want an extension, I don't believe I can force you to grant an extension.

MS. PARKER: Yeah.

THE COURT: If your question is whether Mr. Burstein can take an appeal for my decision, because we're in federal court, yes, he can take an appeal for my decision because we're in federal court to a federal district judge and then to the Second Circuit Court of Appeals.

He would equally, if he were in state court, have an ability to appeal any rulings by the state court judge to different courts, to different other judges.

But the right to appeal is not something unique about federal court. It's something that we have both in federal court and in state court.

So just to be clear, the reason that Mr. Burstein is suggesting an extension of time is that he wants to use that time to appeal my decision to ask a different judge to say, Ms. Parker needs to file her complaint privately and under seal so that the public can't see it for a period of time. And that is one of the things that he will do during the time between now and the time that you file your complaint, if you decide not to file it before February 29.

There are also benefits to you of a delay and not filing the complaint until February 29, 2024, it gives you more time and therefore puts you under less pressure. But only you can evaluate whether it's worth it to you to have that extra time and less pressure and agree not to file --

MS. PARKER: More time. They're expediting things. And I'm pro se, obviously, and I'm dealing

with two powerful office attorneys, so it's just me against them. I don't need more time. I'd like to just follow the deadlines, like on pro se, on my e-file website, and the day that things are due. I think that's probably --

THE COURT: You're right. So, Mr. Burstein, it seems like a stipulation is off the table and that Ms. Parker doesn't want an extension. Sounds like her plan is to file on Monday. I, you know, will issue this order today.

You certainly can make an emergency application to Judge Clarke. And I will let her know that that's coming. And she'll decide what she decides, when she decides it. I don't have any influence on that.

MR. BURSTEIN: My only concern is, I'm concerned about -- I know Your Honor says you're going to get the report and recommendation out today, but I don't think I can even get to Judge Clarke until that's issued.

THE COURT: I understand. I mean, it's drafted. It'll be out within an hour.

MR. BURSTEIN: Oh, okay. Then thank you very much.

Okay. Thank you, Your Honor.

MS. PARKER: Thank you, Your Honor. Thank you, Mr. Burstein.

THE DEPUTY CLERK: Before either of you leave, if you can also please make your appearance by just stating your name that you are here.

THE COURT: We just want that on the recording. Thanks.

MR. BURSTEIN: Oh. Judd Burstein for the defendants.

MS. PARKER: Angelica Parker.

THE DEPUTY CLERK: Thank you so much.

THE COURT: Is there anything I can do for any of you right now?

MR. BURSTEIN: No. Thank you, Your Honor.

MS. PARKER: No. Thank you, Your Honor.

THE COURT: Thank you for your time. Bye.

C E R T I F I C A T E

I, Marissa Lewandowski, certify that the foregoing transcript of proceedings in the case of ANGELICA PARKER v. SCOTT BURSOR, et al. , Docket #1:24-cv-00245-JGLC-RFT, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature Marissa Lewandowski ____________________________

Marissa Lewandowski

Date: February 27, 2024