# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PROCEDURAL BACKGROUND ........ 4

I. The Facts Alleged in Ms. Parker's Complaint ........ 6

ARGUMENT ........ 11

I. Legal Standard for Objections to the Report and Recommendation ........ 12

II. No Basis Exists to Seal the Complaint ........ 12

A. The Public Has a Right to the Judicial Documents in this Proceeding ........ 12

B. The Complaint is a Judicial Document ........ 13

C. Defendants Have Not Made a Showing that Overcomes the Presumptive Right of Access to the Complaint ........ 14

D. Defendants Offer No Authority to Seal Ms. Parker's Complaint, a Judicial Document ........ 16

E. Additional Allegations Do Not Alter the R&R's Recommendation that the Complaint Should Be Unsealed ........ 18

III. Sealing is Not Required Where a Motion to Strike is Pending ........ 19

A. Defendants Essentially Filed a Motion to Strike ........ 19

B. Motions to Strike are Disfavored in the Second Circuit ........ 19

IV. Defendants' Selected Allegations to Strike are Relevant to Plaintiff's Causes of Action ........ 22

CONCLUSION ........ 26

# TABLE OF AUTHORITIES

Page(s)

Cases

Brown v. Maxwell,
929 F.3d 41 (2d Cir. 2019)....................................................................................... 13
Bartlett v. Société Générale de Banque au Liban Sal,
No. 19 Civ. 7 (CBA)(TAM), 2021 WL 8155950 (S.D.N.Y. 2021)........................................ 20
Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,
814 F.3d 132 (2d Cir. 2016)................................................................................... 14, 15
Bernstein v. O'Reilly,
307 F.Supp.3d 161 (S.D.N.Y. 2018)........................................................................... 3, 6
Doe 1 v. East Side Club, LLC,
18 Civ. 11324 (KPF), 2021 WL 2322941 (S.D.N.Y. 2021)............................................ 19, 22
Grossberg v. Fox Corp.,
No. 23 Civ. 2368 (JMF), 2023 WL 2612262 (S.D.N.Y. Mar. 23, 2023) ................................ 17
Hobbs v. Knight-Swift Transportation Holdings, Inc.,
No. 21 Civ. 1421 (AT), 2022 WL 118256 (S.D.N.Y. 2022) ............................................ 19, 22
Illiano v. Mineola Union Free Sch. Dist.,
585 F. Supp.2d 341 (E.D.N.Y. 2008) ........................................................................... 21
In re IMB Arb. Agreement Litig.,
2022 WL 3043220 (S.D.N.Y. 2022)............................................................................. 15
In re Platinum & Palladium Commodities Litig.,
828 F.Supp.2d 602 (S.D.N.Y. 2011)....................................................................... 1, 2, 3
Julian v. Metro. Life Ins. Co.,
No. 17 Civ. 957 (AJN)(BCM), 2020 WL 5913739 (S.D.N.Y. Oct. 6, 2020).......................... 16
Kossoff v. Felberbaum,
No. 14 Civ. 1144 (RWS), 2014 WL 1814030 (S.D.N.Y. May 7, 2014) ................................ 19
Lipsky v. Commonwealth United Corp.,
551 F.2d 887 (2d Cir. 1976)....................................................................................... 20
Long v. Marubeni Am. Corp.,
406 F.Supp.2d 285 (S.D.N.Y. 2005)............................................................................. 21
Lugosch v. Pyramid Co. of Onondaga,
435 F.3d 110 (2d Cir. 2006)........................................................................ 12, 13, 14, 15
Lynch v. Southampton Animal Shelter Found. Inc.,
278 F.R.D. 55 (E.D.N.Y. 2011) .................................................................................. 20
Mirlis v. Greer,
952 F.3d 51 (2d Cir. 2020)......................................................................................... 13
Moy v. Adelphi Inst.,
866 F.Supp. 696 (E.D.N.Y. 1994) ........................................................................... 20, 26
Newsday LLC v. Cty. of Nassau,
730 F.3d 156 (2d Cir. 2013)....................................................................................... 14
Nixon v. Warner Comms., Inc.,
435 U.S. 589 (1978).................................................................................................. 14

Reyes v. Mantello,
2003 WL 76997 (S.D.N.Y. Jan. 9, 2003) ........ 12
Rich v. Miller,
634 F.Supp.3d 66 (S.D.N.Y. 2022) ........ 19, 22
Roe v. City of New York,
151 F.Supp.2d 495 (S.D.N.Y. 2001)........ 20
Smith v. AVSC Int’l, Inc.,
148 F.Supp.2d 302 (S.D.N.Y 2001)........ 21
Stafford v. International Business Machines Corporation,
21 Civ. 6164 (JPO), 2022 WL 1486494 (S.D.N.Y. May 10, 2022) ........ 12, 13
Suber v. VVP Services, LLC,
2023 WL 4817551 (S.D.N.Y. 2023)........ 15
Szeredy v. Potter,
2008 WL 5155666 (S.D.N.Y. Dec. 4, 2008) ........ 12
Tigner v. Lee,
2014 WL 4979697 (S.D.N.Y. Oct. 3, 2014) ........ 12
Under Seal v. Under Seal,
273 F. Supp. 3d 460 (S.D.N.Y. 2017)........ 16
United States v. Amodeo,
71 F.3d 1044 (2d Cir. 1995)........ 14
Velez v. Lisi,
164 F.R.D. 165 (S.D.N.Y. 1995) ........ 21
Vento & Co. of New York v. Metromedia Fiber Network, Inc.,
1999 WL 147732 (S.D.N.Y. 1999)........ 26
Wermann v. Excel Dentistry, P.C.,
2014 WL 846723 (S.D.N.Y. 2014)........ 21

STATUTES

28 U.S.C. § 636(b)(1) ........ 12

RULES

Fed. R. Civ. P. 12(f)........ 19
Fed. R. Civ. P. 72(b) ........ 12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ANGELICA PARKER, Plaintiff, v. SCOTT BURSOR, individually and in his professional capacity as owner of Bursor & Fisher, P.A., and BURSOR & FISHER, P.A. Defendants. | : | Case No.: 24-cv-245 (JGLC)(RFT) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S CORRECTED REPORT AND RECOMMENDATION AND OPINION AND ORDER**

On January 24, 2024, Magistrate Judge Robyn Tarnofsky entered a report and recommendation ("R&R") that both denied Defendants' request to seal the Complaint ("Compl.") and their request to seal their motion seeking a temporary restraining order ("TRO") and Preliminary Injunction ("PI") (the "Motion") in connection with the Complaint. ECF 25. The R&R ordered that to the extent the Complaint or Motion contained [redacted] such content must be redacted prior to filing on the docket. *Id.* Thereafter, Defendants filed a motion objecting to the R&R (the "Objection"). ECF 63. However, the Objection shows that Defendants do not merely want the Court to seal the Complaint and their Motion, essentially they want this entire civil action to be sealed. This is what happened in *In re Platinum & Palladium Commodities Litig.*, 828 F.Supp.2d 602, 604 (S.D.N.Y. 2011), where the Court held:

> **Sealing an action's complaint "would have the practical effect of sealing the entire case."**

Refusing to allow such a result, the court in *In re Platinum* also denied the party's request to redact multiple allegations in the complaint:

> Courts must be leery of confidentiality requests that permit the parochial interest of one party to trump the public interest in the efficient and transparent administration of justice. Recently, the Judicial Conference of the United States reaffirmed this principle, acknowledging that "sealing an entire case file is a last resort."

*Id.* 603-04 (quoting Judicial Conference of the U.S., Judicial Conference Policy on Sealed Cases (Sept. 13, 2011)).

Defendants here, like the party in *In re Platinum*, want to "make public monitoring of this action an exercise in futility." *Id.* ("without monitoring ... the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings.") Because the Complaint in this action does not include [redacted] or allegations that courts have ordered redacted such as about "law enforcement, classified information, or legitimate privacy interests," absolutely no legal grounds exist to support Defendants' sealing request. *Id.* Plaintiff's Complaint (ECF 53-1) should be immediately placed on the docket. Not a single reference [redacted] is made and no redactions are required to [redacted].

The R&R must be adopted at this juncture for the additional reason that Defendants cannot be allowed to file a second motion which essentially asks for the same relief as adjudicated in the R&R. In the Objection, Defendants explain they intend to file another motion asking that the Complaint be sealed "indefinitely" as part of their anticipated motion to dismiss and motion to strike. ECF 63, at 1. Outrageously, Defendants believe that as part of the decision to adopt the R&R the Court will willingly prejudice Plaintiff and prevent the public from monitoring this action by keeping the Complaint sealed "indefinitely or at least until such time as the Court decides

Defendants' forthcoming motion to dismiss and strike the Complaint (or parts thereof) and continue the sealing order."[1] *Id.*

On January 11, 2024, Defendants removed Plaintiff's action from State Court. Because Plaintiff commenced her action using a summons with notice, she did not place a complaint on the state court docket. Immediately after removal, Defendants filed their Motion to keep Plaintiff's allegations against them hidden. As such, in a case that is presumptively a matter of public concern, the public has not had access to the Complaint since Plaintiff commenced her case in November 2023. Bursor is using his millions to buy sophisticated legal representation for the purpose of manipulating our court system that is designed to allow average citizens such as Ms. Parker redress. Bursor's wealth may give him the ability to engage in dilatory tactics, such as the filing of frivolous motions to strike almost the entire complaint or motions to re-argue the issue of sealing already addressed in the R&R and now before the Court. Burson should not be allowed special treatment simply because he can afford to pay lawyers to file numerous and lengthy motions. The relief requested in the Objection should be denied.

As set forth below, Plaintiff opposes Defendants' Objection to the R&R. The R&R reasoned, "it is well-settled that '[g]eneralized concern[s] of adverse publicity' and reputational injury – the primary harms to Defendants articulated in their application to seal the filings supporting their motion for a TRO and PI – cannot justify an order sealing core judicial documents." ECF 25 at 8 (quoting *Bernstein v. O'Reilly*, 307 F.Supp.3d 161, 169 (S.D.N.Y. 2018). The Complaint contains appalling conduct that Bursor is alleged to have engaged in over the course of several years. Bursor is simply trying to protect himself from the consequences of his own bad

[1] Defendants cannot be permitted to file these motions under seal. There is nothing in the Complaint [redacted] and there is no basis to even seek to file under seal. They are doing so to take advantage of the fact that the Court has not ruled on the R&R yet.

actions. He wants the Complaint sealed to prevent the public from learning about what he did to Ms. Parker. This is nothing more than Bursor's "generalized concern" about reputational harm. No legal precedent supports his sealing requests.[2] Rather, because long-standing Second Circuit precedent supports the R&R, the Court should swiftly adopt the R&R and place the Complaint (ECF 53-1) on the docket, as well as the Motion and its supporting papers (ECF 13, 14, 15, 16), with redactions of any content of [redacted] ECF 25.

Importantly, despite mischaracterizing their brief as simply an Objection to the R&R, in substance Defendants changed what was previously a motion for a TRO and PI and request to seal [ECF 13, 14, 15, 16] into a request for *ongoing sealing relief*, in contravention of the R&R, for the purpose of filing a subsequent motion to dismiss and to strike while Ms. Parker's allegations are sealed. Discussed *infra*, Plaintiff did add more content to her Complaint about the harm that Bursor caused her. ECF 53-1. But that does not permit Defendants to start again, with a fresh opportunity to seal the Complaint. Absolutely no precedent exists in support of Defendants' novel request to reject the R&R entirely and extend sealing of the Complaint until their soon to be filed motions are filed, briefed and decided. Respectfully, the proper procedure is to decide the issue of adopting the R&R promptly - at this juncture and not to delay the decision for months more, which is exactly what Defendants are attempting to achieve. Plaintiff's Complaint has been hidden from the public for six months and no reason exists to allow this to continue.

## **PROCEDURAL BACKGROUND**

On November 22, 2023, Ms. Parker, *pro se*, commenced an action against Bursor in New York Supreme Court, New York County, entitled *Parker v. Bursor, et al.,* Index No. 952325/2023,

---

[2] Defendants themselves admitted during oral argument that there is no precedent for this kind of request. January 24, 2024 Hearing Tr. at p. 8-9.

by filing a Summons with Notice. The allegations in the State Court complaint supported the three causes of action asserted by Ms. Parker, including assault and battery and intentional inflection of emotional distress ("IIED").

The State Court complaint contains allegations, *inter alia*, that Bursor: (i) engaged in "a pattern of violence, intimidation and sexual abuse of plaintiff," (¶ 8) (ii) caused her to contract a sexually transmitted infection (¶ 9); (iii) vaginally penetrated her on September 20, 2020 against her consent, and (vi) Bursor said "I will rape you no matter what." (¶¶ 11-13). The State Court complaint details a second time, on September 26, 2021, when Bursor caused her to contract a sexually transmitted infection (¶ 20), and throughout, the allegations describe a pattern of sexual abuse, including details about additional sexual assaults, followed by Bursor's efforts to make amends. (¶¶ 19, 21). On January 11, 2024, Bursor filed a notice of removal. Thereafter, on January 19, 2024, Defendants filed the Motion seeking a TRO and PI for the sole purpose of preventing the State Court complaint from being accessible to the public. ECF 13-16. On January 24, 2024, the R&R was entered. ECF 25.

On January 30, 2024, Ms. Parker's newly retained lawyers entered their appearances. ECF 40, 41. After Defendants learned that Ms. Parker's counsel were not going to rely on her *pro se* State Court complaint and intended to file a new complaint, the deadline for Defendants to oppose the R&R was extended. ECF 44. On March 22, 2024, Plaintiff filed her Complaint (ECF 53-1) and presently, it is under seal pursuant to the Court's directive issued on April 29, 2024. ECF 64. Critically, the Complaint does not contain a single reference to [redacted]. *See* ECF 53-1. Accordingly, the concerns expressed in the R&R

for redacting any such allegations are moot, and no justifiable basis exists to require redactions prior to placing the Complaint on the docket.

On April 28, 2024, Defendants filed the Objection to the R&R. ECF 63. Knowing that they can no longer seek to seal the Complaint based on the prior concern [redacted] because it contains no such allegations, Defendants are attempting to generate newfound issues to support ongoing sealing. The motivation is to preserve Defendants' reputations. Tellingly, the sole grounds for ongoing sealing involve allegedly salacious and improper allegations. Defendants understand that substantively they are seeking to remove facts alleged about graphic sexual violence, Bursor's use of drugs and alcohol, as well as foul language, all of which makes their request for relief a motion to strike under Rule 12(f).[3]

## I. The Facts Alleged in Ms. Parker's Complaint

As defined by the New York City Victims of Gender-Motivated Violence Protection Act ("VGMVPA"), N.Y.C. Admin. Code § 10- 1102, *et seq*., a "crime of violence motivated by gender" "means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id.* The statute further defines the cause of action, "[e]xcept as otherwise provided by law, any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party …" § 10-1104.[4]

[3] Because Defendants argue in detail in the Objection about why numerous paragraphs in the Complaint should be stricken, they have already briefed their Rule 12(f) motion to strike. Plaintiff responds to the argument extensively *infra*. Ms. Parker should not have to oppose these same arguments in a subsequent motion. Defendants should not get away with trying to force Ms. Parker to expend unnecessary time and money in her effort to hold Bursor accountable because Bursor has the money and ability to file multiple motions for the same relief.

[4] Section 10-1105, sets forth that "nothing in this chapter entitles a person to a cause of action for random acts of violence unrelated to gender or for acts that cannot be demonstrated, by preponderance of the evidence, to be a crime of violence motivated by gender."

The allegations in the Complaint, as in the State Court complaint, show that many of Bursor's actions towards Plaintiff were crimes of "violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." It was understood by New York lawmakers that underlying conduct may involve sexual conduct. Such claims also may involve violence because it is a civil remedy for victims of *crimes of violence*. Yet, Bursor objects to the R&R and to the Complaint being read by the public because he claims that the allegations are too graphic, prejudicial, and were filed:

> [T]o gratify [Plaintiff's] private spite towards Mr. Bursor and promote public scandal with the primary if not sole objective of burning everything in Mr. Bursor's life to the ground. Filled with allegations that cannot possibly be supported by admissible evidence, and gratuitous rhetoric—the impropriety of which is recognizable in one glance—Plaintiff's Complaint epitomizes the weaponization of the litigation process by an unscrupulous litigant seeking media attention.

Objection, at 11 (internal quotations omitted). Such protests fail to distract from what happened to Ms. Parker between 2019 and 2023 at the hands of Bursor. The allegations, as disturbing and graphic as they are, demonstrate that Plaintiff more than sufficiently pleads causes of action under the VGMVPA, and for assault, battery and for IIED against Defendants. Defendants' contentions about the accuracy of certain alleged facts, despite thousands of text messages describing their interactions sometimes minute by minute, merely shows that Defendants intend to dispute material facts. Such disputes will be narrowed during discovery. Thereafter, finders of fact will decide whether Plaintiff can prove her causes of action by a preponderance of the evidence. These facts do not require the Complaint, and thus in essence, the entire action to be sealed.

Sadly, Plaintiff experienced so many incidents of gender motivated violence at the hands of Bursor, the Complaint fails to contain the universe of events. But the allegations included show Bursor was motivated, at least in part, on harming Plaintiff because of her gender. Because the

law requires Plaintiff to prove Bursor's animus towards women, the allegations relating to the fact that Bursor intended to, and did, use violence to harm her into submission are directly relevant. The following allegations, just a mere sampling from the Complaint, support the elements of the causes of action Ms. Parker asserts against Defendants and contrary to the Objection, are not improper:

- Between 2019 and 2023, Ms. Parker unwittingly was caught in a vicious cycle of sexual abuse at the hands of Bursor, ….. thousands of contemporaneous pieces of evidence demonstrate the severity and level of sexual violence inflicted on Ms. Parker by Bursor…. not to mention the appalling frequency of his pattern of abuse. ¶¶ 2-3.

- On March 21, 2020, Bursor wanted to have sex with Ms. Parker, but she asked him to stop … Bursor got extremely angry and aggressive. He sexually assaulted Ms. Parker by grabbing her in the bed and trying to rip her pants off. ¶ 23.

- Bursor then expressed anger that the two had not slept together for 30 days. Ms. Parker reminded him that the reason for that was largely because Bursor had given her a sexually transmitted disease that sent her to the hospital, which infuriated Bursor. BURSOR: Why don't you just shut the fuck up? … BURSOR: It'd be better if you shut the fuck up. ¶ 51.

- On September 10, 2020….Bursor became extremely angry, and even more angry when Ms. Parker would not have sex with him that evening. …The next afternoon, Bursor … demanded that she have sex with him. Ms. Parker had unexpectedly gotten her period in the meantime and did not want to have sex with Bursor… Bursor lost it and told Ms. Parker that the two of them were not leaving the guest bedroom until they had sex. He also pinned her down by her arms, causing pain, and attempted to rape her. Ms. Parker had to physically push him off of her by shoving a tampon into his face so that he would relent. ¶¶ 58-62.

- Bursor decided that he was not going to take no for an answer when it came to sex that night…. he began to demand that Ms. Parker hand over to him a Viagra: BURSOR: Yeah, I want to fuck…. Can I have the pill please? . . we're gonna fuck tonight as much as I want. ¶¶ 67-68.

Case 1:24-cv-00245-JGLC-RFT Document 498 Filed 09/05/24 Page 12 of 29

- Bursor continued to demand that Ms. Parker have sex against her will… Fearful for her safety, Parker gave Bursor the Viagra and said that she would have sex with him, but that she needed 30 minutes away from him first…. she made explicitly clear that she did not want to have sex with Bursor and that he needed to get away from her. Rather than respecting her wishes, Bursor began counting down the 30 minutes. ¶¶ 71-75.

- Terrified for her physical safety, Ms. Parker told Bursor that she would have sex, against her will, one time. That set him off again, and he made clear that he would not respect any limitations on Ms. Parker's consent. ¶¶ 76-77.

- Ms. Parker pleaded with Bursor to simply let her go to sleep, at which point he followed her into the guest bedroom and threatened to rape her. BURSOR: Then you're gonna need to leave or I'm gonna fucking rape you. PARKER: You're not going to rape me. BURSOR: You wanna bet? ¶ 79.

- Ms. Parker took out her phone to call the police. Bursor went into a fit of rage, grabbed her phone and threw it … Bursor then proceeded to shove Ms. Parker against the side of the bed, grab her wrists, use his body to push her back against the bed and pin her arms behind her head. From that position he sexually assaulted Ms. Parker and, for a few moments, penetrated her before she was able to kick him off of her. ¶¶ 82-85

- He also berated her for recording his attack, demanded that Ms. Parker provide him with her copy of the police report and continued to instruct her to delete the recordings that she made.. mere days after he raped Ms. Parker, …Bursor began to demand apologies, sex, cocaine and Viagra. ¶¶ 97-98.

- Throughout the evening of August 29, 2021, Bursor was withdrawing as a result of having taken significant amounts of painkillers and cocaine earlier in the day. … He also was extremely agitated. ¶ 129. That evening, for these reasons and others, Ms. Parker was sleeping in a separate room. ¶ 130. Bursor via text message, asked her to come into his room over and over again. In the early morning hours of August 30, 2021, Ms. Parker finally gave in, and went to see Bursor. ¶ 131. When Ms. Parker arrived at Bursor's room, it was very dark. Ms. Parker walked over to Bursor's bed. As she came close, Bursor lunged forward and backhanded her across the face, twice. This was incredibly painful and almost knocked Ms. Parker to the ground. ¶¶ 128-31.

- In early February 2022, Bursor and Ms. Parker went to dinner with Bursor's law partner, Ms. Westcott, Ms. Parker's friend, ADZ (female), ML and his girlfriend, KF. Bursor, who was already high, drank to excess and became

completely intoxicated. When Bursor, Ms. Parker, Ms. Westcott and ADZ arrived back to his house, Bursor began ranting and raving … Mr. Bursor went berserk, scaring all three women. Ms. Westcott got up to leave the apartment and recommended that the other women do the same. Then, in full view of Ms. Westcott and ADZ, Bursor assaulted Ms. Parker, hurling her across the apartment's marble floor. Ms. Westcott fled the apartment. … Bursor was clearly high on drugs, and it was equally clear that ADZ was terrified. When Bursor finally walked away, ADZ told Ms. Parker that she was going to vomit and asked Ms. Parker whether the bedroom doors would be locked from the inside. On or around this same day, **Bursor, who kept multiple firearms in his apartment, threatened to "shoot" Ms. Parker**. He did this on multiple occasions. ¶¶ 139-48.

- In early March 2022, Bursor and Ms. Parker took a short trip to Las Vegas. During one night of their stay, Bursor became extremely angry over the fact that Ms. Parker had gotten her period and could not have sex. He began verbally abusing Ms. Parker by telling her to "shut her fucking mouth" and calling her a "stupid fucking cunt." Bursor then became physical, and ultimately the hotel staff was called to the room to break up the fight, calm down Bursor and separate the two. ¶¶ 149-51.

- On or around April 14, 2022, Bursor, high out of his mind, again want crazy and physically assaulted Ms. Parker. In the lead up to the physical assault, Bursor verbally abused Ms. Parker, screaming at her at the top of his lungs that she needed to shut the "fuck" up and not "fucking" speak. ¶ 158. Bursor, who had Ms. Parker pinned down to the bed, proceeded to cover her mouth and obstruct her breathing. ¶¶ 156-58.

- Shortly after they reconciled (June 2022), Bursor again assaulted Ms. Parker, this time at the Baccarat Hotel in New York City. Specifically, while the two were having drinks at the bar, Bursor tried to physically escort her, against her will, up to his hotel room. The hotel bar staff had to intervene and remove Bursor from the bar area. Later that night, while back in the room, Bursor again physically attacked Ms. Parker, and security was called to the room. ¶¶ 162-63.

- From January to April 2023, Bursor hurled the following insults, among many, many others, at Ms. Parker: "fuck off," "you fucking piece of shit," "[i]f there's any justice in the world you're in for a shitty life and I hope you fucking suffer," "[f]uck off you backstabbing cunt," "[y]ou stupid [f]ucking pig," "you lying cunt," "[f]uck you I hope you're miserable forever, "[y]ou're a fucking loser babe," "[f]uck off loser" and "fuck you." ¶ 167.

- On April 22, 2023, when he wrote, "[i]f I feel like being nasty to you I will," according to Bursor, he had "earned the right" to be "nasty" to Ms. Parker. ¶ 171.

- Late in the evening on May 2, 2023, … Bursor tried to shove a dildo down her throat, which she removed, and gag her with a gag ball, which she fought off. … He began to scream at Ms. Parker to suck his "dick" and orally sodomized Ms. Parker. When Ms. Parker did not agree to give Bursor oral sex, he threatened to physically remove her from his home. Bursor repeatedly demanded that Ms. Parker must leave because her "mouth" was not on his "dick." He then threatened to count down from 10 and "physically throw" Ms. Parker out of his apartment if, when he hit zero, unless her "mouth" was on his "dick," or they were "fucking." … Bursor physically drag[ged] Ms. Parker out of his carpeted bedroom and down the marble hallway. She was naked. …Bursor assaulted Ms. Parker repeatedly by hitting and choking her. He also lifted her off the ground by her throat. During the fight, a glass table and vase broke near the entryway to the apartment. A large picture also came off the wall. …Ms. Parker was in the middle of the foyer, naked. In between the two was a floor filled with shattered glass…. After Bursor took Ms. Parker's phone, he proceeded to violently drag her naked body through the shattered glass. Bursor then threw Ms. Parker out of the apartment, naked and bleeding profusely. ¶¶ 175-86.

The above examples taken from the Complaint are directly relevant to Ms. Parker's causes of action. As alleged, many paragraphs contain verbatim text messages, while others are taken from recorded conversations. Further, the allegations reference witnesses to Bursor's violence against Plaintiff, in addition to violent conduct exhibited towards several of her female friends. Compl. at ¶¶ 144-46, 152-55. Because Ms. Parker alleges that Bursor's aggressive and violent conduct often correlated to his excessive use of potent drugs and alcohol, such facts are relevant to events giving rise to her asserted claims.

## ARGUMENT

It is evident that Defendants have one goal – they wish to use every possible procedural tactic to delay this Court from ruling on the question of unsealing Plaintiff's Complaint. Defendants are motivated to protect the reputation of Bursor, a self-declared "leading class action

lawyer." Nothing argued in the Objection offers legal support for the relief requested. Bursor does not deserve special treatment simply because he does not want to litigate claims lodged against him within the very legal system he navigates each day.

## I. <u>Legal Standard for Objections to the Report and Recommendation</u>

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made." *Reyes v. Mantello*, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003) (internal quotations omitted). Under § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure ("Rule 72(b)), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," *see* Rule 72(b), and must be made "within 10 days after being served with a copy of the recommended disposition." *Id.*; *see also* 28 U.S.C. § 636(b)(1). *See, e.g. Szeredy v. Potter*, 2008 WL 5155666, at *1 (S.D.N.Y. Dec. 4, 2008); *Tigner v. Lee*, 2014 WL 4979697, at *3 (S.D.N.Y. Oct. 3, 2014). If a party submits a timely objection, the district judge will review the parts of the report and recommendation the party objected to under a *de novo* standard of review. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which the objection is made."). Under this standard, the only result here is to adopt the R&R and place the Complaint on the docket.

## II. <u>No Basis Exists to Seal the Complaint</u>

### A. The Public Has a Right to The Judicial Documents in This Proceeding

The public's right to access judicial documents is a common law right "firmly rooted in our nation's history." *Stafford v. International Business Machines Corporation*, 21 Civ. 6164 (JPO), 2022 WL 1486494, *2 (S.D.N.Y. May 10, 2022) (*quoting Lugosch v. Pyramid Co. of*

*Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). "The presumption of access is based on the need for federal courts ... to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch*, 435 F.3d at 119. In *Stafford*, the court reasoned that:

> *Lugosch* and its progeny make clear that it is the public that benefits from access to judicial documents, and it is the court's responsibility to make specific, rigorous findings before sealing the document or otherwise denying public access. That is why courts routinely unseal judicial documents even against the opposition of both parties.

2022 WL 1486494 at *2 (citations and quotations omitted).

Defendants rely on *Brown v. Maxwell* to claim that the Complaint should remain sealed. 929 F.3d 41 (2d Cir. 2019). *Brown* is readily distinguishable and Defendants' reliance on the decision is misplaced. In *Brown*, two non-parties sought to unseal documents that they argued would exonerate another non-party from sexual abuse allegations. In contrast to *Brown*, Ms. Parker, the Plaintiff, wants the Complaint unsealed. [redacted] While the facts in Plaintiff's Complaint are upsetting and disturbing, [redacted].

### B. The Complaint is a Judicial Document

The first step of the analysis of whether the presumptive right of public access attaches to a particular record is to determine whether the record is a "judicial document." *See Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). Pursuant to well-settled precedent, an initiating complaint is a judicial document. A "judicial document" or "judicial record" is a filed item that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119. Such documents are presumptively public so that the federal courts "have a measure of accountability" and so that the public may "have confidence in the administration of justice."

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"). In determining whether a document is a judicial record, courts evaluate the "relevance of the document's specific contents to the nature of the proceeding" and the degree to which "access to the [document] would materially assist the public in understanding the issues before the ... court, and in evaluating the fairness and integrity of the court's proceedings." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir. 2013). "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016).

In *Bernstein*, the court held that "the fact of filing a complaint, whatever its veracity, is a significant matter of record," and "we therefore hold that pleadings, even in settled cases, are Judicial records subject to a presumption of public access." *Id.* at 140-41. The Complaint herein is a judicial document and the cornerstone of the case.

### C. Defendants Have Not Made a Showing that Overcomes the Presumptive Right of Access to the Complaint

In the face of overwhelming allegations about what Ms. Parker experienced at the hands of Bursor, Defendants make every attempt to keep the Complaint hidden. Courts have been clear that if a document is a judicial record, like Ms. Parker's Complaint, then it is subject to a presumption of public access. Defendants must overcome a substantial hurdle to warrant sealing. *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978). The "presumption of access" to judicial records is secured by two independent sources: the First Amendment and the common law. *Lugosch*, 435 F.3d at 121. Under either analysis, Ms. Parker's Complaint belongs on the public docket. Where the common law right attaches, "the court 'must determine the weight' of the presumption in favor of public access, which is 'governed by the role of the material at issue in

the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *In re IMB Arb. Agreement Litig.*, 2022 WL 3043220, at *2 (S.D.N.Y. 2022) (quoting *Lugosch*, 435 F.3d at 119). The Court must then balance the "countervailing factors" against "the weight of the presumption of access." *Lugosch*, 435 F.3d at 120. Where the "more stringent First Amendment framework applies," *id.* at 124, "the proponent of sealing must demonstrate that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Bernstein*, 814 F.3d at 144.

It is Defendants' burden to overcome the strong First Amendment presumption of access to judicial documents, and they have failed to do so. *Suber v. VVP Services, LLC*, 2023 WL 4817551, at *3 (S.D.N.Y. 2023). Defendants do not identify any "countervailing factors" or "higher values" that weigh in favor of sealing the Complaint. Instead, they list the following purported justifications for sealing throughout the Objection which shows that Bursor is concerned about harm to his reputation and to his law firm's reputation, and the only grounds cited fall under Rule 12(f) standards:

- In a world of instantaneous electronic communications, it is a near certainty that a complaint involving highly salacious and attention-grabbing tabloid allegations is going to be disseminated and spread through the public domain almost immediately. Once in the public domain, the salacious allegations, however frivolous, improper or impertinent, are there forever and the damage … can never be fully undone. Objection, at 13.

- Plaintiff's Complaint is so infused with scandalous, redundant, immaterial and impertinent material, and so unnecessarily lengthy, that it should be dismissed or stricken in its entirety under Rule 12(f). Id. at 16.

- A scandalous allegation "is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court," … and "Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'" Def's Br. at 17.

- Likewise, it is appropriate to strike allegations that are not necessary to the causes of action when one of the clear objectives of the allegations, and the complaint as a whole, is to embarrass and humiliate the defendant or to harm him professionally or personally. Def's Br. at 17-18.

- Plaintiff's Complaint rambles for page after page of incomplete, selectively-edited, one-sided and wholly unnecessary text message exchanges … between her and Mr. Bursor containing the most salacious and private communications. Id. at 18.

- Plaintiff abuses the litigation privilege here by including patently scandalous allegations, … for the improper purpose of attempting to harm Defendants' reputations and business. Id. at 20.

Not a single one of these grounds is supported by *Lugosch*, *Bernstein*, *Newsday*, *In re IMB Arb. Agreement Litig.* or any other case law. Defendants make an extraordinary request here – one that has never been granted under these circumstances, as Defendants themselves admit. See January 24, 2024 Hearing Tr. at 8. There is no basis given for the Court to seal Plaintiff's Complaint, only laments about the potential harm to Defendants' reputations. Courts "generally reject negative publicity 'as a basis for overcoming the strong presumption of public access to [the allegedly prejudicial items.'" *Julian v. Metro. Life Ins. Co.*, No. 17 Civ. 957 (AJN)(BCM), 2020 WL 5913739, at *4 (S.D.N.Y. Oct. 6, 2020); *see also Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017) (collecting cases). Put plainly, Defendants have made their own bed through their bad actions, and they cannot ask the court to protect them from having to lay in it.[5]

### D. Defendants Offer No Authority to Seal Ms. Parker's Complaint, a Judicial Document

[5] In this regard, at paragraph 254, footnote 14, in the Complaint the declaration in support of the Motion by Defendants' counsel is discussed. Defendants focus on litigation that Ms. Parker was involved in 12 years ago having nothing to do with her claims based on Bursor's gender-based violence between 2019 and 2023. Defendants' willingness to shame and blame Ms. Parker for being a prior victim and their repeated focus on prior litigation shows the veracity of her allegations about threats Defendants made to bully her in this action and their attempts to prevent her allegations from being heard in a public court.

Defendants acknowledge, as they must, that the R&R describes Ms. Parker's Complaint as well as Defendants' TRO and PI Motion to seal, as "judicial documents." R&R, 6. Confoundingly, Defendants claim that because the Magistrate Judge did not actually read Ms. Parker's Complaint filed on March 22 (ECF 53-1) that a decision rejecting sealing cannot stand. ECF 63, at 14-15. Defendants ignore the R&R's reliance on well-settled law, cited above, to hold that Defendants did not meet their burden of overcoming the presumption of public access. R&R at 7-8. Defendants misleadingly cite *Grossberg v. Fox Corp*., No. 23 Civ. 2368 (JMF), 2023 WL 2612262 (S.D.N.Y. Mar. 23, 2023), in support of their request to seal. In *Grossberg*, the defendants filed an emergency motion to seal the complaint arguing it contained "information protected by the attorney-client privilege and attorney-work product doctrine." *Id.* at 1. The court rejected the request to seal because the "information they seek to seal is already in the public domain. Plaintiff's lawsuit has been widely reported — and the Complaint itself is already publicly accessible in its entirety." *Id.* On these specific facts, the court held that "[w]ere Defendants seeking leave to file a document under seal in the first instance, their arguments would not be without force." *Id.* But *Grossberg* involved the potential divulging of attorney client privileged information and work-product to the public. This is easily distinguishable from the situation between Ms. Parker and Bursor, where no attorney client relationship existed, and surely Bursor is not claiming that his communications and conduct with Ms. Parker are work product.

Defendants fail to cite a single case outside of potential work product, attorney client privileged information, or [redacted], in which any basis could be found for sealing an initiating complaint. As Defendants themselves admit, no such case exists, and zero precedent supports Defendants' attempt to twist the R&R's recommendations into the nonsensical argument they are hoping this Court will entertain. The R&R, in an abundance of caution about

[redacted], recommended that if the Complaint was filed prior to the Court having the opportunity to review and rule on the R&R, that the Complaint be filed under seal until the Court does so. The concern was narrow and involved making sure that [redacted].

**E. Additional Allegations Do Not Alter the R&R's Recommendation that the Complaint Should Be Unsealed.**

Defendants ask the Court to "maintain the sealing of the filed Complaint (ECF No. 53-1), either *indefinitely* or at least until such time as the Court decides Defendants' forthcoming motion to dismiss and strike the Complaint (or parts thereof) and continue the sealing order, which is currently due May 12, 2024 (*see* ECF 55)." Def's Br. at 1. Defendants further explain that they intend to make an application to renew their motion to seal or continue the sealing order in connection with their forthcoming motion to dismiss and strike. *Id.* at 9-10.

Defendants' strategy to prevent Ms. Parker's claims from being litigated through our court system is to file one motion to seal after the next, and object to any reports and recommendations along the way. Defendants suggest that because Magistrate Judge Tarnofsky did not have a copy of the current Complaint, perhaps the R&R would have recommended that the Complaint remain sealed. This is baseless. Her allegations concern *inter alia*, gender motivated violence by Bursor against her. Because judicial transparency is essential to our democratic system of government, the Court should protect the public's right of access to court proceedings and records, and not seal this proceeding. It is evident that while more information about what Bursor did is contained in the recently filed Complaint, the claims asserted against Defendants remain the same. Her pro se complaint asserted that he sexually assaulted her more than once, engaged in a pattern of physical and verbal abuse, and that Bursor possessed animus towards women. The Complaint elaborates

on his conduct, but does not offer new causes of action based on conduct having nothing to do with his sexual violence and gender based animus.

### III. Sealing is Not Required Where a Motion to Strike is Pending

#### A. Defendants Essentially Filed a Motion to Strike

Procedurally, the Court can and should adopt the R&R immediately. Knowing that a Rule 12(f) motion employs a different test having nothing to do with the question of sealing a judicial document, Defendants claim that sealing should continue until *after* a motion to strike is fully briefed and adjudicated. No authority supports this request. Further, while Defendants claim not to argue a Rule 12(f) motion in their Objection, that is exactly what they do. For this reason, Plaintiff addresses the merits of Defendants' request to strike certain allegations. She also requests that Defendants be prohibited from re-filing this same argument under a new notice of motion.

#### B. Motions to Strike are Disfavored in the Second Circuit

Courts in the Second Circuit uniformly agree that motions to strike are disfavored and infrequently granted. *See Hobbs v. Knight-Swift Transportation Holdings, Inc.*, No. 21 Civ. 1421 (AT), 2022 WL 118256, at *4 (S.D.N.Y. 2022) ("motions to strike are generally disfavored and should be granted only when there is a strong reason for doing so"); *Rich v. Miller*, 634 F.Supp.3d 66, 71 (S.D.N.Y. 2022) ("[c]ourts disfavor motions to strike"); *Doe 1 v. East Side Club, LLC*, 18 Civ. 11324 (KPF), 2021 WL 2322941, at *1 (S.D.N.Y. 2021)("motions to strike are generally disfavored"); *Kossoff v. Felberbaum*, No. 14 Civ. 1144 (RWS), 2014 WL 1814030 (S.D.N.Y. May 7, 2014) (same). Pursuant to Fed. R. Civ. P. 12(f), allegations will only be stricken where they contain "[r]edundant, impertinent, or scandalous matter."

To prevail on a motion to strike, a party must demonstrate that: "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the

case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Bartlett v. Société Générale de Banque au Liban Sal*, No. 19 Civ. 7 (CBA)(TAM), 2021 WL 8155950, at *1 (S.D.N.Y. 2021). In *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) the Second Circuit held that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. It cautioned further, that "[e]videntiary questions . . . should especially be avoided at such a preliminary stage of the proceedings." *Id.*; *see also Moy v. Adelphi Inst.*, 866 F.Supp. 696, 709 (E.D.N.Y. 1994) ("[c]ourts recognize that the decision on whether or not to strike portions of a complaint based on evidentiary questions, often may not be made until a trial begins to unfold") (citations omitted); *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 66 (E.D.N.Y. 2011) ("[r]egardless of whatever bad intentions the Defendants contend motivated the Plaintiff . . ., even allegations that may not pass Rule 11 scrutiny at a later stage in the litigation will not be stricken if they have some possible bearing on the subject matter of the plaintiff's claim"). Here, none of the allegations in the Complaint should be stricken because they relate to Defendants' conduct towards Plaintiff, and many to Bursor's motivations. To strike allegations necessary to prove her claims would be prejudicial. *Roe*, 151 F.Supp.2d at 510. Countless facts are based on quotes from texts between Bursor and Ms. Parker. The thousands of text messages will be admissible. The Complaint includes a copy of part of the police report from the sexual assault in September 2020. Both Plaintiff and Bursor recorded relevant conversations, as well as made video recordings during some of the conduct described n the Complaint. Such evidence will be highly persuasive. Explained above, it is well-settled that making evidentiary determinations at the beginning of an action is premature.

As for the length of the pleading, Bursor engaged in so many actionable events that it should not be Ms. Parker who is prejudiced for describing many of them. In this regard,

Defendants claim she included them to prejudice Bursor. ECF 63, at 19-22. As alleged, Bursor's acts were repugnant and sordid. He does not get the benefit of striking them because of this inherent nature. The opposite is true. Allegations must remain in a complaint where they are potentially relevant, even if they contain "inflammatory language" or graphic "account[s] of [defendant's] alleged sins." *See Velez v. Lisi*, 164 F.R.D. 165, 167 (S.D.N.Y. 1995) (rejecting defendant's motion to strike purportedly baseless allegations of perjury and criminal misconduct by defendant and stating "we cannot say at this time that [the allegations] have no possible bearing on the subject matter of plaintiff's claim"); *Long v. Marubeni Am. Corp.*, 406 F.Supp.2d 285, 302 (S.D.N.Y. 2005) (denying motion to strike allegations including "lengthy, and somewhat vituperative, account of [defendant's] alleged sins" even where many were irrelevant to a racial discrimination claim because they related to the cause of action for declaratory judgment that plaintiff was constructively discharged); *see also Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp.2d 341, 357 (E.D.N.Y. 2008) (after plaintiff's religious discrimination was dismissed but gender discrimination claim was sustained, the motion to strike defendant's antisemitic comments was still denied); *Smith v. AVSC Int'l, Inc.*, 148 F.Supp.2d 302, 317 (S.D.N.Y 2001) (in discrimination and retaliation action, denying the motion to strike the allegation that plaintiff's family received a death threat after plaintiff reported discrimination, despite it being "clearly inflammatory," because the allegation was potentially probative of retaliation); *Wermann*, 2014 WL 846723, at *6 (in a sexual harassment action, denying the motion to strike graphic allegations because even though "profane and sexually explicit, they are relevant to Plaintiff's gender discrimination claims"). If Defendants' grounds were a proper basis upon which to claim prejudice, motions to strike allegations would become the norm, rather than the exceptional circumstance that the Second

Circuit cautioned. *See Hobbs*, 2022 WL 266887, at *9; *Rich*, 634 F.Supp.3d at 71; *Doe 1*, 2021 WL 2322941, at *1.

## IV. Defendants' Selected Allegations to Strike are Relevant to Plaintiff's Causes of Action

First, Defendants move to strike "[m]ore than 15 pages of cherry-picked excerpts of alleged sexual 'conversations' between Mr. Bursor and Plaintiff . . .", [6] "[m]ore than 140 alleged text messages between the parties", a transcript of one conversation where Bursor repeatedly requested Viagra,[7] and a multitude of paragraphs, including ¶¶ 26, 28-29, 34, 40, 42, 47, 49, 52, 54-55, 63, 68-73, 92, 94-95, 99, 107, 111, 117, 136, 147, 155, 193, 201-02, 225-28. Set forth *supra*, the allegations describe relevant conduct. As much as Defendants try, they cannot simply strike allegations because they do not like the conduct that is alleged. The point of including these conversations and text messages is not to embarrass Defendants, but rather to support her claims with relevant evidence. Thus, these allegations should not be stricken.

Second, Defendants move to strike references to Bursor's drug use and frequent intoxication, including the following, ¶¶ 50, 140, 145, 156, 198, 248, 251. These allegations are relevant to show Bursor's eroded state of mind when many of the events occurred, and thereby they are important to show whether he has a credible recollection of events, and they also show a pattern of increased agitation and aggression on the part of Bursor when he is under the influence. For example, the Complaint details a specific instance where Bursor showed up to Ms. Parker's prior counsel's office while under the influence of drugs, where he then proceeded to threaten and intimidate this counsel into dropping Ms. Parker's case. Compl. at ¶ 198. This is relevant to show

---

[6] Plaintiff rejects the allegation that she broke the law by recording conversation with Bursor.

[7] This particular conversation was recorded, and Plaintiff is happy to submit the recording for the Court's review.

both Bursor's state of mind during their tumultuous relationship and to show the pattern of his aggression. The allegation also is relevant to her claims of Bursor's pattern of retaliatory behavior.

Third, Defendants move to strike allegations that Bursor "cheated" on Ms. Parker and transmitted to her a sexually transmitted disease, specifically ¶¶ 14, 135. However, these allegations are relevant to Ms. Parker's claims that Bursor was dishonest and manipulative throughout their relationship. He hid his affairs with other women where he contracted these diseases and then he had unprotected sex with Ms. Parker where she was unknowingly infected with such diseases. Ms. Parker would not have consented to unprotected sex had she known of Bursor's affairs, meaning that her consent was not knowing or informed and was not consent at all. Ms. Parker is not including this information to embarrass Bursor but rather to show a pattern of his behavior and how that behavior materially harmed her. In addition to the medical services and costs to treat these diseases, Ms. Parker also suffered emotional distress due to Bursor's affairs. This is relevant to her claims against him, and thus the allegations related to Bursor's affairs and sexually transmitted diseases should not be stricken.

Defendants also move to strike "references to scatological language throughout" the Complaint, in particular ¶¶ 21, 29, 42, 49, 51, 55, 65-68, 76, 79, 85-86, 100, 132, 145, 150, 157, 167, 181-82, 197, 201, 205, 232, 236-38, 251. "Scatological" is defined as "connected with human waste from the body in an unpleasant way."[8] Defendants do not explain how this word relates to any of Ms. Parker's allegations or why vulgar words should be stricken from a complaint. The text messages speak for themselves. The reality is that Bursor swears constantly. In fact, the worst vulgarities in the Complaint are words said by Bursor.

---

[8] *See* Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/american_english/scatological.

Next, Defendants move to strike "improper opinions about Mr. Bursor's character or personality[,]" including references to his "immature and narcissistic personality," citing ¶ 34. Not only is Bursor's personality and behavior relevant to Ms. Parker's claims, but such personality is on full display with this request. It is textbook narcissism to ask a federal judge to take time out of their schedule to review and strike relevant details about a person's immature and self-centered behavior from a complaint alleging abuse and manipulation. These allegations should not be stricken.

Defendants further move to strike references to Bursor's attempts to "manipulate" and "gaslight" Ms. Parker, arguing that it is inappropriate for a complaint to infer Bursor's thought patterns or the basis for his conduct. On this basis, they seek to strike ¶¶ 4, 14, 20, 28, 34, 53, 55-56, 96, 99, 101, 116, 125, 171, 194-95. This is incorrect, as many claims, including violation of the VGMVPA, require a plaintiff to allege motives and a basis for conduct. Ms. Parker could not allege a violation of the VGMVPA without alleging that the violence she experienced was motivated by Bursor's feelings and beliefs regarding women. Allegations about intentional manipulation and gaslighting by Bursor are squarely relevant and should not be stricken.

Defendants also move to strike "statements of lay psychological assessments" of both Ms. Parker and Bursor, particularly as it relates to battered woman's syndrome ("BWS"), in ¶¶ 168-70. Later in this litigation, a psychologist will testify about Ms. Parker's and Bursor's psychological evaluations. At this stage, striking such allegations is premature. Further, Defendants do not get to decide, at any stage, if the parties exhibited pattern behavior associated with BWS. These statements are relevant to Ms. Parker's claims that she was trapped in a cycle of abuse perpetrated by Bursor, and they should not be stricken. Further, Defendants move to strike references to Bursor & Fisher ("B&F") clients and matters in ¶¶ 202, 209, 235-36. Once again, each of these

allegations are based on statements from Bursor himself, either in text messages or in conversations with Ms. Parker. He bragged about going after Robert DeBenedictis's friends and family "in multiple jurisdictions" as a result of B&F's litigation against Avacor, a company in which Mr. DeBenedictus had invested money. Bursor later brought up the Avacor litigation again while trying to convince Ms. Parker to drop her suit, but this time he admitted to fraudulently dragging Mr. DeBenedictus into the suit and "taking every fucking dollar he had", even though he said that Mr. DeBenedictus had nothing to do with Avacor. Bursor then threatened to do the same with Ms. Parker's family and friends if she did not drop her suit. These were attempts to use his position as a lawyer and as the head of B&F to intimidate Ms. Parker. As the Complaint rightfully alleges, this is unethical behavior in violation of the Rules of Professional Conduct, and none of these allegations should be stricken. Next, Defendants move to strike "false accusations of extortion," citing to eleven paragraphs of the Complaint at ¶¶ 221-32. However, these paragraphs do not allege that Defendants are extorting anyone. In fact, they describe the opposite – that Defendants falsely accused Ms. Parker of extorting them. Defendants misunderstand this section of the Complaint, and these allegations should not be stricken. Finally, Defendants move to strike allegations of events that occurred after Ms. Parker originally retained counsel and sent the first version of the Complaint to Defendants, at ¶¶ 196-254. Bursor and Mr. Burnstein both threatened Ms. Parker at this time, which demonstrates a consciousness of guilt – they knew they had acted badly and they did not want Ms. Parker to file her Complaint and reveal their bad acts to the public. Now, with this attempt to seal and strike the Complaint, they are running the same playbook. Their repeated attempts to intimidate Ms. Parker into giving up her case makes these first events all the more relevant to establishing a pattern of behavior, and thus the allegations should not be stricken.

Other than the fact that Defendants wish much of this above conduct remained secret, Defendants have offered no specific reason why they will be prejudiced by the facts remaining in the Complaint. Only after discovery can the Court rule on the relevance and admissibility of certain allegations Defendants wish to strike, with a fully developed evidentiary record. *See Vento & Co. of New York v. Metromedia Fiber Network, Inc.*, 1999 WL 147732, at *16 (S.D.N.Y. 1999) ("defendants do not explain how they will be prejudiced by leaving the allegations in the complaint at this point. As trial approaches, this Court will be in a better position to determine whether the allegations the defendants seek to strike are material"); *Moy*, 866 F. Supp. at 709 ("[c]ourts recognize that the decision on whether or not to strike portions of a complaint based on evidentiary questions, often may not be made until a trial begins to unfold") (citations omitted).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks that the R&R is adopted, Defendants' relief requested in their Objection is denied in its entirety, and the Complaint is unsealed.

Dated: May 13, 2024
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: ______________________________
Michael J. Willemin
Jeanne M. Christensen

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
mwillemin@wigdorlaw.com
jchristensen@wigdorlaw.com
*Counsel for Plaintiff*